# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLVAY, S.A. | ) | |
| | ) | C.A. No. 06-557-SLR |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| HONEYWELL SPECIALTY | ) | |
| MATERIALS, LLC and | ) | |
| HONEYWELL INTERNATIONAL INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SOLVAY'S OPENING BRIEF IN SUPPORT OF ITS MOTION
## FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

Dated: February 18, 2008
Public Version Dated: February 25, 2008
850534 / 30651

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

**TABLE OF CONTENTS**

Page

I.    NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

II.   SUMMARY OF ARGUMENT .............................................................................. 1

III.  CONCISE STATEMENT OF FACTS ..................................................................... 2

      A.   '192 Patent ................................................................................................. 2

           1.   Solvay's Characterizations of the '192 Patent to the PTO ........................ 2

           2.   Honeywell's Characterizations of the '192 Patent to the PTO ................. 3

      B.   *Advances in Fluorine Chemistry* ...................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

      A.   Summary Judgment Is Appropriate ................................................................. 6

      B.   Inequitable Conduct ...................................................................................... 6

      C.   Solvay Did Not Commit Inequitable Conduct In Connection With Its
           Discussion of the '192 Patent ......................................................................... 7

      D.   Solvay Did Not Commit Inequitable Conduct With Respect to Either the
           Hamilton Chapter or Page 184 of the Barbour Chapter.................................. 10

V.    CONCLUSION................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                    Page

*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
   808 F.2d 1471 (Fed. Cir. 1986)................................................................................1, 9

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................................6

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,*
   731 F.2d 831 (Fed. Cir. 1984)................................................................................6

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)................................................................................6

*FMC Corp. v. Manitowoc Co., Inc.,*
   835 F.2d 1411 (Fed. Cir. 1987)................................................................................7, 10

*Hebert v. Lisle Corp.,*
   99 F.3d 1109 (Fed. Cir. 1996)................................................................................10

*Hoffman-La Roche, Inc. v. Promega Corp.,*
   323 F.3d 1354 (Fed. Cir. 2003)................................................................................7

*Kimberly-Clark Corp. v. Johnson & Johnson,*
   745 F.2d 1437 (Fed. Cir. 1984)................................................................................10

*Molins PLC v. Textron, Inc.,*
   48 F.3d 1172 (Fed. Cir. 1995)................................................................................10

*Monsanto Co. v. Mycogen Plant Science, Inc.,*
   61 F.Supp. 2d 133 (D. Del. 1999)................................................................................10

*The Liposome Co., Inc. v. Vestar, Inc.,*
   36 U.S.P.Q. 2d 1295 (D. Del 1994),
   1994 U.S. Dist. LEXIS 19325 (D. Del. Dec. 20, 1994)................................................9

**Rules**

Fed. R. Civ. P. 56................................................................................6

**Statutes**

37 C.F.R. 1.56 (1992) ................................................................................6

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Solvay S.A. ("Solvay") filed its complaint for patent infringement on September 7, 2006 (D.I. 1), fact discovery and expert discovery have been completed, and motions for summary judgment are due on February 18, 2008.

## II.    SUMMARY OF ARGUMENT

Honeywell asserts that Solvay committed inequitable conduct by mischaracterizing a prior art reference (U.S. Patent No. 5,574,192 (the "'192 patent")) in arguments that it made to the PTO during prosecution of the '817 patent in suit. However, the allegedly mischaracterized reference was already before the PTO examiner at the time of the alleged "misrepresentation." The examiner was thus free to accept or reject Solvay's characterizations of that reference. As a matter of law, such alleged "misrepresentations" are not material and do not evidence an intent to mislead the PTO. *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986). Moreover, as a matter of undisputed fact, Solvay did not "mischaracterize" anything. Indeed, Solvay's characterization of the prior art is supported by both Solvay's and Honeywell's technical experts and is consistent with how Honeywell itself characterized this same prior art to the PTO.

Honeywell also asserts for the first time in its expert reports (after the close of fact discovery) that Solvay committed inequitable conduct by failing to disclose portions of a treatise "*Advances in Fluorine Chemistry*" to the PTO. Honeywell, however, has failed to come forward with any evidence that anyone who owed a duty of disclosure in connection with the prosecution of the '817 patent was aware of the allegedly withheld information, or was aware of its alleged materiality, or intended to deceive the PTO.

For the foregoing reasons, there is no genuine issue of any material fact and Solvay is entitled to summary judgment of no inequitable conduct.

## III.    CONCISE STATEMENT OF FACTS

### A.    '192 Patent

#### 1.    Solvay's Characterizations of the '192 Patent to the PTO

During prosecution of the '817 patent, Solvay submitted the '192 patent to the PTO. Paper no. 16 of the '817 prosecution history (IDS of April 21, 2000), attached as Exhibit 1 to the Declaration of Jeffrey McIntyre ("McIntyre Decl."), Ex. 1 ('817 prosecution history HON0021462); *see also* McIntyre Decl., Ex. 2 (Def.'s Resp. to Pl.'s Req. For Admis. No. 6). Solvay also submitted to the PTO the PCT equivalent to the '192 patent, WO96/01797. McIntyre Decl., Ex. 1 ('817 prosecution history HON0021383). The PTO considered both the '192 patent and its PCT equivalent. McIntyre Decl., Ex. 1 ('817 prosecution history HON0021462, HON0021383). Solvay specifically brought the '192 patent to the Examiner's attention, and explained how the '192 patent neither taught nor suggested the '817 method claims. McIntyre Decl., Ex. 1 ('817 prosecution history HON0021480-81). Solvay also brought the '192 patent to the attention of the Board of Appeals at the PTO, and explained how the '192 patent neither taught nor suggested the '817 method claims. McIntyre Decl., Ex. 1 ('817 prosecution history HON0021490-91).

Solvay argued to the PTO that the '192 patent did not teach or suggest continuously drawing off hydrogen chloride (HCl) and 1,1,1,3,3-pentafluoropropane ("HFC-245fa" or "245fa") as required by the '817 claims, and that example 3 in the '192 patent represented a process that was carried out by periodically venting, e.g., a batch process, not a continuous process. Specifically, Solvay argued:

Applicants note Van Der Puy '192 which was cited by Applicants in the April 21, 2000 Information Disclosure. The instant claim 43 [claim 1 of the '817 patent] requires the reaction <u>at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous</u> and <u>isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture</u> by drawing off 1,1,1,3,3-pentafluoropropane and hydrogen chloride in a gaseous phase as each of <u>said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed.</u> Example 3 of VANDERPUY '192 describes a hydrofluorination process of 1,1,1,3,3-pentachloropropane in the presence of a catalyst wherein <u>hydrogen chloride</u> is periodically vented.

Van Der Puy 5,574,192 discloses a process for manufacturing 1,1,1,3,3-pentafluoropropane by fluorination of 1,1,1,3,3-pentachloropropane in the presence of HF and antimony pentachloride; pressure is maintained in an autoclave (at 300-4— psig) [sic – 300-400 psig] by periodically venting HCl.

McIntyre Decl., Ex. 1 ('817 prosecution history HON0021480, HON0021490-91).

Solvay's interpretation of the '192 patent is not only confirmed by Solvay's technical expert in this case (McIntyre Decl., Ex. 3 (Dolbier Rebuttal Expert Report at 15-19)), ██████

████████████████████████████████████████████████████████

███████████████████████████████████

### 2.    Honeywell's Characterizations of the '192 Patent to the PTO

The '192 patent is a Honeywell patent.  McIntyre Decl., Ex. 5 ('192 patent).  U.S. Patent No. 7,214,839 (the "'839 patent") is also a Honeywell patent.  McIntyre Decl., Ex. 6 ('839 patent). ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████.

During prosecution Honeywell's '839 claims were rejected over its '192 patent. McIntyre Decl., Ex. 8 ('839 prosecution history S0023742-45).  To overcome this rejection, Honeywell argued to the PTO that (1) the '192 patent does not disclose continuous removal of

HCl; (2) example 3 in the '192 patent is a batch process, not a continuous process; and (3) the

'192 patent's batch processes "teach away" from the '817 patent's continuous processes.

Specifically, Honeywell argued:

> VanDerPuy [the '192 patent]…….. teaches away from Wilmet
> '817 and the present claims.  To begin,VanDerPuy fails to teach
> the removal of HCl in a continuous process.  The only mention of
> any HCl removal in VanDerPuy's disclosure is in Example 5,
> where HCl is *periodically* vented. During such a periodic venting
> of HCl, the process would be operating in a batch mode…the only
> embodiment of VanDerPuy where HCl is removed is during a
> *batch mode*, where chlorine is then also added periodically, *not
> continuously*.  VanDerPuy's only embodiment including a
> continuous addition of chlorine would not include the removal of
> HCl, thereby teaching away from Wilmet's '817 and the present
> claims.

> VanDerPuy [the '192 patent]…… teaches away from both Wilmet,
> et al '817 and the present claims.  First VanDerPuy fails to teach
> the present step (d), which requires removal of *any* HCl produced
> by a reaction of the present step (a).  The only mention of any HCl
> removal in VanDerPuy's disclosure is in Examples 3 and 5 where
> an HCl by-product is *periodically* vented during the venting of
> pressure in excess of 2655 Kpa. In addition, during such a periodic
> venting of HCl, the process would be operating in a batch mode.
> Importantly in these examples, only a periodic venting to relieve
> pressure is mentioned.

> VanDerPuy [the '192 patent ] show continuously adding chlorine,
> but does not show ***removing any HCl*** produced by step (a).….The
> processes of Wilmet, et al and VanDerPuy et al. [sic] are simply
> incompatible with each other such that they are not combinable
> due to conflicting process requirements.

(McIntyre Decl., Ex. 8 ('839 prosecution history S0023755-56, S0023772-73))

(emphasis in the original).

    In December 2007, Honeywell submitted a paper to the PTO disclaiming the '839 patent

to the public.  (McIntyre Decl., Ex. 9 ('839 Disclaimer HON0033987-991)).  In this paper,

Honeywell asserted that its comments concerning the '192 patent during prosecution of the '839 patent were inaccurate and that these inaccurate statements were made without deceptive intent. McIntyre Decl., Ex. 9 ('839 Disclaimer HON0033988). In its disclaimer, Honeywell did not "explain" the basis for its statement that it acted without deceptive intent when discussing the '192 patent during prosecution of the '839 patent. Honeywell has never explained how it acted *without* deceptive intent but Solvay's characterization of the '192 patent in the same way was done *with* deceptive intent.

B.    **Advances in Fluorine Chemistry**

During prosecution of the '817 patent, to rebut an argument from the PTO that compounds having 6 fluorine atoms would be expected to behave similarly to compounds with 5 fluorine atoms ("PTO's analogy argument"), Solvay submitted a copy of pages 180-183 and 200-209 of vol. 3 of the treatise *Advances in Fluorine Chemistry*. McIntyre Decl., Ex. 1 ('817 prosecution history HON0021446-53). Pages 180-183 of the treatise constitute a double-sided copy of the index to a chapter authored by Barbour et al ("the Barbour chapter"). *Id.* Pages 200-209 of the treatise represent double-sided copies of the text from the Barbour chapter submitted by Solvay to rebut the PTO's analogy argument. *Id.*

Honeywell has accused unnamed people involved in the prosecution of the '817 patent of withholding from the PTO (1) the chapter preceding the Barbour chapter in the *Advances in Fluorine Chemistry* treatise (referred to as the "Hamilton chapter"); and (2) page 184 from the Barbour chapter. During this litigation, Honeywell deposed everyone who was involved in the prosecution of the '817 patent. Nowhere in any of these deposition transcripts is there any evidence that any of these individuals was aware of the Hamilton chapter or page 184 of the

Barbour chapter, or that they knew or believed that this information was material to patentability of the '817 patent.

## IV.   ARGUMENT

### A.    Summary Judgment Is Appropriate

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admission on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, summary judgment must be granted when no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Summary judgment is as appropriate in a patent case as in any other. Where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

### B.    Inequitable Conduct

Applicants for patents have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty. 37 C.F.R. 1.56 (1992). The duty of candor applies to (1) each inventor named in the application; (2) each attorney or agent who prepared or prosecuted the application; and (3) each other person who was substantively involved in the preparation or prosecution of the application and who was associated with the assignee or with anyone to whom there was an obligation to assign the application. 37 C.F.R. 1.56 (1992)

To demonstrate the existence of a "misrepresentation" form of inequitable conduct, the accused infringer must prove, by clear and convincing evidence: (1) that the patentee misrepresented a material fact, and (2) acted with an intent to deceive the USPTO. *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003). To demonstrate the existence of a "failure to disclose" form of inequitable conduct, the accused infringer must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to the applicant of that prior art or information and its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO. *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

An assertion of inequitable conduct may be rebutted by a showing that: (1) the prior art or information was not material (e.g. because it was less pertinent than or merely cumulative with prior art or information cited to or by the PTO); (2) if the prior art or information was material, a showing that the applicant did not know of that art or information; (3) if the applicant did know of that art or information, a showing that applicant did not know of its materiality; or (4) a showing that applicant's failure to disclose the art or information did not result from an intent to mislead the PTO. *Id.*

### C.    Solvay Did Not Commit Inequitable Conduct In Connection With Its Discussion of the '192 Patent

Honeywell has alleged that Solvay intentionally mischaracterized the disclosure in the '192 patent to the PTO, and that the PTO was misled by these intentional mischaracterizations. This allegation is baseless, both legally and factually.

Solvay argued to the PTO that the '192 patent did not disclose a process which continuously separated gaseous HFC-245fa and HCl from the reaction mixture as claimed in the '817 patent. Solvay's interpretation is consistent with:

7

1.  the PTO's interpretation -- neither the Examiner nor the Board of Appeals
    rejected the '817 claims over the '192 patent;

2.  Dr. Dolbier's (Solvay's expert) interpretation  -- Dr. Dolbier has opined that the
    '192 patent does not disclose the continuous separation of gaseous HFC-245fa
    and HCl from the reaction mixture; McIntyre Decl., Ex. 3 (Dolbier Rebuttal
    Expert Report 15-16).

3.   and

4.  Honeywell's interpretation --- During prosecution of the '839 patent, Honeywell
    argued that the '192 patent "teaches away" from the '817 patent and does not
    disclose continuous HCl removal.  (Exhibit 8, '839 prosecution history, Response
    of April 3, 2006, at 2, and Appeal Brief of August 14, 2006 at 6-7).  Similarly,
    Honeywell agreed with Solvay's interpretation that example 3 in the '192 patent
    is a batch process, not a continuous process. *Id.*

Solvay did not mischaracterize the '192 patent as a matter of law. Rather, Solvay accurately characterized this reference. For this reason alone, Solvay's motion should be granted.[1]

Furthermore, it is undisputed that Solvay disclosed <u>both</u> the '192 patent <u>and</u> its PCT counterpart WO96/01797 to the PTO. As explained by the Federal Circuit in *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986), a patentee's arguments concerning references that were disclosed to the examiner are insufficient to prove inequitable conduct:

> The mere fact that [the patentee] attempted to distinguish the [claimed] process from the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion regarding the [claimed] process based on the art in front of him. Nor does [the patentee's] affidavit, advocating a particular interpretation of the Morgan '645 and Kwolek '542 patents (although favorable to [patentee's] position) show any intent to mislead the PTO. [Patentee's] intent was not to mislead, but rather to distinguish prior art from the [claimed] process and demonstrate to the examiner that the [claimed] process would not have been obvious in light of Morgan '645 and Kwolek '542.

*Id.* at 1482.

Here, as in *Akzo*, the examiner was free to accept or reject Solvay's characterization of the '192 patent. Solvay's advocacy for a particular interpretation of the '192 patent was not a material omission or misrepresentation and does not show any intent to mislead the PTO. *See also The Liposome Co., Inc. v. Vestar, Inc.*, 36 U.S.P.Q. 2d 1295 (D. Del 1994), 1994 U.S. Dist. LEXIS 19325, at *81 (D. Del. Dec. 20, 1994) (alleged "misdescription" of a reference not a material misstatement of fact and do not violate PTO duty of candor).

---

[1] In its December 2007 disclaimer filed at the PTO, Honeywell averred that its "mischaracterization" of the '192 patent during prosecution of the '839 patent occurred without deceptive intent. McIntyre Decl., Ex. 9. Honeywell's bald assertion in this case that Solvay's similar interpretation of the '192 patent was with deceptive intent is without merit.

D.     **Solvay Did Not Commit Inequitable Conduct With Respect to Either the Hamilton Chapter or Page 184 of the Barbour Chapter**

Honeywell has also alleged that Solvay committed inequitable conduct by failing to submit the Hamilton chapter or page 184 of the Barbour chapter of *Advances in Flourine Chemistry*. Honeywell bears the burden of coming forward with admissible evidence that someone with a duty of disclosure had knowledge of the allegedly withheld references and was aware of the materiality of the references. *FMC Corp. v. Manitowoc Co., Inc.,* 835 F.2d 1411, 1415 (Fed. Cir. 1987). There is no duty to disclose information that is unknown. *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1450 (Fed. Cir. 1984); *Monsanto Co. v. Mycogen Plant Science, Inc.*, 61 F.Supp. 2d 133, 195 (D. Del. 1999).

Honeywell has deposed everyone involved in the prosecution of the '817 patent. Honeywell has not proffered any evidence that any of those individuals were aware of the Hamilton chapter or page 184 of the Barbour chapter. Honeywell also has not proffered any evidence that any of the individuals who had a duty of disclosure in connection with the '817 patent were aware of the materiality of either the Hamilton chapter or page 184 of the Barbour chapter. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995) (inequitable conduct requires knowledge of the reference and of its materiality). Finally, Honeywell has no evidence that anyone with a duty of disclosure withheld these references with an intent to mislead or deceive the PTO. *See Hebert v. Lisle Corp.,* 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.")

10

## V.   **CONCLUSION**

For the foregoing reasons, this Court should enter summary judgment in Solvay's favor

on Honeywell's counterclaim and affirmative defense of inequitable conduct.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt                                   By: */s/ David E. Moore*
Jean-Paul Lavalleye                                       Richard L. Horwitz (#2246)
Barry J. Herman                                           David E. Moore (#3983)
Michael E. McCabe, Jr.                                    Hercules Plaza, 6th Floor
John F. Presper                                           1313 N. Market Street
OBLON, SPIVAK, McCLELLAND,                                Wilmington, Delaware 19801
MAIER & NEUSTADT, P.C.                                    Tel: (302) 984-6000
1940 Duke St.                                             rhorwitz@potteranderson.com
Alexandria, VA 22314                                      dmoore@potteranderson.com
Tel.: (703) 413-3000

                                                     *Attorneys for Plaintiff Solvay, S.A.*

Dated: February 18, 2008
Public Version Dated: February 25, 2008
850534 / 30651

11