## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLVAY, S.A. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-557-SLR |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HONEYWELL SPECIALTY | ) | **PUBLIC VERSION** |
| MATERIALS, LLC and | ) | |
| HONEYWELL INTERNATIONAL INC., | ) | |
| | ) | |
| Defendants. | ) | |

**SOLVAY'S OPENING BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION
TO STRIKE THE OCTOBER 22, 2007 EXPERT REPORT AND PORTIONS OF THE
NOVEMBER 20, 2007 EXPERT REPORT AND TO LIMIT THE
TRIAL TESTIMONY OF HONEYWELL'S DAMAGES EXPERT**

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

Dated: February 18, 2008
Public Version Dated: February 25, 2008
850519 / 30651

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................... ii

I.    NATURE AND STAGE OF PROCEEDINGS .................................................1

II.   SUMMARY OF ARGUMENT .......................................................................1

III.  CONCISE STATEMENT OF FACTS ............................................................2

IV.   ARGUMENT...................................................................................................3

     A.    The October 22, 2007 Report Should Be Stricken Because It Is
        Irrelevant And Unreliable ....................................................................4

     B.    Davis Should Be Precluded From Relying On Or Testifying About ▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮ ....................................................................................5

V.    CONCLUSION.................................................................................................6

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    <u>Page</u>

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)............................................................................................................4

*Kuhmo Tire Co., Ltd. v. Carmichael*,
 526 U.S. 137 (1999)............................................................................................................4

**<u>Rules</u>**

Fed. R. Evid. 702 ............................................................................................................3

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Solvay S.A. ("Solvay") filed its complaint for patent infringement on September 7, 2006 (D.I. 1), fact discovery and expert discovery have been completed, and motions for summary judgment and *Daubert* motions are due on February 18, 2008.

## II.    SUMMARY OF ARGUMENT

Defendant Honeywell International Inc. ("Honeywell") proposes to have its damages expert, Julie L. Davis, testify about ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Thus, there is no basis for Davis' conclusory statement on the issue of "reliance."

The time period Davis uses in her "calculation" is also contrary to any applicable law. Here, the '817 patent did not issue until May 4, 2004, and Solvay at that time did not have sufficient information to know if in fact Honeywell's secret process was infringing the '817 patent. ████████████████████████████████████████████████████

████████████████████████████████ Thus, her "calculation" is unreliable and irrelevant.

Honeywell also retained Davis to "assist the Court and jury in considering the amount of damages that may be recoverable by Solvay from Honeywell." November 20, 2007 Expert Report of Julie Davis ("Ex. 2"). The royalty rate Davis calculated in her November 20, 2007 report was based in part on ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

## III.    <u>CONCISE STATEMENT OF FACTS</u>

Davis' October Report purports to summarize costs Honeywell claims it incurred between March 17, 2003 through September, 2007 allegedly ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



IV.    **ARGUMENT**

Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that proposed expert testimony will "assist the trier of fact" because that testimony is both

"relevant" and "reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). To be relevant, expert opinion testimony must have a "valid … connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 592.

### A.    The October 22, 2007 Report Should Be Stricken Because It Is Irrelevant And Unreliable



Significantly, Davis did not testify that there was any causal nexus between Honeywell's expenditures and Solvay's alleged delay in accusing Honeywell of infringement. On the contrary, [redacted]

Thus, her testimony on "reliance" is incorrect and unreliable.

The October Report provides no assistance to the trier of fact other than simple math in determining Honeywell's purported "reliance" on the belief that Solvay was not going to assert the '817 patent against Honeywell.

The October Report is also unreliable as evidence of anything because the time period Davis used in her calculations is contrary to law. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

In sum, the basis for and conclusions reached in the October Report are irrelevant, unreliable and contrary to law. Honeywell cannot allege "economic prejudice" for expenditures made either before the '817 patent issued or after Solvay filed its Complaint. Finally, Honeywell has not offered any evidence (and Davis is unaware of any such information) that it would have behaved any differently had it been sued sooner. The October Report should be stricken in its entirety.

**B.    Davis Should Be Precluded From Relying On Or Testifying About** ██
██████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████



## V.    **CONCLUSION**

For the foregoing reasons, Solvay respectfully requests that the Court strike Julie L.

Davis' October 22, 2007 expert report and those portions of the November 20, 2007 expert

report discussing or relying on ████████████████, and to exclude Davis from

testifying at trial on these issues.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

Dated:  February 18, 2008
Public Version Dated: February 25, 2008
850519 / 30651

# EXHIBIT 1

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT 4

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

SOLVAY, S.A.,

      Plaintiff,

   vs.

HONEYWELL SPECIALTY MATERIALS LLC, and HONEYWELL
INTERNATIONAL INC.,

      Defendants.

:  ::::::::
:
:
CIVIL ACTION

NO. 06-557 (SLR)

- - -

Wilmington, Delaware
Thursday, January 17, 2008
8:30 o'clock, a.m.
*** Telephone conference
- - -

BEFORE: HONORABLE SUE L. ROBINSON, U.S.D.C.J.

2

- - -

APPEARANCES:

POTTER, ANDERSON & CORROON LLP
BY:  DAVID E. MOORE, ESQ.


-and-


Valerie J. Gunning
Official Court Reporter


APPEARANCES (Continued):

OBLON, SPIVAK, McCLELLAND, MAIER & NEUSTADT,
P.C.
  BY:  ARTHUR I. NEUSTADT, ESQ. and
      MICHAEL E. McCABE, JR., ESQ.
      (Alexandria, Virginia)


Counsel for Plaintiff


MORRIS, NICHOLS, ARSHT & TUNNELL
BY:  THOMAS C. GRIMM, ESQ.


-and-


KIRKLAND & ELLIS
BY:  LAURA M. BURSON, ESQ. and
        (Los Angeles, California)

Counsel for Defendants

- - -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following telephone
conference was held in chambers, beginning at 8:30 a.m.)

THE COURT:  Good morning, counsel.  This is
Judge Robinson.  Valerie is here as our Court Reporter, so
it would be helpful if you identified yourselves when you
spoke.

And I will let plaintiff's counsel start us
out.

MR. NEUSTADT:  Thank you, your Honor.  This is

Arthur Neustadt.  Good morning.

THE COURT:  Good morning.

MR. NEUSTADT:  This is Solvay v. Honeywell, of course, patent infringement action.  Solvay is the patentee.  We're talking about a license agreement that Solvay had with Arkema.

During discovery, and that's during the summer of '07, last year, both parties identified license agreements that they had in this particular area and it relates, of course, to the damages issue, and both parties are interested in the royalty rate and perhaps whether or not a process or a product patent is being licensed.

Both parties had their party concerns that they didn't want the licenses disclosed.  We then had a hearing with your Honor on August 21st, and the parties reached agreement that what we were going to do was send notice to these licensees that did not want their licenses disclosed and tell them that if they did not agree to having them disclosed, that we would arrange for a hearing with the Court.

This particular license agreement, we asked Arkema about and they then told us they did not want it disclosed.  But during this period when they were objecting

to it, there was a deposition by Honeywell of Solvay's
corporate designee for licensing, and Solvay recognized
that since the designee was from Belgium and we did not
want him to have to come back again, so we did give this
license agreement to Honeywell so that they could
cross-examine him on it, and they did it rather
extensively.

        Then we continued -- your Honor finally entered
the order on September 21st that Arkema would either have
to agree to disclosure or object.

        Armeka objected.  We negotiated with them.  We
didn't want to run off to the Court the first instance to
bother the Court with it.

        We could not get agreement with Arkema and
so we then contacted the Court early in December to set
up a hearing date.  Your Honor gave us the date of December
18.  That was a good date, put -- not a good date for
Armeka's counsel, and I think at that time they retained
outside counsel.  And so it ended up getting rescheduled
for now.

        Last Friday, Armeka's counsel notified us that
they now no longer objected to disclosure of the agreement
provided we would agree that the agreement could be

designated highly confidential, and also that Arkema could be considered to be a designating party under the protective order for providing this information.

Last Sunday, we wrote to Honeywell and said Arkema has now agreed. They just want this little protection. We assume that's okay with you. Please let us know. And we were hopeful of calling off the hearing for today.

Then, on Tuesday, we got a letter from Mr. Grimm, which was the letter to your Honor, saying that they now objected to the disclosure of this license agreement.

We don't think that this is really going to prejudice anyone. The expert depositions haven't been taken. We suspect that each of the experts who have submitted voluminous, fairly voluminous and extensive reports, will then say, this license agreement for Solvay will say this is confirmatory of the royalty rate that I have suggested, and we assume that Honeywell's expert is going to say, I've seen it, but it does not make any difference with respect to what my view is as to the appropriate royalty rate.

So that's where we stand now.

We've agreed to Armeka's restrictions, but Honeywell is -- I don't know if they are disagreeing with their restrictions, but they are also saying that it's too late, and I think that's where we stand.

THE COURT:  All right.  Thank you.

Let's hear from counsel for Honeywell.

MS. BURSON:  Good morning, your Honor.  This is Laura Burson of Kirkland & Ellis, on behalf of Honeywell.

I agree with much of the facts that Mr. Neustadt has stated, although not all of them, and I will try to briefly point out the points that we disagree with. But the long and short of it from Honeywell is that this issue, Solvay has known about this issue for a very long time and for whatever reason has decided to delay bringing this issue to your Honor until basically the end of expert discovery.

Back in September, you signed an order that the parties had agreed to the stipulation that we would notify third parties about the disclosure of these license agreements, and if they objected, they had to let us know within a certain period of time.

And pursuant to the order that you entered.

back in September, both Honeywell and Solvay then sought
production of these certain agreements from third
parties.

At the time of the deposition that Mr. Neustadt
referred to, at the deposition, without Honeywell being
aware that this is going to occur, Solvay produced about
five or six documents to Honeywell on the spot, so
Honeywell's counsel did not have a great opportunity to
explore the documents, and it appeared from the documents
that were produced that many of them related to licenses
that would not have been relevant in this case.

I disagree that the witness was cross-examined
extensively.  The witness and much of the documents that he
was cross-examined about was very unclear as to whether the
license covered a process patent or a product patent,
which is actually a very main point in this case
concerning damages and what an appropriate royalty rate
would be.

After that time, Arkema made it very clear at
the very beginning of expert discovery that it objected to
the disclosure of the license.  In fact, Armeka's counsel
sent a letter that completely outlined its position and in
no uncertain terms stated that it did not want the license

9

produced.

This letter was sent to Honeywell, to Solvay, also sent to local counsel for the party, and for whatever reason, Solvay never -- and the provisions in the order that you had entered in September provided for the parties to come back to you should one of the third parties disagree with production. And for whatever reason, the opening expert reports were submitted.

There was a four-week time period during that before the rebuttal reports were submitted, and, you know, basically at the close of expert discovery in December, Solvay now decided that it wants to further pursue the issue with the license.

I think, you know, Honeywell's view is that this issue was ripe back in October. Solvay decided not to pursue it then. And Honeywell does think it would be prejudiced by this late disclosure of information notwithstanding the fact that the expert depositions have not taken place. All the expert reports have. And the parties are advancing towards -- we've submitted our joint claim construction statement in February. In just a few weeks we have our summary judgment motions and our Markman brief due and we feel this is not a perfect time to be

taking additional fact discovery.

THE COURT:  Can I ask you just to clarify two things I thought I heard Mr. Neustadt say but I did not hear you confirm, Ms. Burson.  Number one, you said five or six documents were given to this corporate designee.

Are you confirming that one of those documents was this Arkema license?

MS. BURSON:  Your Honor, I don't know -- you know, the other side produced to me on the spot at the deposition five or six licenses that had not been produced before because of confidentiality concerns, and they never made any representation that, you know, they were going to be relying on all of these or one of these.  I have no. idea.

I'm assuming that this is based on the letter that Solvay has submitted to your Honor Solvay that this was one of the five or six documents, but I have no way of knowing.  I don't have a copy of it.  The documents were marked in the deposition and then were taken back by Solvay's counsel, so I didn't see them for very long at all, and I honestly don't remember any details.

THE COURT:  And I thought I heard him say, and perhaps I was mistaken if you said that the documents were

taken away.  I thought I heard Mr. Neustadt say that the

experts -- your expert has had access to this document

despite it wasn't -- despite the fact it wasn't officially

disclosed.  I take it I misheard, because the deposition

documents were taken away and were not included as part of

the record?

            MS. BURSON:  That's right, your Honor.  In

fact, not long after the deposition, Honeywell, or

basically Kirkland & Ellis and the paralegals were trying

to sort out from the deposition exhibits, and so we had

various conversations with Mr. McCabe and Oblon, trying to

make.

sure we understood which exhibits we would not be

receiving because Solvay would not be producing them to us

yet.

            And so, again, all of this is in the early, or

the very beginning of expert discovery time period and

right around, you know, the October 22nd letter from

Arkema.  Solvay was aware that we did not have in our

possession these documents.  Honeywell was not allowed, or

Honeywell's counsel was not allowed to keep any copies, and

I only had a few minutes with each document.

            THE COURT:  All right.  Any responding remarks,

Mr. Neustadt?

MR. NEUSTADT:  Yes, your Honor.  Ms. Burson is correct.  Due to Armeka's confidentiality concerns, we couldn't give them the documents until -- until Arkema agreed to it.  So they did get to see them at the deposition.  They did ask Mr. Serrier (phonetic) at the deposition about this particular license agreement and the provisions that they were interested in was the royalty rate and whether or not it was a -- a process patent that was being licensed.

Then we had to revert back to negotiating. with Arkema and then, finally, now, they have agreed to it.

I don't think that there was any doubt that we gave them the license agreements during the deposition to cross-examine Mr. Serrier because, obviously, we wanted to use them.

THE COURT:  All right.  Well, I appreciate the fact that counsel for Solvay was trying to resolve the issue of disclosure without Court intervention.  However, under the circumstances, and that is this all happened at the end of fact discovery and as expert discovery was beginning, it seems to me that the delay in bringing the

issue to the attention of the Court and that Honeywell has simply created an unnecessary communication, and I think that the resolution on January 11th between Solvay and Arkema is, frankly, too little too late. Therefore, I have concluded that the license cannot be used by either party in connection with this case.

Are there any other issues that we need to address today?

MR. NEUSTADT: No, your Honor. I recognize you've resolved it. We, of course, you know, can give them any documents they want that are in connection with it and while I don't want to reargue to your Honor, but this really places a burden upon us of really bothering the Court as soon as -- if we can't get agreement with someone else. But I recognize your Honor has ruled.

THE COURT: All right. Thank you very much, counsel.

(Telephone conference concluded at 8:45 a.m.)

- - -