IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOLVAY, S.A.,                                      )
                                                   )
          Plaintiff and Counterclaim               )
          Defendant,                               )
                                                   )
     v.                                            )          C.A. No. 06-557-SLR
                                                   )
HONEYWELL  SPECIALTY  MATERIALS                    )          PUBLIC VERSION
LLC, and HONEYWELL INTERNATIONAL                   )
INC.,                                              )
                                                   )
          Defendants and Counterclaim              )
          Plaintiffs.                              )


**COMBINED APPENDIX TO HONEYWELL INTERNATIONAL INC.'S
TWO OPENING BRIEFS IN SUPPORT OF ITS MOTIONS FOR SUMMARY
JUDGMENT OF INVALIDITY AND NONINFRINGEMENT**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
*OF COUNSEL:*                              Wilmington, DE  19899-1347
                                           (302) 658-9200
Robert G. Krupka, P.C.                     tgrimm@mnat.com
Laura M. Burson                            bschladweiler@mnat.com
Amber T. Aubry                               *Attorneys for Defendants*
Jacob R. Buczko
KIRKLAND & ELLIS LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA  90017
(213) 680-8400

Highly Confidential Version Filed: February 18, 2008

Public Version Filed: February 27, 2008

## <u>TABLE OF EXHIBITS</u>

| <u>Description</u> | <u>Exhibit</u> |
|---|:---:|
| United States Patent No. 6,730,817 ("the '817 patent") | 1 |
| United States Patent No. 5,763,706 ("the '706 patent") | 2 |
| Excerpts from Solvay's Responses and Objections to Defendant Honeywell International Inc.'s First Set of Request for Admission Nos. 1-27, September 17, 2007 | 3 |
| REDACTED | 4 |
| REDACTED | 5 |
| REDACTED | 6 |
| REDACTED | 7 |
| REDACTED | 8 |
| REDACTED | 9 |
| REDACTED | 10 |
| REDACTED | 11 |
| REDACTED | 12 |
| August 30, 2000 Remarks Accompanying Amendment submitted during prosecution of the '817 patent (HON0030864-HON0030876) | 13 |
| REDACTED | 14 |
| Excerpts from Solvay's Responses and Objections to Defendant Honeywell International Inc.'s Second Set of Requests for Admission Nos. 28-37, October 5, 2007 | 15 |

# EXHIBIT 1

US006730817B1

(12) **United States Patent**          (10) Patent No.:     **US 6,730,817 B1**
Wilmet et al.                          (45) Date of Patent:          **May 4, 2004**

(54) **METHOD FOR PREPARING 1,1,1,3,3-PENTAFLUOROPROPANE**

(75) Inventors: **Vincent Wilmet**, Wavre (BE); **Francine Janssens**, Vilvoorde (BE); **Jean-Paul Schoebrechts**, Grez-Doiceau (BE)

(73) Assignee: **Solvay (Societe Anonyme)** (BE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/051,746**

(22) PCT Filed: **Oct. 4, 1996**

(86) PCT No.: **PCT/EP96/04315**

§ 371 (c)(1),
(2), (4) Date: **Jun. 8, 1998**

(87) PCT Pub. No.: **WO97/15540**

PCT Pub. Date: **May 1, 1997**

(30)        **Foreign Application Priority Data**

Oct. 23, 1995  (FR) ................................................. 95 12558

(51) Int. Cl.[7] ........................... C07C 17/00; C07C 17/08; C07C 19/08; C07C 17/266; C07C 21/18

(52) U.S. Cl. ............................................ 570/167; 570/172

(58) Field of Search ............................... 570/167, 172

(56)                **References Cited**

U.S. PATENT DOCUMENTS

3,862,978 A   *  1/1975  Decker et al. ............... 570/172

5,395,997 A   *  3/1995  Van Der Puy et al. ...... 570/167
5,574,192 A       11/1996  VanDerPuy et al.

FOREIGN PATENT DOCUMENTS

| AU | 32843/95 | 4/1996 |
|----|----------|--------|
| EP | 0 522 639 | 1/1993 |
| EP | 0 611 744 | 8/1994 |
| EP | 0 703 205 | 3/1996 |
| EP | 0 729 932 | 9/1996 |
| WO | WO95/04021 | 2/1995 |
| WO | WO95/04022 | 2/1995 |
| WO | WO95/05353 | 2/1995 |
| WO | WO96/01797 | 1/1996 |

OTHER PUBLICATIONS

Kotora, Martin et al., "Addition of tetrachloromethane to halogenated ethenes catalyzed by transition metal complexes", *Journal of Molecular Catalysis*, vol. 77, pp. 51–60 (1992).

* cited by examiner

*Primary Examiner*—Johann Richter
*Assistant Examiner*—Elvis O. Price
(74) *Attorney, Agent, or Firm*—Connolly Bove Lodge & Hutz LLP

(57)                **ABSTRACT**

1,1,1,3,3-Pentafluoropropane is produced by reaction between 1,1,1,3,3-pentachloropropane and hydrogen fluoride in the presence of a hydrofluorination catalyst. The 1,1,1,3,3-pentachloropropane may advantageously be obtained by reaction between vinyl chloride and tetrachloromethane in the presence of a telomerization catalyst and of a nitrile.

22 Claims, No Drawings



US 6,730,817 B1

1

# METHOD FOR PREPARING 1,1,1,3,3-PENTAFLUOROPROPANE

The present invention relates to a process for the preparation of 1,1,1,3,3-pentafluoropropane (HFC-245fa). It also relates more particularly to a process for the preparation of 1,1,1,3,3-pentafluoropropane from 1,1,1,3,3-pentachloropropane.

1,1,1,3,3-Pentafluoropropane is a possible substitute for wholly or partially halogenated chlorofluoro hydrocarbons (CFCs and HCFCs) suspected of having a detrimental effect on the ozone layer. In particular, it is found to be especially advantageous as a blowing agent for the preparation of expanded polymeric materials.

In application WO 95/05353 it has been proposed to prepare 1,1,1,3,3-pentafluoropropane by reaction between 1,1-dichloro-2,2,2-tri-fluoroethane (HCFC-123) and dichlorodifluoromethane (CFC-12), followed by hydrogenation of the 1,1,1,3,3-pentafluoroprop-2-ene obtained. The yield of the first stage of this known process (synthesis of the 1,1,1,3,3-pentafluoroprop-2-ene intermediate) is, however, very low.

In application WO 95/04022 it has been proposed to prepare 1,1,1,3,3-pentafluoropropane by a three-stage process consisting, in a first stage, in the preparation of 1,1,1,3,3,3-hexachloropropane by reaction between tetrachloromethane and vinylidene chloride, in a second stage in the conversion of the hexachloropropane obtained to 1,1,1,3,3-pentafluoro-3-chloropropane by reaction with hydrogen fluoride and, in a third stage, in the reduction of the pentafluorochloropropane obtained to 1,1,1,3,3-pentafluoropropane by reaction with hydrogen. This process has the disadvantage of giving rise to large quantities of 1,1,1,3,3,3-hexafluoropropane during the second stage.

In application EP-A-611744 it has been proposed to prepare 1,1,1,3,3-pentafluoropropane by reaction between 1,1,1,3,3-pentafluoro-2,3-dichloropropane and hydrogen. The 1,1,1,3,3-pentafluoro-2,3-dichloropropane employed as raw material in this known process is not, however, a common product and cannot be easily prepared.

The objective of the present invention is to provide a process for the preparation of 1,1,1,3,3-pentafluoropropane which does not exhibit the disadvantages of the abovementioned known processes, which uses reactants that are commonly or easily accessible and which has a high yield, thus meeting industrial economic requirements.

The invention consequently relates to a process for the preparation of 1,1,1,3,3-pentafluoropropane, according to which 1,1,1,3,3-pentachloropropane is reacted with hydrogen fluoride in the presence of a hydrofluorination catalyst.

In the process according to the invention the hydrofluorination catalyst is advantageously chosen from the derivatives of metals of groups 3, 4, 5, 13, 14 and 15 of the Periodic Table of the elements (IUPAC 1988) and their mixtures (groups of the Periodic Table of the elements which were previously called IIIA, IVa, IVb, Va, Vb and VIb). The derivatives of the metals are intended to mean the hydroxides, oxides and the organic or inorganic salts of these metals, as well as their mixtures. Those particularly adopted are the titanium, tantalum, molybdenum, boron, tin and antimony derivatives. The catalyst is preferably chosen from the derivatives of metals of groups 14 (IVa) and 15 (Va) of the Periodic Table of the elements, and more particularly from tin and antimony derivatives. In the process according to the invention the preferred derivatives of the metals are the salts and these are preferably chosen from the halides and more particularly from chlorides, fluorides and chlorof-

2

luorides. Particularly preferred hydrofluorination catalysts according to the present invention are tin and antimony chlorides, fluorides and chlorofluorides, especially tin tetrachloride and antimony pentachloride. Antimony pentachloride is very particularly recommended.

In the case where the catalyst is selected from metal fluorides and chlorofluorides, these can be obtained from a chloride which is subjected to an at least partial fluorination. This fluorination may, for example, be carried out by means of hydrogen fluoride, before the catalyst is brought into contact with 1,1,1,3,3-pentachloropropane. In an alternative form, it may be carried out in situ, during the reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride.

The quantity of catalyst used can vary within wide limits. It is generally at least 0.001 mole of catalyst per mole of 1,1,1,3,3-pentachloropropane. It is preferably at least 0.01 mole of catalyst per mole of 1,1,1,3,3-pentachloropropane. In principle there is no upper limit to the quantity of catalyst used. For example, in a process carried out continuously in liquid phase, the molar ratio of the catalyst to 1,1,1,3,3-pentachloropropane may reach 1000. In practice, however, at most approximately 5 moles of catalyst are generally employed per mole of 1,1,1,3,3-pentachloropropane. Approximately 1 mole is preferably not exceeded. In a particularly preferred manner, approximately 0.5 moles of catalyst per mole of 1,1,1,3,3-pentachloropropane are generally not exceeded.

The molar ratio of hydrogen fluoride to the 1,1,1,3,3-pentachloropropane used is generally at least 5. The work is preferably done with a molar ratio of at least 8. The molar ratio of hydrogen fluoride to the 1,1,1,3,3-pentachloropropane used generally does not exceed 100. It preferably does not exceed 50.

The temperature at which the hydrofluorination is performed is generally at least 50° C. It is preferably at least 80° C. The temperature generally does not exceed 150° C. It preferably does not exceed 130° C. With antimony pentachloride as catalyst good results are obtained at a temperature of 100 to 120° C.

The process according to the invention is preferably carried out in liquid phase. In this case the pressure is chosen so as to keep the reaction mixture in liquid form. The pressure used varies as a function of the temperature of the reaction mixture. It is generally from 2 bar to 40 bar. The work is preferably carried out at a temperature and pressure at which, furthermore, the 1,1,1,3,3-pentafluoropropane produced is at least partially in gaseous form, which enables it to be easily isolated from the reaction mixture.

The process according to the invention may be carried out continuously or noncontinuously. It is to be understood that, in a noncontinuous process, the quantity of catalyst used is expressed in relation to the initial quantity of 1,1,1,3,3-pentachloropropane used and, in a continuous process, in relation to the stationary quantity of 1,1,1,3,3-pentachloropropane present in the liquid phase.

The residence time of the reactants in the reactor must be sufficient for the reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride to take place with an acceptable yield. It can easily be determined as a function of the operating conditions adopted.

The process according to the invention can be carried out in any reactor made of a material that is resistant to the temperature, the pressure and the reactants employed, especially to hydrogen fluoride. It is advantageous to separate the 1,1,1,3,3-pentafluoropropane and the hydrogen chloride from the reaction mixture as they are being formed and to keep in, or return to, the reactor the unconverted reactants,

HON0012184

US 6,730,817 B1

3

as well as the chlorofluoropropanes possibly formed by incomplete fluorination of 1,1,1,3,3-pentachloropropane. To this end the process according to the invention is advantageously carried out in a reactor equipped with a device for drawing off a gas stream, this device consisting, for example, of a distillation column and a reflux condenser mounted above the reactor. By means of suitable control, this device makes it possible to draw off in vapour phase the 1,1,1,3,3-pentafluoropropane and hydrogen chloride which are produced while keeping in the reactor, in the liquid state, the unconverted 1,1,1,3,3-pentachloropropane and most of the hydrogen fluoride, as well as, where appropriate, most of the products of partial fluorination of 1,1,1,3,3-pentachloropropane.

The 1,1,1,3,3-pentachloropropane used in the process according to the invention can advantageously be obtained by reaction of vinyl chloride with tetrachloromethane, as described, for example, by M. Kotora et al., Journal of Molecular Catalysis, (1992), vol. 77, p. 51–60. It is thus possible to obtain 1,1,1,3,3-pentafluoropropane in two stages from easily accessible materials.

In a preferred alternative form the process according to the invention for the preparation of 1,1,1,3,3-pentafluoropropane includes a telomerization stage in which vinyl chloride and tetrachloromethane are reacted in the presence of a telomerization catalyst, so as to obtain 1,1,1,3,3-pentachloropropane, and the subsequent hydrofluorination stage in which the 1,1,1,3,3-pentachloropropane obtained in the telomerization stage is reacted with hydrogen fluoride in the presence of a hydrofluorination catalyst.

The telomerization catalyst may be chosen from the compounds of metals from groups 8 to 11 of the Periodic Table of the elements (IUPAC 1988) and their mixtures. Compounds of metals of groups 8 and 11 are preferred. Iron and copper compounds are adopted in particular, those of copper being very particularly preferred. Compounds of metals of groups 8 to 11 are intended to mean the organic and inorganic derivatives of these metals and their mixtures. The preferred derivatives are the inorganic salts, the chlorides being particularly preferred. Telomerization catalysts which are particularly preferred according to the present invention are cuprous chloride, cupric chloride and their mixtures. Very good results have been obtained with copper (I) chloride(cuprous chloride).

The quantity of telomerization catalyst used can vary within wide limits. It is generally at least 0.001 mole of catalyst per mole of vinyl chloride. It is preferably at least 0.005 moles of catalyst per mole of vinyl chloride. In a process carried out continuously in liquid phase the molar ratio of the catalyst to vinyl chloride in the reaction mixture can reach 1000. In a process carried out noncontinuously at most approximately 0.5 moles of catalyst are preferably employed, preferably not more than 0.2 moles of catalyst and, in a particularly preferred manner 0.1 mole or less of catalyst per mole of vinyl chloride used.

A cocatalyst can be used in the telomerization stage. Amines can be employed as cocatalyst, preferably in a concentration of 0.1 to 20 moles per mole of telomerization catalyst. Amines which may be mentioned as being usable as cocatalyst in the telomerization stage of the process according to the invention are alkanolamines, alkylamines and aromatic amines, for example ethanolamine, n-butylamine, n-propylamine, isopropylamine, benzylamine and pyridine.

The molar ratio of tetrachloromethane to the vinyl chloride used in the telomerization stage is generally at least 1.5. The work is preferably done with a molar ratio of at least 2. In principle there is no upper limit to the molar ratio of

4

tetrachloromethane to vinyl chloride. For example, in a process carried out continuously in liquid phase, the molar ratio of the stationary quantities of tetrachloromethane and vinyl chloride in the reaction mixture may reach 1000. In a process carried out noncontinuously at most approximately 50 moles, preferably at most 20 moles and, in a particularly preferred manner, at most 10 moles of tetrachloromethane are generally used per mole of vinyl chloride.

The temperature at which the telomerization of vinyl chloride with tetrachloromethane is performed is generally at least 25° C. It is preferably at least 70° C. In general the telomerization temperature does not exceed 200° C. It preferably does not exceed 160° C. With cuprous chloride as catalyst good results have been obtained at a temperature of 100 to 140° C., in particular at a temperature of 110 to 130° C.

The telomerization reaction is generally carried out in liquid phase, advantageously in the presence of a solvent. Solvents that can be employed in the telomerization stage are especially alcohols such as methanol, ethanol, isopropanol and tert-butanol, and nitriles, in particular acetonitrile and propionitrile. Nitriles are preferred. The molar ratio of the solvent to the telomerization catalyst generally does not exceed 1000. Good results have been obtained with a molar ratio of the solvent to the telomerization catalyst of 20 to 400.

In the process according to the invention the presence of a nitrile is particularly advantageous, especially when the telomerization catalyst is a chloride, most especially cuprous chloride. The invention consequently also relates to a process for the preparation of 1,1,1,3,3-pentachloropropane, in which vinyl chloride and tetrachloromethane are reacted in the presence of a chloride of a metal of groups 8 to 11 of the Periodic Table of the elements (IUPAC 1988) and of a nitrile, as defined and in the conditions described above.

The examples hereinafter illustrate the invention without any limitation being implied.

EXAMPLE 1

Preparation of 1,1,1,3,3-pentachloropropane

4.43 moles of acetonitrile, 6.57 moles of tetrachloromethane, 0.11 mole of copper(I) chloride and 2.21 moles of vinyl chloride were introduced into a 1.5 l autoclave lined with a Teflon® fluorocarbon resin, equipped with a mechanical stirrer and a temperature probe. The autoclave was then immersed in a thermostated bath maintained at a temperature of 120° C. for 66 h with continuous stirring. After having reached 8.5 bar the autogenous pressure decreased, reaching 6 bar after 24 hours' reaction and 5.9 bar after 66 hours. The autoclave was then cooled and then the reaction mixture was distilled at reduced pressure. 380 g of 1,1,1,3,3-pentachloropropane were obtained, which represents a yield of 80% relative to the vinyl chloride used.

EXAMPLES 2–3

Preparation of 1,1,1,3,3-pentachloropropane

Acetonitrile (AcN), tetrachloromethane, copper(I) chloride and vinyl chloride (VC) were introduced into the autoclave described in Example 1 in the proportions reported in Table I. The conditions of reaction under autogenous pressure and the results obtained are also presented in Table 1.

HON0012185

US 6,730,817 B1

5

TABLE 1

| Example | 2 | 3 |
|---|---|---|
| VC/CCl$_4$/AcN/CuCl molar ratio | 1/6/2/0.07 | 1/3.1/2.2/0.03 |
| Reaction temperature | 120° C. | 115° C. |
| Reaction period | 36 h | 26 h |
| VC conversion (% of VC used) | 83% | 95% |
| Selectivity for 1,1,1,3,3-pentachloropropane (% of the VC converted transformed into 1,1,1,3,3-pentachloropropane | 91% | 85% |

EXAMPLE 4

Hydrofluorination of 1,1,1,3,3-pentachloropropane

0.21 moles of 1,1,1,3,3-pentachloropropane, 0.076 moles of antimony pentachloride and 10 moles of hydrogen fluoride were introduced into a 0.5 l autoclave made of Hastelloy B2 stainless steel, equipped with a bladed mechanical stirrer, a temperature probe and a dip pipe enabling liquid phase samples to be taken during the test. The autoclave was then immersed in a thermostated bath maintained at a temperature of 120° C. with continuous stirring for 21 hours. The pressure was controlled at 25 bar. A sample taken after 2 hours' reaction showed that more than 99 mol % of the 1,1,1,3,3-pentachloropropane was already converted, including 66% to 1,1,1,3,3-pentafluoropropane. After 21 hours' reaction virtually all the 1,1,1,3,3-pentachloropropane used was converted, including 92 mol % to 1,1,1,3,3-pentafluoropropane and approximately 6% to intermediate chlorofluoropropanes formed by incomplete fluorination of 1,1,1,3,3-pentachloropropane.

What is claimed is:

1. In a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises carrying out the reaction at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous and isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture by drawing off 1,1,1,3,3-pentafluoropropane and hydrogen chloride in a gaseous phase as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed.

2. The process of claim 1, which comprises conducting the reaction continuously in a liquid phase and maintaining a molar ratio of the catalyst to 1,1,1,3,3-pentachloropropane maintained from 0.001 to 1000.

3. The process of claim 2, wherein the molar ratio of the catalyst to 1,1,1,3,3-pentachloropropane is greater than 0.5.

4. The process of claim 3 wherein from 5 to 100 moles of hydrogen fluoride are used per mole of 1,1,1,3,3-pentachloropropane.

5. The process of claim 1 wherein the reaction is carried out at a temperature of approximately 50 to 150° C.

6. The process of claim 1 wherein the 1,1,1,3,3-pentachloropropane is prepared by reaction between vinyl chloride and tetrachloromethane.

6

7. The process of claim 1, wherein the hydrofluorination catalyst is selected from the group consisting of derivatives of metals of Groups IIIa, IVa, IVb, Va, Vb and VIb of the periodic table.

8. The process of claim 7, wherein the hydrofluorination catalyst is a derivative of a metal selected from the group consisting of titanium and tin.

9. The process of claim 7, wherein the pentachloropropane is reacted with hydrogen fluoride in the presence of a hydrofluorination catalyst.

10. The process of claim 7, wherein the hydrofluorination catalyst is selected from the group consisting of tin and antimony chlorides, fluorides and chlorofluorides.

11. The process of claim 7, wherein the catalyst is antimony pentachloride.

12. In a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises carrying out the reaction in a reactor equipped with a device for drawing off a gas stream at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous and wherein said device is controlled (a) to draw off a gas stream comprising 1,1,1,3,3-pentafluoropropane and hydrogen chloride as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed thereby isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture (b) to keep in the reactor in the liquid state the unconverted 1,1,1,3,3-pentachloropropane, most of the hydrogen fluoride and most of the products of partial fluorination of 1,1,1,3,3-pentachloropropane.

13. The process of claim 12, which comprises conducting the reaction continuously in a liquid phase and maintaining a molar ratio of the catalyst to 1,1,1,3,3-pentachloropropane maintained from 0.001 to 1000.

14. The process of claim 13, wherein the molar ratio of the catalyst to 1,1,1,3,3-pentachloropropane is greater than 0.5.

15. The process of claim 12, wherein from 5 to 100 moles of hydrogen fluoride are used per mole of 1,1,1,3,3-pentachloropropane.

16. The process of claim 12, wherein the reaction is carried out at a temperature of approximately 50 to 150° C.

17. The process of claim 12, wherein the 1,1,1,3,3-pentachloropropane is prepared by reaction between vinyl chloride and tetrachloromethane.

18. The process of claim 12, wherein the hydrofluorination catalyst is selected from the group consisting of derivatives of metals of Groups IIIa, IVa, IVb, Va, Vb and VIb of the periodic table.

19. The process of claim 18, wherein the hydrofluorination catalyst is a derivative of a metal selected from the group consisting of titanium and tin.

20. The process of claim 18, wherein the pentachloropropane is reacted with hydrogen fluoride in the presence of a hydrofluorination catalyst.

21. The process of claim 18, wherein the hydrofluorination catalyst is selected from the group consisting of tin and antimony chlorides, fluorides and chlorofluorides.

22. The process of claim 18, wherein the catalyst is antimony pentachloride.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO.   : 6,730,817 B1                               Page 1 of 1
DATED          : May 4, 2004
INVENTOR(S)  : Wilmet et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

<u>Title page,</u>
Item [*] Notice, should read:
-- Subject to any disclaimer,the term of this patent is extended or
Adjusted under 35 U.S.C. 154(b) by 749 days. --

Signed and Sealed this

Fifteenth Day of June, 2004

JON W. DUDAS
*Acting Director of the United States Patent and Trademark Office*

HON0012187

# EXHIBIT 2



U 1643192

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

August 03, 2007

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF:

U.S. PATENT: *5,763,706*
ISSUE DATE: *June 09, 1998*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. SWAIN
Certifying Officer

DEPOSITION
EXHIBIT
AH 203
12/14/07 SW

PENGAD 800-631-6989

US005763706A

# United States Patent [19]

## Tung et al.

[11] Patent Number: 5,763,706

[45] Date of Patent: Jun. 9, 1998

[54] PROCESS FOR THE MANUFACTURE OF 1,1,1,3,3-PENTAFLUOROPROPANE AND 1,1,1,3,3,3-HEXAFLUOROPROPANE

[75] Inventors: Hsueh Sung Tung, Getzville; Daniel Chistopher Merkel, West Seneca, both of N.Y.; Zenart Joseph Dziadyk, Lancaster, Canada; Clayton Herbert Carson, Clarence Center; Hang Thanh Pham, Amherst, both of N.Y.

[73] Assignee: AlliedSignal Inc., Morristown, N.J.

[21] Appl. No.: 675,020

[22] Filed: Jul. 3, 1996

[51] Int. Cl.⁶ .................................... C07C 17/08
[52] U.S. Cl. ............................................ 570/167
[58] Field of Search ................................. 570/167

[56]             References Cited

U.S. PATENT DOCUMENTS

5,574,192  11/1996  VanDerPuy et al. .............. 570/167

| | | | |
|---|---|---|---|
| 5,616,819 | 4/1997 | Boyce et al. | 570/167 |
| 5,659,093 | 8/1997 | Takubo et al. | 570/167 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 684687 | 4/1964 | Canada | |
| WO 95/04022 | 2/1995 | WIPO | |

Primary Examiner—Paul F. Shaver
Attorney, Agent, or Firm—Jay P. Friedenson

[57]                 ABSTRACT

An integrated manufacturing process for producing HFC-245fa, HFC-236fa or a mixture thereof by reaction of HCC-240fa, HCC-230 or a mixture thereof with HF. HCC-240fa, HCC-230 or a mixture thereof is reacted with hydrogen fluoride in a liquid phase in the presence of a fluorination catalyst. Optionally, produced HCl is removed by distillation. HF present is thereafter recovered by liquid-vapor extraction. Unsaturated compounds are then removed by photochlorination and HFC-245fa, HFC-236fa or a mixture thereof is obtained by distillation.

27 Claims, 1 Drawing Sheet

ClibPDF - www.fastio.com
Copy provided by USPTO from the PIRS Image Database on 08/02/2007

HON0033118

**U.S. Patent**          Jun. 9, 1998          5,763,706



FIGURE 1

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 08/02/2007

HON0033119

5,763,706

**1**

# PROCESS FOR THE MANUFACTURE OF 1,1, 1,3,3-PENTAFLUOROPROPANE AND 1,1,1,3,3, 3-HEXAFLUOROPROPANE

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to the preparation of hydrofluorocarbons. More particularly, the invention pertains to a method for the preparation of 1,1,1,3,3-pentafluoropropane (HFC-245fa) and 1,1,1,3,3,3-hexafluoropropane (HFC-236fa) or a mixture thereof. Specifically, the invention concerns an integrated manufacturing process for producing HFC-245fa, HFC-236fa or a mixture thereof by the reaction of 1,1,1,3,3-pentachloropropane (HCC-240fa), 1,1,1,3,3,3-hexachloropropane (HCC-230) or a mixture thereof with hydrogen fluoride.

### 2. Description of the Prior Art

Recently, there has been widespread concern that chlorofluorocarbons might be detrimental to the Earth's ozone layer. As a result, there is a worldwide effort to use halocarbons which contain fewer chlorine substituents. In this regard, 1,1,1,3,3-pentafluoropropane and 1,1,1,3,3,3-hexafluoropropane are hydrofluorocarbons having zero ozone depletion potential, and are being considered as replacements for chlorofluorocarbons in foams, refrigeration and other systems. The production of hydrofluorocarbons, i.e. compounds containing only carbon, hydrogen and fluorine has been the subject of interest to provide environmentally desirable products for use as solvents, foam blowing agents, refrigerants, cleaning agents, aerosol propellants, heat transfer media, dielectrics, fire extinguishing compositions and power cycle working fluids. It is known in the art to produce hydrofluorocarbons (HFCs) by reacting hydrogen fluoride with various hydrochlorocarbon compounds. Such HFC's are not only considered to be much more environmentally advantageous than hydrochlorofluorocarbons (HCFC's) or chlorofluorocarbons (CFC's) because they are non-ozone depleting, but also is they are also non-flammable and non-toxic as compared to the chlorine containing compounds. HFC-245fa itself is well known in the art as described in U.S. Pat. No. 2,942,036, Canadian 684,687, EP 381 986A, JP 02.272.086 and WO 95/04022. HFC-236fa is known from U.S. Pat. No. 5,395,997. All of the foregoing patents are incorporated herein by reference. However, it has been a problem in the art to conduct an economical process for the continuous preparation of HFC-245fa and HFC-236fa. It has now been found that HFC-245fa or HFC-236fa may be continuously and economically produced in an integrated manufacturing process by the reaction of HCC-240fa or HCC-230 with hydrogen fluoride. The HCC-240fa, HCC-230 or mixtures thereof and HF are first reacted in a liquid phase catalytic reaction, HCl is then optionally removed by distillation, HF is recovered, preferably by liquid-vapor or liquid—liquid extraction and then optionally recycled. Unsaturates are thereafter removed by photochlorination and HFC-245fa, HFC-236fa or a mixture thereof is obtained by distillation.

## SUMMARY OF THE INVENTION

The invention provides a process for the preparation of fluoropropanes which comprises

(a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in the presence of a fluorination catalyst;

(b) optionally removing HCl produced by step (a); and

**2**

(c) recovering HF present after step (b).

Preferably the process comprises the subsequent further steps of

(d) removing unsaturated compounds present after step (c) by photochlorination; and

(e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof from the result of step (d) by distillation.

The invention also comprises a process for the preparation of fluoropropanes which comprises

(a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in a liquid phase in the presence of a fluorination catalyst;

(b) optionally removing HCl produced by step (a) by distillation; and

(c) recovering HF present after step (b) by liquid-vapor or liquid—liquid extraction;

(d) optionally removing unsaturated compounds present after step (c) by photochlorination; and

(e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof from the result of step (d) by distillation.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a schematic view of a reaction sequence according to the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

In the practice of the present invention, a fluorination catalyst, preferably a liquid phase catalyst is charged to a fluorination reactor prior to heating of the reactor. Useful fluorination catalysts non-exclusively include transition metal halides, Group IVb metal halides and Group Vb metal halides and mixtures thereof. Such non-exclusively include chrome halides, SbCl$_5$, SbCl$_3$, TaCl$_5$, SnCl$_4$, NbCl$_5$, TiCl$_4$, MoCl$_5$ and mixtures thereof. The reactor according to this invention may be any suitable fluorination reaction vessel but it should be constructed from materials which are resistant to the corrosive effects of hydrogen fluoride such as Hastalloy, Inconel, Monel and fluoropolymer-lined vessels. FIG. 1 shows the reaction of HF and HCC-240fa in the production of HFC-245fa, however alternatively, HCC-230 would be substituted for HCC-240 in the production of HFC-236fa or a mixture of HCC-230 and HCC-240 substituted to form a mixture of HFC-245fa and HFC 236fa. As seen in FIG. 1, HCC-240 and HF are simultaneously fed to the reactor. This is done after the reactor reaches the desired temperature. The reactor is run at a preferred temperature ranging from about 60° to about 140° C.; more preferably from about 70° to about 120° C. and most preferably from about 80° to about 110° C. The HF to HCC-240fa or HCC-230 mole ratio preferably ranges from about 4 to about 10; more preferably from about 5 to about 9 and most preferably from about 5.5 to about 8. Reactor pressure is preferably maintained at from about 50 to about 300 psig; more preferably from about 100 to about 275 psig and most preferably from about 125 to about 260 psig. A chlorine feed is optional, but preferred to keep the catalyst active. A chlorine feed is especially advantageous when antimony chloride is used as catalyst. For every pound of SbCl$_5$ catalyst, about 0.06 to about 0.2 lb. of chlorine is fed to the reactor. Chlorine can be charged in either a batch or continuous mode.

ClibPDF - www.fastio.com

HON0033120

5,763,706

3

Optionally, but preferably, a top catalyst stripper is used such that most of the unreacted HF and catalyst is refluxed back to the reactor. The catalyst stripper is a packed pipe equipped with a condenser and this step is conducted by adjusting the temperature of the condenser to a range of from about 20° C. to about 100° C.

The effluent from the catalyst stripper is then optionally, but preferably, fed to an HCl distillation column to remove relatively pure HCl from the reaction mixture exiting the catalyst stripper. The pressure of the HCl column is preferred to match that of the reactor.

The essentially HCl free organic/HF mixture exiting the HCl column is optionally fed to a distillation column (not shown in FIG. 1) to remove heavy reaction products before the resulting mixture enters a sulfuric acid absorber. The pressure of this column is preferably maintained at from about 200 psig or less, more preferably from about 150 psig or less and most preferably from about 100 psig or less. The overhead of the distillation column contains HFC-245fa or HFC-236fa, volatile by-products as impurities and unreacted HF. The bottoms cuts of the distillation column contains recyclable and non-recyclable heavies. The recyclable heavies are recycled back to the step (a) reactor. The non-recyclable heavies are disposed of.

The process then performs a step (c) of recovering HF present after step (b). This is preferably conducted by vapor-liquid or liquid—liquid extraction. This is preferably performed with a sulfuric acid absorber followed by a caustic or water scrubber. The mixture of fluorocarbons resulting from step (b) is in admixture with hydrogen fluoride. The HFC and HF may be separated by adding sulfuric acid to the HFC/HF mixture. This forms a phase rich in HFC and phase rich in the hydrogen fluoride and sulfuric acid. Sulfuric acid is preferably added such that the weight ratio of sulfuric acid to hydrogen fluoride ranges from about 1:1 to about 10:1. More preferably the weight ratio ranges from about 1:1 to about 8:1 and most preferably from about 2:1 to about 4:1. Preferably the extraction is conducted at a temperature of from about −20° C. to about 100° C., more preferably from about −10° C. to about 60° C., and most preferably from about 0° C. to about 40° C. The reaction is usually conducted at normal atmospheric pressure, however, higher or lower pressure conditions may be used by those skilled in the art. Pressure is preferably about 100 psig or less; more preferably about 50 psig or less, and most preferably about 20 psig or less.

The sulfuric acid/HF mixture from the sulfuric acid absorber is fed to a HF recovery column (not shown in FIG. 1). The HF and sulfuric acid may then be recycled. That is, the BF may be recirculated to the step (a) starting reaction for the formation of the HFC-245fa or HFC-236fa and the sulfuric acid may be recycled for use in the extraction step(c). The organic portion of the mixture exiting the sulfuric acid absorber is optionally fed into a distillation column (not shown in FIG. 1) to remove light products which are recycled.

Upon adding the sulfuric acid to the mixture of fluorocarbon and HF, two phases form. An upper phase is formed which is rich in organics and a lower phase which is rich in HF/sulfuric acid. By the term "rich" is meant, the phase contains more than 50% of the indicated component in that phase, and preferably more than 80% of the indicated component in that phase. The extraction efficiency of the fluorocarbon can range from about 90% to about 99%. After the separation of the phases, one removes the upper phase rich in the organics from the lower phase rich in the

4

hydrogen fluoride and sulfuric acid. One may optionally repeat the extraction by adding more sulfuric acid. Preferably one thereafter separates the hydrogen fluoride and sulfuric acid from the removed lower phase.

Alternatively the sulfuric acid absorber may be replaced by a HF/water azeotrope absorber. The HF/water azeotrope weight ratio is preferably maintained at about 42% HF and 58% water. HF is extracted and recycled back to the reactor in the same manner as in the sulfuric acid.

The HFC-245fa or HFC-236fa rich stream exiting either the light column or the sulfuric acid absorber is fed to a caustic or water scrubber for removal of acidity. Such a scrubber is well known in the art and conventionally comprises a caustic scrubbing with aqueous NaOH or KOH under conditions sufficient to neutralize residual acidity.

A photochlorination unit is then used to remove unsaturates in the HFC-245fa or HFC-236fa stream. This is done by adding chlorine to the stream to react with unsaturates in the presence of UV light. Photochlorination of unsaturates is well known in the art. The mole ratio of $Cl_2$/total unsaturates is preferably about 5 or less, more preferably about 4 or less, and most preferably about 3 or less. Pressure is not critical, although it is preferably operated under atmospheric or subatmospheric pressure. Temperature is preferably about 60° C. or less, more preferably about 40° C. or less and most preferably about 15° C. or less. UV light preferably has a wavelength of less than about 400 nanometers. The mixture is exposed to the UV light for a time and at an energy level sufficient to reduce unsaturates to less than about 500 ppm.

HFC-245fa or HFC-236fa is then recovered in a step (e) by distillation of the intermediate resulting from step (d). Distillation can be a batch or continuous distillation. In the batch mode, one distillation column is sufficient. In a continuous mode, two distillation columns may be required, one to remove light distillates and the other to remove heavies. Pressure of the distillation(s) is preferred to run at about 200 psig or less, more preferably about 150 psig or less and most preferably about 100 psig or less.

The HFC-245fa or HFC-236fa produced has a purity of at least about 99.5%. The reactions of the present invention may be conducted in either a batch or continuous mode of operation, however, continuous operation is preferred.

The following non-limiting examples serve to illustrate the invention.

EXAMPLE 1

400 lbs. of antimony pentachloride catalyst is charged into a 50 gallon reactor. The reactor temperature is raised to 95° C. 605 lbs./day of HCC-240, 332 lbs./day of HF and 36 lbs./day of chlorine are fed to the reactor continuously. The reactor pressure is maintained at about 150 psig. The product stream contains HFC-245fa, HF, HCl and organic by-products including 1,3,3,3-tetrafluoropropene, 1-chloro-3,3,3-trifluoropropene, and 1-chloro-1,3,3,3-tetrafluoropropene. About 504 lbs./day of HCl is removed from the product stream by low temperature distillation. The HCl free product stream is then fed to a sulfuric acid absorber to extract excess HF and to recycle HF back to the reactor. The effluent of the absorber is fed to a acid scrubber to remove trace amounts of HF. The HF-free product stream is then fed to a photochlorinator. Chlorine is added to remove the unsaturates in the presence of UV light. The excess chlorine is removed by aqueous wash by using caustic and sodium sulfite. The chlorine-free effluent is then dried and fed to a final distillation. The HFC-245fa produced

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 08/02/2007

HON0033121

5,763,706

<table>
<tr><td>

5

has high quality (99.5% purity) and about 300 lbs./day is produced. The single pass yield is about 80%. The yield with recycle of heavies and lights is greater than 90%.

### EXAMPLE 2

Example 1 is repeated except a distillation column is added after the HCl column and before the sulfuric acid absorber. This column is used to remove the heavies from the crude product stream exiting the HCl column. About 50% of the heavies are recyclable and are recycled back to the reactor. The light product mixture exiting the top of the heavies column is fed back to the sulfuric acid absorber. The HFC-245fa produced is greater than 300 lbs./day.

### EXAMPLE 3

Example 2 is repeated except an additional distillation column is added between the caustic scrubber and the sulfuric acid absorber to remove and recycle light interme-diates. The bottoms of this distillation column is fed to the caustic scrubber. The HFC-245fa produced is greater than 300 lbs./day.

### EXAMPLE 4

Example 1 is repeated except a distillation column is added before the photochlorinator and after the caustic scrubber to remove and recycle the light by-products. The bottom of this lights distillation column is fed to the pho-tochlorinator. The HFC-245fa produced is greater than 300 lbs./day.

### EXAMPLE 5

Example 1 is repeated except the sulfuric acid absorber is replaced by HF/water azeotrope absorber. The BF/water azeotrope weight ratio is maintained at about 42% HF and 58% water. HF is extracted and recycled back to the reactor in the same manner as in the sulfuric acid.

### EXAMPLE 6

A 2.5 gallon PTFB-lined reactor is charged with 5 lbs. HF and 1.2 lbs. antimony pentachloride catalyst. 6.2 lbs. of 1,1,1,3,3,3-hexachloropropane are charged into the reactor. The reactor temperature is brought to 92° C. and pressure is controlled at less than 240 psig. Hourly samples are taken during the batch run. After 7 hours the reaction is complete and the yield of HFC-236fa is approximately 88%.

### EXAMPLE 7

Example 1 is repeated except the organic feed is changed from HCC-240 (1,1,1,3,3-pentachloropropane) to HCC-230 (1,1,1,3,3,3-hexachloropropane). The reaction is conducted at 95° C. The yield of HFC-236fa is 90%.

What is claimed is:

1. A process for the preparation of fluoropropanes which comprises (a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in the presence of a fluorination catalyst;

(b) optionally removing HCl produced by step (a); and

(c) recovering HF present after step (b).

2. The process of claim 1 further comprising the subse-quent steps of: (d) removing unsaturated compounds present after step (c) by photochlorination; and (e) recovering 1,1, 1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof from the result of step (d) by distillation.

</td><td>

6

3. The process of claim 1 wherein step (a) is conducted in a liquid phase.

4. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of transition metal halides, Group IVb metal halides and Group Vb metal halides and mixtures thereof.

5. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of chrome halides, $SbCl_5$, $SbCl_3$, $TaCl_5$, $SnCl_4$, $NbCl_5$, $TiCl_4$, $MoCl_5$ and mixtures thereof.

6. The process of claim 1 wherein step (a) is conducted at a temperature of from about 60° to about 140° C.

7. The process of claim 1 wherein step (a) is conducted at a pressure of from about 50 to about 300 psig.

8. The process of claim 1 wherein chlorine feed to reaction step (a) in an amount sufficient to maintain the catalytic activity of the catalyst.

9. The process of claim 1 wherein the HF to HCC-240fa mole ratio ranges from about 4 to about 10.

10. The process of claim 1 further comprising an addi-tional step after step (a) and before step (b), wherein any unreacted hydrogen fluoride and catalyst in the reaction product resulting from step (a) is removed and recycled to the step (a) reaction.

11. The process of claim 1 wherein step (b) is conducted by distillation.

12. The process of claim 1 further comprising an addi-tional step after step (b) and before step (c), comprising distilling the product resulting from step (b) to produce an overhead of the distillation column comprising 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof, hydrogen fluoride, unsaturated compounds and other impurities.

13. The process of claim 11 wherein the additional distilling step after step (b) and before step (c) is conducted at a pressure of from about 200 psig or less.

14. The process of claim 1 wherein step (c) is conducted by liquid-vapor extraction.

15. The process of claim 13 wherein step (c) is conducted by adding sulfuric acid to the product resulting after step (b) and then separating therefrom a mixture of sulfuric acid and HF from a reaction mass balance comprising 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof, unsaturated compounds and other impuri-ties.

16. The process of claim 15 comprising the step of removing residual acids from said reaction mass balance after step (c).

17. The process of claim 16 wherein the step of removing residual acids from said reaction mass balance after step (c) is conducted with a caustic scrubber or a water scrubber.

18. The process of claim 15 further comprising separating sulfuric acid and HF from the mixture of sulfuric acid and HF.

19. The process of claim 18 further comprising recycling HF recovered from step (c) back to step (a).

20. The process of claim 2 wherein step (d) is conducted with chlorine in a mole ratio of $Cl_2$ to total unsaturated compounds is about 5 or less.

21. The process of claim 2 wherein the step (e) distillation is conducted at about 200 psig or less.

22. The process of claim 1 wherein 1,1,1,3,3-pentafluoropropane produced.

23. The process of claim 1 wherein 1,1,1,3,3,3-hexafluoropropane produced.

24. The process of claim 1 wherein a mixture of 1,1,1,3,3-pentafluoropropane and 1,1,1,3,3,3-hexafluoropropane is produced.

</td></tr>
</table>

ClibPDF - www.fastio.com

HON0033122

5,763,706

7

25. The process of claim 1 wherein steps (a) through (c) are conducted in a continuous mode.

26. The process of claim 2 wherein steps (a) through (e) are conducted in a continuous mode.

27. A process for the preparation of fluoropropanes which comprises

(a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in a liquid phase in the presence of a fluorination catalyst;

8

(b) optionally removing HCl produced by step (a) by distillation; and

(c) recovering HF present after step (b) by liquid-vapor or liquid—liquid extraction;

(d) optionally removing unsaturated compounds present after step (c) by photochlorination; and

(e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or mixtures thereof from the result of step (d) by distillation.

* * * * *

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 08/02/2007

HON0033123

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO  : 5,763,706

DATED      : June 9, 1998

INVENTOR(S) : Tung et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 1, line 39, delete "is".

Column 3, line 19, delete "HIFC-245fa" and substitute therefor -- HFC-245fa --.

Column 3, line 50, delete "BF" and substitute therefor -- HF --.

Column 3, line 65, delete "99%" and substitute therefor -- 99% --.

Column 5, line 35, delete "BF/water" and substitute therefor -- HF/water --.

Signed and Sealed this

Eighth Day of February, 2000

Attest:

Q. TODD DICKINSON

Attesting Officer

Commissioner of Patents and Trademarks

Copy provided by USPTO from the PIRS Image Database on 08/02/2007

HON0033124

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SOLVAY, S.A.              )
                                )
         Plaintiff,        )
                                )     C.A. No. 06-557-SLR
         v.             )
                                )     **JURY TRIAL DEMANDED**
HONEYWELL SPECIALTY      )
MATERIALS, LLC and        )
HONEYWELL INTERNATIONAL INC.,  )
                                )
         Defendants.     )

## SOLVAY'S RESPONSES AND OBJECTIONS TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S FIRST SET OF REQUESTS FOR ADMISSION NOS. 1-27

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Solvay, S.A. ("Solvay") responds to defendant Honeywell International Inc.'s ("Honeywell's") first set of requests for admission nos. 1-27 as follows.

### GENERAL OBJECTIONS AND QUALIFICATIONS

1.     Solvay has not yet completed its investigation, collection of information, discovery and analysis relating to this action. These responses are based on information known and available to Solvay at this time. Solvay reserves the right to modify, change, or supplement its responses and to produce additional evidence at trial.

2.     Solvay reserves all objections to the use of its answers. All such objections may be interposed by Solvay at the time of trial or as otherwise required by the rules or order of the Court.

3.     Insofar as an answer by Solvay may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular answer only.

by reference as if fully set forth herein." Such incorporation by reference of "instructions" from interrogatories and document requests into a set of Fed. Rule Civ. Proc. 36 Requests for Admission makes no sense and purports to impose obligations on Solvay that do not exist under Rule 36. Moreover, Honeywell's statement that it incorporates by reference all "applicable Definitions and Instructions" makes no sense, since Solvay has no idea what Honeywell believes is "applicable" or not "applicable." Thus, these responses are made based on the Federal Rules of Civil Procedure and not any of Honeywell's purported "instructions."

17.     Solvay objects to Honeywell's definition of "SOLVAY PATENTS" and "'817 PATENT," to the extent that they purport to incorporate by reference multiple documents, as vague, ambiguous, overly broad and unduly burdensome.

18.     These General Objections and Qualifications apply to all of Honeywell's discovery requests. To the extent the substance of these General Objections is repeated in response to specific requests, such objections are repeated because they are particularly applicable to such requests and are not to be construed as a waiver of any other General Objections applicable to the information falling within the scope of such requests.

**Request For Admission No. 1:**

The earliest priority DATE SOLVAY will assert in this case for the '817 PATENT is October 23, 1995.

**Response to Request for Admission No. 1:**

Solvay objects to Honeywell's definition of "SOLVAY" to the extent that it purports to include numerous other individuals and entities besides Solvay, S.A. Solvay responds solely on behalf of plaintiff Solvay, S.A. Solvay further objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications," as well as "all underlying patent applications." Thus, the definition as applied is irrelevant, overly broad and unduly burdensome. Solvay further objects on the ground that the request assumes that Solvay will, or is required to, "assert" a particular priority date in this case. Such a request is not a proper Rule 36 request for admission since it does not relate to "statements or opinions of fact or of the

application of law to fact." Solvay further objects on the ground that the request is not directed to any of the claims of the '817 patent but is instead directed generally to the '817 patent. Solvay interprets this request as being limited to the claims of the '817 patent.

Subject to and without waiver of its objections, Solvay acknowledges that the earliest priority date Solvay may assert for the '817 patent is October 23, 1995.

**Request for Admission No. 2:**

SOLVAY will not assert in this case a priority DATE for the '817 PATENT earlier than October 23, 1995.

**Response to Request for Admission No. 2:**

Solvay objects to Honeywell's definition of "SOLVAY" to the extent that it purports to include numerous other individuals and entities besides Solvay, S.A. Solvay responds solely on behalf of plaintiff Solvay, S.A. Solvay further objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications," as well as "all underlying patent applications." Thus, the definition as applied is irrelevant, overly broad and unduly burdensome. Solvay further objects on the ground that the request assumes that Solvay will, or is required to, "assert" a particular priority date in this case. Such a request is not a proper Rule 36 request for admission since it does not relate to "statements or opinions of fact or of the application of law to fact."

Subject to and without waiver of its objections, Solvay acknowledges that it does not intend to assert a priority date for the '817 patent earlier than October 23, 1995.

**Request for Admission No. 3:**

SOLVAY will not assert in this case that it performed in the United States of America any acts relating to any invention disclosed in the '817 PATENT.

**Response to Request for Admission No. 3:**

Solvay objects to Honeywell's definition of "SOLVAY" to the extent that it purports to include numerous other individuals and entities besides Solvay, S.A. Solvay responds solely on behalf of plaintiff Solvay, S.A. Solvay further objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications," as well as "all underlying patent applications. Solvay further objects on the ground that the request assumes that Solvay will, or is required to, "assert" something regarding "any acts relating to any invention disclosed in the '817 PATENT." Such a request is not a proper Rule 36 request for admission since it does not relate to "statements or opinions of fact or of the application of law to fact."

Subject to and without waiver of its objections, Solvay acknowledges that it does not intend to assert that any invention claimed in the '817 patent was reduced to practice in the United States prior to October 23, 1995.

**Request for Admission No. 6:**

SOLVAY will not assert in this case that Jean-Paul Schoebrechts is an inventor of any invention claimed in the '817 PATENT.

**Response to Request for Admission No. 6:**

Solvay objects to Honeywell's definition of "SOLVAY" to the extent that it purports to include numerous other individuals and entities besides Solvay, S.A. Solvay responds solely on behalf of plaintiff Solvay, S.A. Solvay further objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications," as well as "all underlying patent applications." Thus, the definition as applied is irrelevant, overly broad and unduly burdensome. Solvay further objects on the ground that the request assumes that Solvay will, or is required to, "assert" something regarding whether a particular individual is an inventor of any claims, and no such assertion is necessary.

Subject to and without waiver of its objections, Solvay denies this request. If this becomes an issue in this case, then Solvay may assert that Jean-Paul Schoebrechts is an inventor of the '817 patent.

**Request for Admission No. 7:**

The '192 PATENT discloses a process for making 1,1,1,3,3-pentafluoropropane comprising the reaction of 1,1,1,3,3,-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst.

**Response to Request for Admission No. 7:**

Solvay objects to this request on the ground that it seeks an expert opinion on an ultimate legal issue concerning the scope of the '192 patent.

Subject to and without waiver of its objections, Solvay acknowledges that, as set forth in the '192 patent, the '192 patent discloses a "method of manufacturing 1,1,1,3,3-pentafluoropropane" that includes, as disclosed in Example 3 thereof, a reaction of 1,1,1,3,3,-pentachloropropane and hydrogen fluoride in the presence of a fluorination catalyst. Solvay specifically denies that the '192 patent invalidates any claim of the '817 patent.

**Request for Admission No. 8:**

The disclosure in the '192 PATENT has a priority DATE earlier than October 23, 1995.

7

**Response to Request for Admission No. 8:**

Solvay objects to this request on the ground that it seeks an expert opinion on an ultimate legal issue concerning the scope of the '192 patent and is thus not a proper Rule 36 request. Solvay further objects on the ground that the request does not make sense, in part because a "disclosure" in a patent does not have a priority date.

Subject to and without waiver of its objections, Solvay acknowledges that the '192 patent indicates on its face that it was filed in the United States Patent and Trademark Office on a date earlier than October 23, 1995.

**Request for Admission No. 9:**

The application for the '192 PATENT was filed in the United States Patent Office before October 23, 1995.

**Response to Request for Admission No. 9:**

Solvay admits this request.

**Request for Admission No. 10:**

Under the reaction conditions described in Example 3 of the '192 PATENT, at least some of the 1,1,1,3,3-pentafluoropropane that is described as being formed would be in a gaseous phase.

**Response to Request for Admission No. 10:**

Solvay objects to this request on the ground that it seeks an expert opinion on an ultimate legal issue concerning the scope of the '192 patent and the meaning of certain claim terms (i.e., "at least some", "being formed" and "gaseous phase") that are recited in the '817 patent, and is thus not a proper Rule 36 request. The interpretation of claim terms is a matter of law exclusively for the Court pursuant to *Markman v. Westview, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and the Court has not yet made such an interpretation of the claim terms identified in this Request.

Subject to and without waiver of its objections, Solvay denies this request.

**Request for Admission No. 11:**

A person of ordinary skill in the art, reading the description of the reaction conditions in Example 3 of the '192 PATENT, would understand that at least some of the 1,1,1,3,3-pentafluoropropane that is described as being formed would be in a gaseous phase.

**Request for Admission No. 23:**

All claims of the '817 PATENT recite that the invention is an improvement over a prior process for making 1,1,1,3,3-pentafluoropropane.

**Response to Request for Admission No. 23:**

Solvay objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications" as well as "all underlying patent applications." Thus, the definition as applied is irrelevant, overly broad and unduly burdensome.

Subject to and without waiver of its objections, Solvay acknowledges that independent claims 1 and 12 of the '817 patent recite that those claims are directed to "a process for the preparation of 1,1,1,3,3-pentafluoropropane . . . the improvement which comprises . . ."

**Request for Admission No. 24:**

All claims of the '817 PATENT recite that a previously known process for making 1,1,1,3,3-pentafluoropropane comprised the reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst.

**Response to Request for Admission No. 24:**

Solvay objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications" as well as "all underlying patent applications." Thus, the definition as applied is irrelevant, overly broad and unduly burdensome.

Subject to and without waiver of its objections, Solvay acknowledges that independent claims 1 and 12 of the '817 patent recite "a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises . . ."

**Request for Admission No. 25:**

Prior to filing this lawsuit, SOLVAY did not conclude that HONEYWELL's process for making 1,1,1,3,3-pentafluoropropane met all the limitations of any claim of the '817 PATENT.

**Response to Request for Admission No. 25:**

Solvay objects to Honeywell's definition of "SOLVAY" to the extent that it purports to include numerous other individuals and entities besides Solvay, S.A. Solvay responds solely on behalf of plaintiff Solvay, S.A. Solvay further objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications" as well as "all underlying

Subject to and without waiver of its objections, Solvay acknowledges that its claim for monetary relief in this case is for a reasonable royalty for Honeywell's infringement of the '817 patent, in addition to any other legal or equitable remedy available to it.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

Dated:  September 17, 2007
819363 / 30651

By:  */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

16

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on September 17, 2007, a true and

correct copy of the within document was caused to be served on the attorney(s) of record

at the following addresses as indicated:

**VIA HAND DELIVERY**

Thomas C. Grimm
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
tgrimm@mnat.com
lpolizoti@mnat.com

**VIA ELECTRONIC MAIL**

Thomas C. Grimm
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
tgrimm@mnat.com
lpolizoti@mnat.com

Robert G. Krupka
Laura M. Burson
Helen Hong
Kirkland & Ellis LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA  90017
service-solvay@kirkland.com

/s/ Richard L. Horwitz
Richard L. Horwitz

775114 / 30651

byproducts from the process, and to separate the unreacted reactants which are then normally recycled back to the reactor. The purity of the recycle streams are normally determined by the economic trade-off between the incremental cost of the separation subsystem for additional purification of the recycle streams versus the incremental savings in the reactor subsystem as the recycle streams get more pure. It is known to a POSA that recycle columns such as the one in Honeywell's process are always considered to be part of the separation subsystem and not part of the reactor subsystem (*e.g., see* J. M. Douglas, *Conceptual Design of Chemical Processes*, McGraw-Hill (1988), especially the toluene recycle column in Figs 7.3-12, 8.10-2, 8.10-3, 8.10-4, 8.10-5, 8.10-6, 8.10-7, and 8.10-8).

45.    Given the above discussion, and citations, a POSA would interpret the Honeywell HFC-245fa process flow sheet as follows: The reactor subsystem consists of (1) the reactor (which is the vessel where the reaction takes place) and (2) the cat-stripper (which is the device connected to the reactor that performs the task of separating catalyst from the gaseous mixture of compounds that leave the reactor and returns said catalyst back to the reactor as liquid reflux). Thus, the stream leaving the top of the cat-stripper in the Honeywell HFC-245fa process enters the separation system for appropriate refining as discussed above.

46.    In the Honeywell HFC-245fa process, the separation subsystem consists of the recycle column, the HCl removal column, the HF removal column, and other columns and devices for isolating the HFC-245fa. Therefore, Professor Sandler's assertion that the recycle column in the Honeywell process is the "device" referred to in Claim 12 is incorrect.

47.    Moreover, the recycle column in Honeywell's process does not "isolate" HFC-245fa as its being formed, nor does it "separate HFC-245fa from the 'reaction mixture'," as asserted by Professor Sandler. First, it does not isolate HFC-245fa because the distillate stream from the recycle column contains HCl, and more than a residual amount of HF. The existence of HF in the recycle column overhead demonstrates that the recycle column does not isolate HFC-

18

245fa. As explained above, Claim 12 requires that HFC-245fa and HCl be present with only a residual amount of other materials in order to deem HFC-245fa isolated from the reaction mixture. The recycle column does not perform this function.

> **3.** **"wherein said device is controlled…(b) to keep in the reactor in the liquid state the unconverted 1,1,1,3,3-pentachloropropane, most of the hydrogen fluoride and most of the products of partial fluorination of 1,1,1,3,3-pentachloropropane."**

48.     Honeywell's process does not contain a device that performs function (b) because in the process, more than 50% of the hydrogen fluoride and more than 50% of partially fluorinated intermediates do not remain in the reactor vessel in the liquid state. Neither the cat-stripper, nor the recycle column perform this function.

### a.     Cat-stripper

49.     The cat-stripper does not perform function (b) for the reasons stated above. According to Honeywell PFD 574-D-0002 Rev. 2MOC1 (HON0003810), the total flow rate of HF into the reactor is 6448.8 lb/h and the flow rate of HF leaving in the cat-stripper overhead is 4803.0 lb/h. Therefore, 74.5 % of the HF which enters the reactor subsequently leaves in the cat-stripper overhead.

50.     The cat-stripper also does not "keep in the reactor in the liquid state…most of the products of partial fluorination in [HCC-240fa]. In fact, more partially fluorinated compounds leave the reactor + cat-stripper subsystem than enter it. The plant operating data for 2006 shows that 35 lbs/h of partially fluorinated compounds enter the reactor subsystem and 52 lbs/h leave. Exhibit B. The difference of these flow rates is the amount of partially fluorinated compounds lost in the recycle stream as part of the high boiling waste stream. *See* Exhibit B. This is representative of all the other data compiled in all years of operation of the Geismar plant.

### b.    The recycle column

51.    Professor Sandler admits that HF leaves the reactor and that HF returns to the reactor from the recycle column (p.16 of Sandler Report). The PFD he cites (HON0003803) leads one to documents HON0003798-3802, which show that the recycled HF is a superheated gas (at a temperature of 246°F and under a pressure of 175 psig; *see also* Exhibit D) when it returns to the reactor. Claim 12 claims the "device" must keep HF "in the reactor in the liquid state." The phrase, "return to, the reactor" is contained in the '817 patent's specification, disjoined with "keep in…the reactor," and has not been claimed. I understand that because the phrase "return to the reactor" was disclosed but not claimed, it was dedicated to the public. I further understand that the '817 claims cannot be read to cover a process where most of the HF is withdrawn from and then returned to the reactor.

52.    Professor Sandler states that the recycle column accomplishes the tasks of the claimed "device". However, the recycle column in Honeywell's process <u>returns</u> HF to the reactor as a <u>gas</u>. This is a completely different, and in fact the opposite function, as "<u>keep[ing]</u> in the reactor in the <u>liquid state</u>…"

53.    To conclude this point, the Honeywell reactor is NOT equipped with a device that is controlled to perform functions (a) or (b). The cat-stripper does not perform function (a) or (b) and neither does the recycle column.

### F.    <u>Honeywell's Process does not Infringe Claims 13 & 14.</u>

54.    I refer and incorporate all of my arguments stated above regarding Claims 2 & 3. These arguments apply equally to Claims 13 & 14, and accordingly, Honeywell's process does not infringe either of these claims.

### G.     Honeywell's process does not infringe Claim 15.

55.     Claim 15 reads:

> "The process of claim 12 wherein from 5 to 100 moles of hydrogen fluoride are used per mole of 1,1,1,3,3-pentachloropropane."

56.     Claim 15 incorporates by reference all the limitations of claim 12. Therefore, for the reasons stated above, Honeywell's process does not infringe claim 15. In addition, Honeywell has provided Solvay with a preliminary construction of the phrase "5 to 100 moles of hydrogen fluoride are used per mole of 1,1,1,3,3-pentachloropropane" to mean 5 to 100 moles of HF are consumed for each mole of liquid HCC-240fa consumed in the continuous reaction. Honeywell's process consumes less than 5 moles of HF per mole of HCC-240fa consumed in the continuous reaction. Therefore, under the construction above, Honeywell's process does not infringe Claim 15's added limitation. The stoichiometry of the reaction is 5 moles of HF consumed for each mole of HCC-240fa. As explained previously for Claim 4, no commercial reaction is 100% efficient, and the presence of partially fluorinated species in Honeywell's commercial process proves that less than 5 moles of HF are consumed per mole of HCC-240fa that is consumed.

### H.     Honeywell's Process Does Not Infringe Claims 16-18 & 20-22.

57.     Claims 5-7 & 9-11 all incorporate all of the limitations of Claim 1, for the reasons stated above, Honeywell does not infringe these claims.

Dated: November 20, 2007

_____
Michael F. Doherty

21

# EXHIBIT 4

## FULLY REDACTED

# EXHIBIT 5

## FULLY REDACTED

# EXHIBIT 6

## FULLY REDACTED

# EXHIBIT 7

## FULLY REDACTED

# EXHIBIT 8

## FULLY REDACTED

# EXHIBIT 9

## FULLY REDACTED

# EXHIBIT 10

## FULLY REDACTED

# EXHIBIT 11

## FULLY REDACTED

# EXHIBIT 12

## FULLY REDACTED

# EXHIBIT 13

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re application of

Vincent WILMET et al.

Serial No.    09/051,746

Filing Date    June 8, 1998

For    METHOD FOR PREPARING
1, 1, 3, 3-PENTAFLUOROPROPANE

Group Art Unit:  1621

Examiner:  A. SIEGEL

Attny Dkt:  32232-144124

August 30, 2000

**AMENDMENT**

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

This paper is presented in response to the Office Action of May 31, 2000.

Please amend the application as follows:

**IN THE CLAIMS**

Please cancel the claims 19-42 and substitute therefor the following claims:

-- 43.  In a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises carrying out the reaction at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous and isolating and 1,1,1,3,3-pentafluoropropane from

HON0030864

the reaction mixture by drawing off 1,1,1,3,3-pentafluoropropane and

hydrogen chloride in a gaseous phase as each of said 1,1,1,3,3-pentafluoropropane

and hydrogen chloride is being formed.--

-- 44. The process of Claim 43, which comprises conducting the reaction

continuously in a liquid phase and maintaining a molar ratio of the catalyst to

1,1,1,3,3-pentachloropropane maintained from 0.001 to 1000. --

-- 45. The process of Claim 44, wherein the molar ratio of the catalyst to

1,1,1,3,3-pentachloroproprane is greater than 0.5.--

-- 46. The process of Claim 43 wherein from 5 to 100 moles of hydrogen

fluoride are used per mole of 1,1,1,3,3-pentachloroproprane.--

-- 47. The process of Claim 43 wherein the reaction is carried out at a

temperature of approximately 50 to 150° C.--

-- 48. The process of Claim 43 wherein the 1,1,1,3,3-pentachloroproprane is

prepared by reaction between vinyl chloride and tetrachloromethane.--

-- 49. The process of Claim 43, wherein the hydrofluorination catalyst is

selected from the group consisting of derivatives of metals of Groups IIIa, IVa, IVb,

Va, Vb and VIb of the periodic table.--

2

09/051,746

8
--50.  The process of Claim 49, wherein the hydrofluorination catalyst is a derivative of a metal selected from the group consisting of titanium and tin.--

RECEIVED

SEP 01 2008

TECH CENTER 1600/2900

9
--51.  The process of Claim 49, wherein the pentachloropropane is reacted with hydrogen fluoride in the presence of a hydrofluorination catalyst.--

10
--52.  The process of Claim 49, wherein the hydrofluorination catalyst is selected from the group consisting of tin and antimony chlorides, fluorides and chlorofluorides.--

11
--53.  The process of Claim 49, wherein the catalyst is antimony pentachloride.--

12
--54.  In a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises carrying out the reaction in a reactor equipped with a device for drawing off a gas stream at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous and wherein said device is controlled (a) to draw off a gas stream comprising 1,1,1,3,3-pentafluoropropane and hydrogen chloride as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed thereby isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture (b) to keep in the reactor in

3

09/051,746

14

HON0030866

the liquid state the unconverted 1,1,1,3,3-pentachloropropane, most of the hydrogen fluoride and most of the products of partial fluorination of 1,1,1,3,3-pentachloropropane.--

--55.  The process of Claim 54, which comprises conducting the reaction continuously in a liquid phase and maintaining a molar ratio of the catalyst to 1,1,1,3,3-pentachloropropane maintained from 0.001 to 1000.  --

--56.  The process of Claim 55, wherein the molar ratio of the catalyst to 1,1,1,3,3-pentachloroproprane is greater than 0.5.--

--57.  The process of Claim 54, wherein from 5 to 100 moles of hydrogen fluoride are used per mole of 1,1,1,3,3-pentachloroproprane.--

--58.  The process of Claim 54, wherein the reaction is carried out at a temperature of approximately 50 to 150° C.--

--59.  The process of Claim 54, wherein the 1,1,1,3,3-pentachloroproprane is prepared by reaction between vinyl chloride and tetrachloromethane.--

--60.  The process of Claim 54, wherein the hydrofluorination catalyst is selected from the group consisting of derivatives of metals of Groups IIIa, IVa, IVb, Va, Vb and VIb of the periodic table.--

4

09/051,746

19
--61. The process of Claim 60, wherein the hydrofluorination catalyst is a derivative of a metal selected from the group consisting of titanium and tin.--

RECEIVE
SE[...] 2[...]

20
--62. The process of Claim 60, wherein the pentachloropropane is reacted with hydrogen fluoride in the presence of a hydrofluorination catalyst.--

21
--63. The process of Claim 60, wherein the hydrofluorination catalyst is selected from the group consisting of tin and antimony chlorides, fluorides and chlorofluorides.--

22
--64. The process of Claim 60, wherein the catalyst is antimony pentachloride.--

Cancel

### REMARKS

Reconsideration of the outstanding Office Action is respectfully solicited.

Applicants have canceled certain claims but do not disclaim the subject matter thereof and reserve the right to file continuation/division application(s) based thereon. New Claim 43 is based on prior Claim 19. Support for independent Claim 54 appears at p.3, 1.34-p.4, 1.3. The remaining claims are based on the previously considered claims. Claims 43-45 correspond to Claims 19-21; Claims 46 et seq are based on prior claims 46 et seq.

Applicants note the rejection of prior claims under 35 USC 112 second paragraph. The rejections are moot in view of cancellation of the claims rejected under 35 USC 112.

5

09/051,746

HON0030868

Applicants respectfully traverse the rejections of claims under 35 USC 103 over Van Der Puy [hereinafter Van Der Puy '997 and Decker, as applied by the USPTO, and also consider the Van Der Puy reference [hereinafter Van Der Puy '192 cited in applicants' most recent Information Disclosure Statement thereafter.] The error in the art rejection is foreshadowed by the fact that the references alone and the references in combination do not describe the recitations in applicants' claims. The references applied by the USPTO do not describe or suggest the claimed subject matter. The references do not describe the reactant or the product of the rejected claims or the conditions.

Decker is completely irrelevant to the pending claims and to Van Der Puy '997. Since Decker reference is irrelevant to the Claims and since the Decker reference does not provide an expression, i.e., a description, to modify the Van Der Puy '997 reference disclosure for any purpose, the combination of the Decker reference with Van Der Puy does not follow logically to the person of ordinary skill who is neither motivated by the descriptions of 'the combination' nor imbued with an expectation of success to achieve the rejected claimed subject matter. Specifically, Decker excludes the possibility of making the 1,1,1,3,3-pentachloropropane.

Van Der Puy '997 is directed to an entirely different process and product from that claimed. Moreover, Van Der Puy '997 is directed to an entirely different process from that described in Decker. The Decker halogenation of olefins is distinct from that synthesis which is described in VanDerPuy '997. VANDERPUY '997 describes synthesis of 1,1,1,3,3,3-hexafluoropropane. Van der Puy relates to the production of hydrofluorocarbons of the formula

$$CF_3(CH_2CF_2)_nF$$

6

09/051,746



HON0030869

where n = 1 to 3. The process of forming the Van Der Puy '997 hydrofluorocarbons

comprises reacting at least one reactant selected from $CCl_3(CH_2CCl_2)_nCl$,

$CCl_3(CH_2CF_2)_nCl$ or $CCl_2[(CH_2CF_2)_2Cl]_2$, in the presence of a fluorination catalyst,

wherein HF is present in at least stoichiometric amounts per mole of reactant. Van

der Puy describes the reaction of vinylidene chloride with carbon tetrachloride to give

$CCl_3[(CH_2CCl_2)_nCl$ or carbon tetrachloride with vinylidene fluoride to give

$CCl_3(CH_2CF_2)_nCl$ or $CCl_2[(CH_2CF_2)Cl]_2$.

   Moreover, the generic formula of Van der Puy '997 at, e.g., column 1, line 13,

does not embrace the compounds recited in the claims. Whatever the number of

carbon atoms in the Van der Puy generic formula, the number of fluorine atoms in the

compounds is an even number, and never an odd number. By comparison, applicants'

product contains 5 halogen atoms. Moreover, the reactants described at column 2,

lines 17-18, require an even number of halogen atoms -- not an odd number of

halogen atoms. There is no description in Van der Puy of how to make a halogenated

organic compound with an odd number of halogen atoms.

   Thus, not only does Van Der Puy '997 fail to describe the compound of the

rejected claims, but also does Decker fails to describe that compound. Decker only

describes the possibility of adding up to four halogen atoms to an olefin. By

comparison, applicants' claims call for compounds with 5 halogen atoms. Moreover,

Decker's formula for products requires a terminal $-C(R)_2-G'$ which means that one

terminal carbon atoms can only contain one halogen atom, by virtue of the definition

of $G'$. Decker's compound differs from applicants' compound. With respect to a

process, Decker describes the reaction of a symmetrical alkene with a halogenated

compound to form a product containing at least two halogen atoms [G and G'] and up

7

09/051,746

HON0030870

to 4 halogen atoms. In the Examples, (1-bromo-3,3,3-trichloro-1-methylpropyl)benzene is produced from bromotrichloromethane and alpha-methyl styrene; 3-bromo-5,5,5-trichlorovaleronitrile is produced with bromotrichloromethane; 2-bromo-3-(trichloromethyl)norbornane is produced from 2-norbornene and bromotrichloromethane; and 1-chloro-2-(trichloromethyl)cyclohexane is produced from cyclohexene and carbon tetrachloride [Examples 1-4]. Carbon tetrachloride was apparently used in the remaining examples.

The USPTO cites the Decker reference for description of the Decker catalyst. The Decker catalyst is not the subject of the applicants' claims. The Decker catalysis is distinctly different from that described in Van Der Puy '997 and from that recited in the rejected claims.

Both independent claims are limited to a hydrofluorination process of 1,1,1,3,3-pentachloropropane in presence of a catalyst at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous. It is submitted that in view of this limitation, 1,1,1,3,3-pentafluoropropane which has an atmospheric boiling point of $+14°$ C is not analogous to 1,1,1,3,3,3-hexafluoropropane which has an atmospheric boiling point of $-1°$ C.

Specifically applicants respectfully traverse the rejection of the process claims at issue over VAN DER PUY '997 in view of Decker. In applicants' view, the examiner's rejection of these claims over VAN DER PUY is based on the alleged 'analogy' between 1,1,1,3,3,3-hexachloropropane and 1,1,1,3,3,-pentachloropropane; an 'analogy' between vinyl chloride and vinylidene chloride, and an 'analogy' of reactivity 'expected' when using 1,1,1,3,3,-pentachloropropane with a catalyst and

8

09/051,746

HON0030871

hydrogen fluoride. In applicants view, these issues of 'analogy' relate to a determination of the evidence of level of skill in the art, and this determination has been previously discussed.

No motivation is provided by Van Der Puy '997 with Decker to make 1,1,1,3,3-pentafluorpropane or to suggest its use as a blowing agent or propellant, as there is no description of the compound in the applied art. Absent any motivation derivable from the applied art, the USPTO turns to 'expectation of success.' In view of the description deficiencies, in applicants' view, the evidence does not establish a basis to assert 'expectation of success'.

It is applicants' understanding that the examiner's rejection of the claims over VAN DER PUY '997 is based on the alleged analogy of 1,1,1,3,3,3-hexachloropropane and 1,1,1,3,3,-pentachloropropane, and, on the basis of that alleged analogy, the USPTO suggests that alleged analogy would convey a reasonable expectation of success when using 1,1,1,3,3,-pentachloropropane with a catalyst and hydrogen fluoride in analogy to VAN DER PUY. The record is devoid of evidence to support such an analogy. Moreover, applicants presented a reference Advances in Fluoride Chemistry, Vol.3, p.180-183, 200-209) relating to the synthesis of 2,2-dihydrofluoropropanes, which directly disputes that inference of any analogy.

The only description and motivation, independent factual inquiries, for the applicants' claims comes from applicants' disclosure, not from the applied prior art. This position is buttressed by the fact that the USPTO rejection does not describe the reactant or the product of the rejected claims. The position is emphasized by the fact that the disclosures of products in each of the applied references exclude the product of the claims and by the fact that the applied art is silent with respect to the utility of

9

09/051,746

HON0030872

1,1,1,3,3,-pentafluoropropane.  In addition, the applied art does not enable the subject matter of the claims.  Moreover, the applied art is silent with respect to claims 20-26 and 28-36, which relate to continuous reactions.

The record here provides no basis for a reasonable expectation of producing the process of the rejected claims.  As noted above, the 1,1,1,3,3-pentachloropropane is structurally different from compounds fluorinated in Van der Puy, by one chlorine atom; it is structurally different from the compound of the comparative example 1 by exchange of a methyl group for a hydrogen; the compounds fluorinated in the examples of Van der Puy differ from the one in the comparative example by exchanging Cl for methyl.  For said compounds, totally different behavior in fluorination reaction is observed.  Consequently, the behavior of 1,1,1,3,3-pentachloropropane in fluorination reaction was unpredictable over Van der Puy '997; hence Van der Puy '997 provides no reasonable expectation of producing the process of the rejected claims.

Lastly, it is noted that, if the actual description of the two references to Van der Puy and Decker were combined, the literal combination would not produce the recitations of the rejected claims.  Accordingly, it is believed that the grounds of rejection must be based on applicants' own disclosure, which violates of the language of Section 103(a).

The claims are now directed to a hydrofluorination process of 1,1,1,3,3-pentachloropropane to produce 1,1,1,3,3-pentafluoropropane under specific process conditions.

10

09/051,746

Both independent claims are limited to a hydrofluorination process of 1,1,1,3,3-pentachloropropane in presence of a catalyst at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous. It is submitted that in view of this limitation, 1,1,1,3,3-pentafluoropropane which has an atmospheric boiling point of +14° C is not analogous to 1,1,1,3,3,3-hexafluoropropane which has an atmospheric boiling point of -1° C.

Applicants note Van Der Puy '192 which was cited by applicants in the April 21, 2000 Information Disclosure. The instant claim 43 requires the reaction at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous and isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture by drawing off 1,1,1,3,3-pentafluoropropane and hydrogen chloride in a gaseous phase as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed. Example 3 of VANDERPUY '192 describes a hydrofluorination process of 1,1,1,3,3-pentachloropropane in presence of a catalyst wherein hydrogen chloride is periodically vented.

VANDERPUY '192 does not provide motivation:

(a)    to select carrying out the reaction at a temperature and under a pressure at which    1,1,1,3,3-pentafluoropropane is gaseous,

(b)    to draw off in vapour phase 1,1,1,3,3-pentafluoropropane and hydrogen chloride as each    of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed.

11

HON0030874

In fact, as stated on p. 3, 1.13-15 of the application, the process of the invention enables 1,1,1,3,3-pentafluoropropane to be easily separated from the reaction mixture, which is an advantage as it makes it possible to retain or to return to the reactor the unconverted reactants and chlorofluoropropanes possibly formed by incomplete fluorination of 1,1,1,3,3-pentachloropropane (see p. 3, 1.28-30).

This advantage is even more apparent in the second independent claim which is limited to a process wherein the reaction is carried out in a reactor equipped with a device for drawing off a gas stream which is controlled.

    (a)    to draw of a gas stream of 1,1,1,3,3-pentafluoropropane and hydrogen chloride as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed thereby isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture.

    (b)    <u>to keep in the reactor in the liquid state the unconverted 1,1,1,3,3-pentachloropropane, most of the hydrogen fluoride and most of the products of partial fluorination of 1,1,1,3,3-pentachloropropane.</u>

Feature (b) is not suggested in VANDERPUY '192.

The claimed process is particularly suitable for carrying out the manufacture of 1,1,1,3,3-pentafluoropropane in a continuous mode, as claimed in claim 44.

In sum, the inventive process provides specific instructions how to advantageously operate a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride by using embodiments which are neither taught nor suggested in VANDERPUY '192.

Reconsideration and early allowance are respectfully solicited.

12

09/051,746

HON0030875

Should any additional fee be required, please charge the same to our deposit account #22-0261, and advise us accordingly.

Respectfully submitted,

*Marina V. Schneller*

Marina V. Schneller
Reg. No. 26,032

MVS:pw

VENABLE
P.O. Box 34385
Washington, D.C.  20043-9998
Telephone: (202) 962-4800
Telefax:  (202) 962-8300

DC2#237603

13

09/051,746

HON0030876

# EXHIBIT 14

## FULLY REDACTED

EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOLVAY, S.A.                              )
                                          )
                Plaintiff,                )
                                          )        C.A. No. 06-557-SLR
        v.                                )
                                          )        **JURY TRIAL DEMANDED**
HONEYWELL SPECIALTY                       )
MATERIALS, LLC and                        )
HONEYWELL INTERNATIONAL INC.,             )
                                          )
                Defendants.               )

### SOLVAY'S RESPONSES AND OBJECTIONS TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S SECOND SET OF REQUESTS FOR ADMISSION NOS. 28-37

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Solvay, S.A. ("Solvay") responds to defendant Honeywell International Inc.'s ("Honeywell's") second set of requests for admissions 28-37 as follows:

### GENERAL OBJECTIONS AND QUALIFICATIONS

1.      Solvay has not yet completed its investigation, collection of information, discovery and analysis relating to this action. These responses are based on information known and available to Solvay at this time. Solvay reserves the right to modify, change, or supplement its responses and to produce additional evidence at trial.

2.      Solvay reserves all objections to the use of its answers. All such objections may be interposed by Solvay at the time of trial or as otherwise required by the rules or order of the Court.

3.      Insofar as an answer by Solvay may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular answer only.

Admission makes no sense and purports to impose obligations on Solvay that do not exist under Rule 36. Moreover, Honeywell's statement that it incorporates by reference all "applicable Definitions and Instructions" makes no sense, since Solvay has no idea what Honeywell believes is "applicable" or not "applicable." Thus, these responses are made based on the Federal Rules of Civil Procedure and not any of Honeywell's purported "instructions."

17.    Solvay objects to Honeywell's definition of "SOLVAY PATENTS" and "'817 PATENT," to the extent that they purport to incorporate by reference multiple documents, as vague, ambiguous, overly broad and unduly burdensome.

18.    These General Objections and Qualifications apply to all of Honeywell's discovery requests. To the extent the substance of these General Objections is repeated in response to specific requests, such objections are repeated because they are particularly applicable to such requests and are not to be construed as a waiver of any other General Objections applicable to the information falling within the scope of such requests.

RESPONSES

**REQUEST FOR ADMISSIONS NO. 28**

Claim 1 of the '817 PATENT is not limited to a continuous process.

**Response to Request for Admissions No. 28**

Solvay objects to Honeywell's definition of "the '817 PATENT" because it purports to include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation and/or divisional applications," as well as "all underlying patent applications." Thus, the definition as applied is irrelevant, overly broad and unduly burdensome. Solvay further objects to this request because it is not clear what "continuous" means in this context. Solvay also objects to this request on the ground that it seeks an expert opinion on an ultimate legal issue

4

concerning the meaning of certain claim terms that are recited in U.S. Patent No. 6,730,817, and

is thus not a proper Rule 36 request. The interpretation of claim terms is a matter of law

exclusively for the Court pursuant to *Markman v. Westview, Inc.*, 52 F.3d 967, 977 (Fed. Cir.

1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and the Court has not yet made such an

interpretation of the claim terms identified in this Request.

Subject to and without waiver of its objections, Solvay denies this request. Claim 1 of

U.S. Patent No. 6,730,817 covers processes in which 245fa and HCl are drawn off as each is

being formed. Claim 1 covers such processes in which one or more starting materials are fed to

the reactor at one time or in which one or more starting materials are fed to the reactor on an

ongoing basis.

## REQUEST FOR ADMISSIONS NO. 29

Claim 1 of the '817 PATENT includes a batch process.

### Response to Request for Admissions No. 29

Solvay objects to Honeywell's definition of "the '817 PATENT" because it purports to

include as part of that definition not only U.S. Patent No. 6,730,817 but also "all continuation

and/or divisional applications," as well as "all underlying patent applications." Thus, the

definition as applied is irrelevant, overly broad and unduly burdensome. Solvay further objects

to this request because it is not clear what "batch process" or "including a batch process" means

in this context. Solvay also objects to this request on the ground that it seeks an expert opinion

on an ultimate legal issue concerning the meaning of certain claim terms that are recited in U.S.

Patent No. 6,730,817, and is thus not a proper Rule 36 request. The interpretation of claim terms

is a matter of law exclusively for the Court pursuant to *Markman v. Westview, Inc.*, 52 F.3d 967,

977 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and the Court has not yet made such

physical properties, including a boiling point of about 14°C., which make it particularly

attractive as a blowing agent."


OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

Dated:  October 5, 2007
823799 / 30651

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 5, 2007, a true and correct copy of the

within document was caused to be served on the attorney(s) of record at the following addresses

as indicated:

### VIA HAND DELIVERY

Thomas C. Grimm
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
tgrimm@mnat.com
bschladweiler@mnat.com

### VIA ELECTRONIC MAIL

Thomas C. Grimm
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
tgrimm@mnat.com
bschladweiler@mnat.com

Robert G. Krupka
Laura M. Burson
Helen Hong
Kirkland & Ellis LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA  90017
service-solvay@kirkland.com

/s/ David E. Moore
David E. Moore

775114 / 30651

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered recipients.

I also certify that on February 27, 2008, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

**BY E-MAIL**

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street, P.O. Box 951
Wilmington, DE  19899-0951

**BY E-MAIL**

Arthur I. Neustadt, Esquire
Jean-Paul Lavalleye, Esquire
Barry J. Herman, Esquire
Jeffrey B. McIntyre, Esquire
Michael E. McCabe, Jr., Esquire
Aarti Shah, Esquire
John F. Presper, Esquire
OBLON, SPIVAK, McCLELLAND,
   MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314

*/s/ Thomas C. Grimm*

_____
Thomas C. Grimm (#1098)
tgrimm@mnat.com