IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLVAY, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-557-SLR |
| | ) | |
| HONEYWELL INTERNATIONAL INC., | ) | |
| | ) | |
| Defendant. | ) | PUBLIC VERSION |
| | ) | |

## DEFENDANT HONEYWELL INTERNATIONAL INC.'S
## OPENING CLAIM CONSTRUCTION BRIEF FOR U.S. PATENT NO. 6,730,817

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Robert G. Krupka, P.C.
Laura M. Burson
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Suite 3400
Los Angeles, CA 90017
(213) 680-8400

Confidential Version Filed: February 18, 2008
Public Version Filed: March 6, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

I.  PRELIMINARY STATEMENT .................................................................................1

II. TECHNOLOGY BACKGROUND:  The State Of The Art Of Manufacturing
    HFC-245fa Prior To The Filing Of Solvay's '817 Patent.......................................2

    A.  How To Make HFC-245fa Out Of HCC-240fa And HF Is Disclosed In
          Honeywell's Prior Art '192 Patent. ..................................................................2

    B.  The Purported "Improvement" Of The '817 Patent...........................................6

III. THE LAW OF CLAIM CONSTRUCTION.............................................................8

    A.  Construing Claims As One Of Skill In The Art................................................8

    B.  Claim Construction Focuses On Intrinsic Evidence. .......................................8

    C.  Extrinsic Evidence May Be Helpful. ...............................................................9

IV. CONSTRUCTIONS OF THE DISPUTED CLAIM TERMS. ...........................10

    A.  Construction Of Independent Claim 1. ..........................................................10

        1.  The Preamble. .........................................................................................11

            a.  The Jepson preamble admits prior art. ...........................................11

            b.  The parties essentially agree on the preamble construction...........11

        2.  The First Limitation:  "carrying out the reaction . . ." ...............................12

            a.  Intrinsic Evidence – The Claim Language.....................................12

            b.  Intrinsic Evidence – The Specification. .........................................13

            c.  Intrinsic Evidence – The Prosecution History. ..............................13

        3.  The Second Limitation:  "and isolating [HFC-245a] from the
               reaction mixture by drawing off [HFC-245fa] and hydrogen
               chloride as each    . . . is being formed."................................................15

            a.  Intrinsic Evidence – The Claim Language.....................................15

            b.  Intrinsic Evidence – The Specification. .........................................17

            c.  Intrinsic Evidence – The Prosecution History. ..............................17

            d.  The Extrinsic Evidence. .................................................................18

    B.  Construction Of Independent Claim 12. ........................................................19

        1.  The First Limitation:  ". . . carrying out the reaction . . ." ........................19

        2.  The Second Limitation:  ". . . to draw off a gas stream . . . thereby
               isolating [HFC-245fa] from the reaction mixture . . ."..............................20

        3.      The Third Limitation: ". . . to keep in the reactor in the liquid state . . . most of the [HF] . . ." ............................................................................20

  C.    Construction Of Dependent Claims 2 And 13. .......................................................22

        1.      The First Limitation: ". . . conducting the reaction continuously in the liquid phase . . ." ..................................................................................22

        2.      The Second Limitation: ". . . molar ratio of catalyst to [HCC-240fa]   . . ." ...............................................................................23

  D.    Construction of Dependent Claims 3 and 14. .......................................................24

  E.    Construction Of Dependent Claims 4 And 15. .....................................................25

  F.    Dependent Claims 5-7, 10-11, 16-18, 21-22...........................................................26

V.    CONCLUSION................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.,*
    467 F.3d 1370 (Fed. Cir. 2006) ............................................................................ 9

*Atofina v. Great Lakes Chemical Co.,*
    441 F.3d 991 (Fed. Cir. 2006) ................................................................... 9, 10, 18

*Chiron Corp. v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004) ............................................................................ 8

*Halliburton Energy Services, Inc. v. M-I LLC,*
    No. 2007 - 1149, 2008 WL 216294  (Fed. Cir. Jan. 25, 2008) ........................... 16

*Hockerson-Halberstadt, Inc. v. Avia Group Inter., Inc.,*
    222 F.3d 951 (Fed. Cir. 2000) .............................................................................. 9

*Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.,*
    285 F.3d 1046 (Fed. Cir. 2002) .......................................................................... 21

*Pentec, Inc. v. Graphic Controls, Corp.,*
    776 F.2d 309 (Fed.Cir.1985) .............................................................................. 11

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................. 8, 9, 10, 20

*Rexnord Corp. v. Laitram Corp.,*
    274 F.3d 1336 (Fed. Cir. 2001) .......................................................................... 25

*Scanner Technologies Corp. v. Icos Vision Systems Corp., N.V.,*
    486 F.Supp.2d 330 (S.D.N.Y. 2007) ................................................................... 9

*Southwall Tech.,*
    54 F.3d 1570 (Fed. Cir. 1995) ............................................................................ 25

**Statutes**

37 C.F.R. § 1.75(e) (1996) .................................................................................... 12

## I.     PRELIMINARY STATEMENT

Plaintiff Solvay, S.A. ("Solvay") brought this action against Honeywell International Inc. ("Honeywell") alleging infringement of U.S. Patent No. 6,730,817 ("the '817 Patent"). (Ex. 1, '817 Patent). In accordance with the Scheduling Order, the parties have exchanged contentions regarding constructions of the disputed claim terms and have submitted a Joint Claim Construction Statement and Chart. (D.I. 107 and 108).

In the present case, Solvay alleges that its '817 Patent -- an "improvement" method patent -- is infringed by Honeywell's commercial process for making the chemical 1,1,1,3,3-pentafluoropropane, also called "HFC-245fa." HFC-245fa is a hydrofluorocarbon compound primarily used as a foam blowing agent for insulation applications. Honeywell, a world-wide leader in the manufacture of fluorocarbons, began developing a process for manufacturing HFC-245fa     REDACTED     to be a replacement for ozone-depleting chlorofluorocarbons (CFCs) and hydrochlorofluorocarbons (HCFCs) being phased out by the Montreal Protocol of 1987. After years of research and development costing millions of dollars, Honeywell began commercial manufacture of HFC-245fa in August 2002 -- *more than a year and a half before* the issuance of the '817 Patent. As a result of its development efforts, Honeywell has been awarded a number of patents of its own relating to the manufacture of HFC-245fa, including U.S. Patent No. 5,574,192 ("the '192 Patent"), the first patent to disclose a chemical process for making HFC-245fa from the chlorinated starting material known as "HCC-240fa." The chemical process disclosed in the '192 Patent is the same chemical process over which the '817 Patent purports to be an "improvement."

Honeywell's proposed constructions submitted herewith are based on plain and ordinary meanings as used in the claims, the specification and the prosecution history of the asserted patent. Honeywell additionally refers to extrinsic sources, such as dictionaries and expert

1

testimony, only to confirm that its proposed constructions are based on the plain and ordinary meaning as would be understood by one of ordinary skill in the art in the relevant time period (1995).

## II.    TECHNOLOGY BACKGROUND: The State Of The Art Of Manufacturing HFC-245fa Prior To The Filing Of Solvay's '817 Patent.

### A.    How To Make HFC-245fa Out Of HCC-240fa And HF Is Disclosed In Honeywell's Prior Art '192 Patent.

In 1987, member countries to the Montreal Protocol agreed to the eventual phase-out of ozone-depleting chlorofluorocarbon (CFC) and hydrochlorofluorocarbon (HCFC) chemicals that were used as, among other things, blowing agents in the manufacture of foam. (Ex. 2, Gayer Sept. 6, 2007 Dep. 148:16 - 149:2).[1]    Therefore,    REDACTED    Honeywell's predecessor company AlliedSignal Inc. began to work on a replacement for these substances.    (Ex. 3, Shankland Sept. 20, 2007 Dep. 30:1 - 30:6, 31:4 - 31:13).  In particular, Honeywell focused its efforts on a hydrofluorocarbon known as HFC-245fa.  (*Id.* at 29:21 - 30:6, 54:13 - 15).

Among other things, Honeywell's research and development resulted in a process for making HFC-245fa from a starting material known as 1,1,3,3,3-pentachloropropane, also called HCC-240fa.  (Ex. 4, '192 Patent col. 1 lns. 8 - 17; Ex. 3, Shankland Sept. 20, 2007 Dep. at 173:15 - 174:5).  Honeywell's efforts led to filing a patent application in 1994 that issued in 1996 as U.S. Patent 5,574,192 ("the '192 Patent).  It is undisputed that Honeywell's '192 Patent is prior art to Solvay's '817 Patent which has a priority date no earlier than October 1995. (Ex. 11,

---

[1]    All Exhibits are attached to the Appendix to Honeywell International Inc.'s Opening Claim Construction Brief, filed and submitted concurrently herewith.

Solvay's Resp. to Honeywell RFA Nos. 1 and 2; Ex. 12, Solvay's Resp. to Honeywell Interrog. No. 8).[2]

Honeywell's '192 Patent describes a process for making HFC-245fa from two starting materials, HCC-240fa and HF, in the presence of a antimony pentachloride hydrofluorination catalyst. (Ex. 4, '192 Patent col. 2 lns. 17 - 27, col. 3 lns. 1 - 10). As described further below, in this process, the HF (hydrogen fluoride) splits apart into hydrogen and fluorine. The fluorine atoms replace the chlorine atoms found in HCC-240fa, forming the desired HFC-245fa, while the newly freed chlorine atoms join up with the hydrogen, forming the byproduct HCl (hydrogen chloride).

More formally, the reaction is also described in the following chemical equation:

$$\text{HCC-240fa} + 5\text{ HF} \xrightarrow{\text{antimony pentachloride catalyst}} \text{HFC-245fa} + 5\text{ HCl}$$

As reflected in the equation, 1 mole of HCC-240fa (a mole is a unit of molecular weight) reacts with 5 moles of HF (in the presence of a catalyst) to make 1 mole of HFC-245fa and 5 moles of HCl. (Ex. 4, '192 Patent col. 2 lns. 61 - 647).

Notably, the reaction does not lead directly to production of HFC-245fa. Rather, intermediate products are created in the reaction as the five chlorine atoms in the HCC-240fa are replaced one by one with fluorine atoms. If the reaction is given sufficient time, all five chlorine

---

[2] The '817 Patent was filed in the United States on June 8, 1998 under the Patent Cooperation Treaty. However, the '817 Patent claims priority back to a French national application filed on October 23, 1995. (Ex. 1, Face of '817 Patent). Thus, the effective filing date of the '817 Patent is, at the earliest, October 23, 1995.

atoms in the starting material HCC-240fa will be replaced with fluorine atoms, resulting in HFC-245fa.

Figure 1 below further illustrates this point by depicting the HCC-240fa starting material on the far left of the first row as a circle with five chlorine atoms:

**Fig. 1**



As shown in Figure 1, the HCC-240fa molecule is reacted with five molecules of HF in five steps, resulting in various intermediate products (e.g., 241fa, 242fa, 243fa, and 244fa) and ultimately end product HFC-245fa. More particularly:

- Step 1 demonstrates that, first, one chlorine atom of the starting material HCC-240fa is replaced with one fluorine atom from one molecule of HF, resulting in:
  (1) one molecule of an intermediate compound called HCFC-241fa ("241fa" for

4

short hand), a compound with four chlorine atoms; (2) one molecule of byproduct HCl; and (3) four molecules remaining of unreacted HF.

- Step 2 demonstrates that one of the remaining four chlorine atoms in HCFC-241fa is replaced by the fluorine atom from the second molecule of HF, resulting in: (1) one molecule of an intermediate compound called HCFC-242fa ("242fa" for short hand), a compound with three chlorine atoms; (2) a second molecule of HCl; and (3) three molecules left of unreacted HF.

- Step 3 demonstrates that a chlorine atom from HCFC-242fa is replaced with the fluorine atom from a third molecule of HF, resulting in: (1) one molecule of an intermediate compound called HCFC-243fa ("243fa" for short hand), a compound with two chlorine atoms; (2) another molecule of HCl; and (3) two molecules remaining of unreacted HF.

- Step 4 demonstrates that a chlorine atom from HCFC-243fa is replaced with the fluorine atom from a fourth molecule of HF, resulting in: (1) one molecule of an intermediate compound called HCFC-244fa ( "244fa" for short hand), a compound with one chlorine atom; (2) a fourth molecule of HCl; and (2) one molecule left of unreacted HF.

- Step 5 demonstrates that the last chlorine atom in what is now HCFC-244fa is replaced by the fluorine atom in the last unreacted molecule of HF, resulting in one molecule of the desired end product HFC-245fa as well as a fifth molecule of HCl.

### B.     The Purported "Improvement" Of The '817 Patent.

The background section of the '817 Patent acknowledges that by the time the '817 Patent was filed in 1995, HFC-245fa was already known as "a possible substitute for wholly or partially halogenated chlorofluoro hydrocarbons (CFCs and HCFCs) suspected of having a detrimental effect on the ozone layer." (Ex. 1, '817 Patent col. 1 lns. 9 - 12).

The claims of the '817 Patent all relate to a purported improvement in the known process for making HFC-245fa. (Ex. 1, '817 Patent col. 5 ln. 35 - col. 6 ln. 60). Claims 1 and 12, the only independent claims of the '817 Patent, are written in Jepson format, explicitly identifying supposed improvements over the prior art subject matter recited in the claim preamble. (Ex. 1, '817 Patent col. 5 lns. 35 - 46, col. 6 lns. 15 - 30). *See, e.g.*, claim 1 reproduced here:

> **Claim 1.**  In a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises
>
> carrying out the reaction at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous
>
> and isolating and [sic] 1,1,1,3,3-pentafluoropropane from the reaction mixture by drawing off 1,1,1,3,3-pentafluoropropane and hydrogen chloride in a gaseous phase as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed.

More particularly, the independent claims purport to be directed to an "improvement" over the prior art process discussed above that was disclosed by Honeywell in the '192 Patent: reacting hydrogen fluoride (HF) with 1,1,1,3,3-pentachloropropane (HCC-240fa) in the presence of a hydrofluorination catalyst (antimony pentachloride is a hydrofluorination catalyst) to form 1,1,1,3,3-pentafluoropropane (HFC-245fa).

As discussed further below, the claimed improvement of claim 1 has two parts: "carrying out the reaction" at certain temperature and pressure conditions, and "isolating" the HFC-245fa and HCl "from the reaction mixture" in a "gaseous phase as each … is being formed."

Figure 2 below depicts the purportedly "improve[ed]" process claimed of claim 1 of the '817 Patent under Honeywell's proposed claim constructions.

**Fig. 2**





The claims of the '817 Patent were amended during prosecution. When Solvay first filed its patent application in the United States, the broadest claim merely recited *a process for making HFC-245fa by reacting HCC-240fa with HF in the presence of an hydrofluorination catalyst.* (Ex. 14, July 30, 1997 Preliminary Amendment to Application at 1). To overcome the prior art '192 Patent (which Solvay itself cited to the Patent Office), Solvay amended its claim to recite the two limitations now found in issued claim 1. In doing so, Solvay represented to the Patent

Office that the '192 Patent (which it labeled "Vanderpuy '192" because the first named inventor

is Dr. Vanderpuy) did not teach the process as amended:

> The claims are now directed to a hydrofluorination process of
> [HCC-240fa] to produce [HFC-245fa] *under specific process
> conditions*....[T]he inventive process provides *specific instructions*
> how to advantageously operate a process for the preparation of
> [HFC-245fa] comprising reaction of [HCC-240fa] with [HF] by
> using embodiments *which are neither taught nor suggested in
> VANDERPUY '192*."

(Ex. 5, August 30, 2000 Remarks Accompanying Amendment at 10 - 12 (emphasis added)).

## III.     THE LAW OF CLAIM CONSTRUCTION.

### A.     Construing Claims As One Of Skill In The Art.

The law of claim construction is well established.  The claims of a patent define its scope,

and courts interpret patent claims as a matter of law.  *Phillips v. AWH Corp.,* 415 F.3d 1303,

1312 (Fed. Cir. 2005) (en banc).  Claim terms usually receive their ordinary and customary

meaning.  *Id.* at 1312.  The ordinary and customary meaning of a claim term is the meaning that

a person of ordinary skill in the art would have understood the claim to have on the filing date of

the patent application.  *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247, 1254 (Fed. Cir. 2004);

*Phillips,* 415 F.3d at 1313.

### B.     Claim Construction Focuses On Intrinsic Evidence.

Claim construction begins with consideration of the intrinsic evidence, *i.e.,* the patent

claims, the patent specification, and the prosecution history.  *Phillips,* 415 F.3d at 1313.

Review of the intrinsic evidence begins with the claims themselves, which provide

guidance as to the meaning of claim terms.  *Phillips,* 415 F.3d at 1314.  For example, the context

in which a term is used and the similarities and/or differences with other claims in the same

patent can be instructive in claim interpretation.  *Id.*

In addition to the claim language itself, courts look to the specification when construing the claims of a patent. The Federal Circuit has noted that a patent's specification is often the best guide to understanding the meaning of a disputed claim term. *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1376 (Fed. Cir. 2006).

"In addition to consulting the specification, . . . a court should also consider the patent's prosecution history, if it is in evidence." *Phillips*, 415 F.3d at 1317 (quotation and internal citation omitted). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* Additionally, statements in the prosecution history to distinguish claims over prior art act as a disclaimer of coverage, limiting claim scope. *Atofina v. Great Lakes Chemical Co.*, 441 F.3d 991, 997 (Fed. Cir. 2006) ("[T]he meaning of [] claim language may be limited by a disclaimer in the specification or prosecution history . . . . Here, the applicants' statements in distinguishing their claimed "bulk or chromium catalyst" over prior art are a disclaimer of claim scope as to metal oxides and non-inert additives.").

### C.    Extrinsic Evidence May Be Helpful.

When the meaning of a claim term is unambiguous after consideration of the intrinsic evidence, there is no need to consider extrinsic evidence. *Hockerson-Halberstadt, Inc. v. Avia Group Inter., Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000); *see also Scanner Technologies Corp. v. Icos Vision Systems Corp.*, N.V., 486 F.Supp.2d 330 (S.D.N.Y. 2007). However, extrinsic evidence may aid in the claim construction process. "[E]xpert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in

9

the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.

In addition, "[d]ictionaries . . . are often useful to assist in understanding the commonly understood meaning of words." *Atofina v. Great Lakes Chemical Co.*, 441 F.3d 991, 996 (Fed. Cir. 2006) (*quoting Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) (en banc)). However, care must be taken: "[T]he court must ensure that any reliance on dictionaries accords with the intrinsic evidence:  the claims themselves, the specification, and the prosecution history . . . ." *Atofina*, 441 F.3d at 996 (citation omitted).

## IV.    CONSTRUCTIONS OF THE DISPUTED CLAIM TERMS.

Solvay asserts claims 1-7, 10-18, 21-22 of the '817 Patent.  (D.I. 107).

### A.    Construction Of Independent Claim 1.

Claim 1 is written in Jepson form and consists of a preamble and two claim limitations (emphasis added):

> 1. **In a process for the preparation of [HFC-245fa] comprising reaction of [HCC-240fa] with hydrogen fluoride in the presence of a hydrofluorination catalyst, <u>the improvement which comprises</u>**
>
> carrying out the reaction at a temperature and under a pressure at which [HFC-245fa] is gaseous
>
> and isolating and [sic] [HFC-245fa] from the reaction mixture by drawing off [HFC-245fa] and hydrogen chloride in a gaseous phase as each of said [HFC-245fa] and hydrogen chloride is being formed. [3]

---

[3]    For simplicity, references in the claims to 1,1,1,3,3-pentachloropropane are often denoted throughout this brief with the convention "HCC-240fa" -- a shorthand name for 1,1,1,3,3-pentachloropropane.  Similarly, references in the claims to 1,1,1,3,3-pentafluoropropane are often denoted throughout this brief with the convention "HFC-245fa."

P<span>ART</span> 2 <span>OF</span> 2

Each of these parts is addressed separately below.

### 1.     The Preamble.

The preamble of Claim 1 reads:

> In a process for the preparation of [HFC-245fa] comprising
> reaction of [HCC-240fa] with hydrogen fluoride in the presence of
> a hydrofluorination catalyst, the improvement which comprises…

### a.     The Jepson preamble admits prior art.

The Jepson form allows a patentee to use the preamble to recite "elements or steps of the

claimed invention which are conventional or known." 37 C.F.R. § 1.75(e) (1996).  When this

form is employed, the claim preamble defines not only the context of the claimed invention, but

also its scope.  *See Pentec, Inc. v. Graphic Controls, Corp.*, 776 F.2d 309, 315 (Fed. Cir.1985)

("Although a preamble is impliedly admitted to be prior art when a Jepson claim is used, . . . the

claimed invention consists of the preamble in combination with the improvement") (citations

omitted); *see also* United States Patent and Trademark Office, Manual of Patent Examining

Procedure § 608.01(m) (6th ed. rev. Sept. 1995).  Thus, the Jepson form of claim 1 in the '817

Patent indicates Solvay's acknowledgment that the preamble describes a known prior art process.

### b.     The parties essentially agree on the preamble construction.

The parties are generally in agreement (though phraseology is slightly different)

regarding the construction of the preamble. (D.I. 108).  Honeywell believes its phrasing is more

in line with the way the claim is written:

| Term | Honeywell's Construction | Solvay's Construction |
|------|--------------------------|-----------------------|
| In a process for the preparation of 1,1,1,3,3-pentafluoropropane comprising reaction of 1,1,1,3,3-pentachloropropane with hydrogen chloride in the | In a process for preparing HFC-245fa from the reaction of HCC-240fa with HF in the presence of a hydrofluorination catalyst, | A process for preparing HFC-245fa that includes reacting HCC-240fa with HF in the presence of a hydrofluorination catalyst. |

11

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| presence of a hydrofluorination catalyst, the improvement which comprises… | | |

### 2.    The First Limitation:  "carrying out the reaction . . ."

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| "carrying out the reaction at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous" | Carrying out the reaction that creates HFC-245fa at a temperature and under a pressure such that pure HFC-245fa would exist only as a gas. | Carrying out the reaction at a temperature and pressure at which HFC-245fa produced is present as a gas in the reactor. |

The primary difference between the parties' positions regarding the first claimed element of the "improvement" is that under Honeywell's construction, meeting the claim element depends on whether pure HFC-245fa is a gas under the temperature and pressure found in the reactor.  Under Solvay's construction, it depends on whether the HFC-245a as found in the reactor (mixed in with other substances) is a gas under the temperature and pressure in the reactor.  This is a substantive difference because the boiling point of HFC-245fa alone is different from the boiling point of HFC-245fa when mixed together with other substances (as in the reactor) due to a phenomenon called partial pressures.

#### a.    Intrinsic Evidence – The Claim Language.

The language of the claim as a whole makes clear that Solvay's position cannot be correct.  This claim limitation was explicitly designated by Solvay as part of the "improvement" on the prior art process in the preamble.  Yet in 1995, it was already known to a person of ordinary skill in the art that HFC-245fa exists as a gas in the reaction disclosed in the preamble, as taught in the prior art '192 Patent that was raised during prosecution of Solvay's patent.  (Ex.

4, '192 Patent col. 3 lns. 41 - 51; Ex. 6, Doherty Dec. 18, 2007 Dep. 143:1 - 22; 208:10 - 22); *see also* (Ex. 7, Sandler Dec. 14, 2007 Dep. 72:14 - 25). Thus, it would not have been an improvement to specify that the reaction be carried out under conditions such that the HFC-245fa in the reactor would be gaseous. In contrast, requiring the use of a temperature and pressure under which pure HFC-245fa – that is, HFC-245fa when not mixed with other substances -- exists as a gas is something not found in the prior art '192 Patent.

### b.    Intrinsic Evidence – The Specification.

The specification of the '817 Patent provides ranges for temperature and pressure which fall within those already disclosed in the '192 Patent. (*Compare* Ex. 1, '817 Patent claim 5 and col. 2 lns. 34 - 36 (50° C - 150° C) *with* Ex. 4, '192 Patent col. 3 lns. 44 - 45 and claims 10 - 12 (50° C -175° C); *compare* Ex. 1, '817 Patent col. 2 lns. 43 - 45 (2 bar - 40 bar) *with* Ex. 4, '192 Patent col. 3 lns. 49 - 51 (1500 kPa (15 bar) - 5000 kPa (50 bar)). This further supports the notion that Solvay's construction cannot be right, as the "improvement" would be something already found in prior art that was known to Solvay during prosecution of its patent.

### c.    Intrinsic Evidence – The Prosecution History.

The prosecution history confirms that Honeywell's construction is the correct one. During prosecution, Solvay highlighted the claim limitation at issue and distinguished away certain prior art in view of the claim limitation because of the difference in the "atmospheric boiling point" of HFC-245fa (which must be referring to "pure" HFC-245fa)[4] compared with that of the prior art:

---

[4]    Reference to the atmospheric boiling point of a substance means the boiling point at one atmosphere pressure for that substantially pure substance. *See, e.g.*, Ex. 13, Doherty Rebuttal Expert Witness Statement at 18 (discussing the boiling point of a substantially pure sample of water "at normal atmospheric pressure of 1 atmosphere").

> The claims are now directed to a hydrofluorination process of [HCC-240fa] to produce [HFC-245fa] under specific process conditions.
>
> Both independent claims are limited to a hydrofluorination process of [HCC-240fa] in presence of a catalyst <u>at a temperature and under a pressure at which [HFC-245fa] is gaseous</u>. It is submitted that *in view of this limitation, [HFC-245fa] which has an atmospheric boiling point of +14°C is not analogous to [HFC-236fa] which has an atmospheric boiling point of -1°C.*

(Ex. 5, August 30, 2000 Remarks Accompanying Amendment at 10-11) (italics emphasis added)). Solvay's reliance on the "atmospheric boiling point" of HFC-245fa in reference to the claim limitation at issue makes clear to one of ordinary skill in the art that the claim limitation is referring to whether pure HFC-245fa is gaseous at the relevant temperature and pressure. (Ex. 6, Doherty Dec. 18, 2007 Dep. 66:8 - 19, 254:5 - 7) Solvay's argument regarding the atmospheric boiling point HFC-245fa would be irrelevant and nonsensical if the claim limitation was merely referencing whether the actual HFC-245fa in the mixture in the reactor was gaseous at the time of the reaction. *Id.*

In addition to specifically arguing that the boiling point of HFC-245fa distinguished its invention over the prior art, Solvay also represented to the Patent Office that the '192 Patent did not provide any motivation for carrying out a process "at a temperature and under a pressure at which [HFC-245fa] is gas . . . ." (Ex. 5, August 30, 2000 Remarks Accompanying Amendment at 10 - 12). As noted below, the '192 Patent did disclose temperature and pressure ranges where the HFC-245fa in the prior art reaction existed as a gas. (Ex. 4, '192 Patent col. 3 ln. 63 - col. 4 ln. 1). Accordingly, Solvay's proposed construction cannot be correct, while Honeywell's is consistent with Solvay's statements of record.

Because the intrinsic evidence as a whole leaves the proper construction of this claim element unambiguous, there is no need to rely upon any extrinsic evidence to construe this claim element.

3.    **The Second Limitation: "and isolating [HFC-245a] from the reaction mixture by drawing off [HFC-245fa] and hydrogen chloride as each . . . is being formed."**

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| and isolating and [sic] 1,1,1,3,3-pentafluoropropane from the reaction mixture by drawing off 1,1,1,3,3-pentafluoropropane and hydrogen chloride in a gaseous phase as each of said 1,1,1,3,3- pentafluoropropane and hydrogen chloride is being formed. | Separating HFC-245fa from the mixture of HCC-240fa, HF, hydrofluorination catalyst, and partially fluorinated intermediates by removing as a gas only the HFC-245fa and HCl from that mixture as soon as the HFC-245fa and HCl are created. | Separating gaseous HFC-245fa from the reaction mixture in the reactor by continuously separating a gas stream containing HFC-245fa and HCl from the reaction mixture. |

The only other component of Solvay's claimed improvement is "isolating" the HFC-245fa and byproduct HCl "as each ... is being formed."

The parties disagree over the construction of this limitation. Significantly, as detailed below, Solvay's construction reads the key "isolating" term out of the claim. Honeywell's construction is consistent with the intrinsic evidence and gives the term its plain and ordinary meaning to one of ordinary skill in the art in 1995.

a.    **Intrinsic Evidence – The Claim Language.**

The plain language of this claim limitation could not be any clearer:  the claim specifically requires "***isolating***" the HFC-245fa "from the reaction mixture" – *i.e.*, the mixture in the reactor of raw materials HCC-240fa and HF and the intermediate products of partial fluorination, such as HCFC-244fa and HCFC-243fa (Ex. 1, '817 Patent col. 3 lns. 10 - 14) –"by drawing off [HFC-245fa and HCl] in a gaseous phase ***as each ... is being formed***."  There is

15

nothing ambiguous about this term. The plain language requires that the HFC-245fa and HCl be separated from the other substances in the reaction mixture in gaseous form as the HFC-245fa and HCl are created.

Not only is that the plain meaning of the claim language, but it is a meaning that would make eminent sense to one of ordinary skill in the art in connection with a process for making HFC-245fa because further purifying the HFC-245fa by separating it from the HCl was known in 1995 to be a very simple task. (Ex. 6, Doherty Dec. 18, 2000 Dep. 214:9 - 216:15). Thus, the invention process left you with a simple mixture – HFC-245fa and HCl alone – from which it was already known how to obtain the product HFC-245fa by itself. (*Id.*). In contrast, in 1995 it was known to be a much more difficult and complicated task to purify HFC-245fa from a mixture that included, for example, HF. (*Id.*). The removal of HF from the reactor along with the HFC-245fa would not have been considered by one of ordinary skill in the art to be "isolating" the HFC-245fa "from the reaction mixture." (*Id.*). Thus, Solvay's construction ignores the plain meaning of the words "isolating … from the reaction mixture."

Indeed, if "isolating" were construed as Solvay seeks to require that a gas stream be separated that merely "contains" HFC-245fa and HCl as opposed to consisting only of HFC-245fa and HCl, then there is no indication as to what other components can be drawn out from the reactor along with the HCl and HFC-245fa, including the reaction mixture components, which would not "isolate" HFC-245fa and HC from anything. *See, e.g. Halliburton Energy Services, Inc. v. M-I LLC*, No. 2007 - 1149, 2008 WL 216294, at *3 (Fed. Cir. Jan. 25, 2008) ("The patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the

16

exclusive rights of the patent. Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims.").

### b.    Intrinsic Evidence – The Specification.

The specification of the '817 Patent does not give "isolating" any special meaning. In fact, there is only one reference to the term in the specification, and that reference is wholly consistent with Honeywell's plain meaning construction:

> The process according to the invention is preferably carried out in liquid phase. In this case the pressure is chosen so as to keep the reaction mixture in liquid form. . . . The work is preferably carried out at a temperature and pressure at which, furthermore, the 1,1,1,3,3-pentafluoropropane produced is at least partially in gaseous form, which enables it to be easily *isolated* from the reaction mixture."

(Ex. 1, '817 Patent col. 2 lns. 40 - 48 (emphasis added)).

### c.    Intrinsic Evidence – The Prosecution History.

Statements Solvay made during prosecution of the '817 Patent to support its patentability arguments provide further evidence that this limitation means **only** HFC-245fa and HCl are to be drawn off. As noted above, when Solvay filed its '817 Patent application in the United States, the broadest claim merely recited *a process for making HFC-245fa by reacting HCC-240fa with HF in the presence of a hydrofluorination catalyst*. (Ex. 14, July 30, 1997 Preliminary Amendment to Application at 1). To overcome Honeywell's prior art '192 process that disclosed that chemical reaction, Solvay amended that claim to recite the two limitations of now-issued claim 1 and argued that the '192 Patent did not teach the process as amended. (Ex. 5, August 30, 2000 Remarks Accompanying Amendment, p. 12) ("[T]he inventive process provides specific instructions how to advantageously operate a process for the preparation of [HFC-245fa] comprising reaction of [HCC-240fa] with [HF] by using embodiments which are neither taught nor suggested in VANDERPUY '192.").

17

Significantly, the '192 Patent expressly taught that the raw material HF could be drawn off with "organics" (that is, the intermediate products and HFC-245fa):

> . . . [U]nreacted HF and organics may be vented and condensed, and the HF layer recycled to the reactor. The organic layer can then be treated, i.e. washed with an aqueous base, to remove dissolved HF and distilled. This isolation procedure is particularly useful for a continuous fluorination process."

(Ex. 4, '192 Patent col. 3 ln. 63 - col. 4 ln. 1). By amending its claim to add the limitation at issue and arguing to the Patent Office that the amended claim was "neither taught nor suggested" by Honeywell's '192 Patent, Solvay disclaimed an embodiment where HF and other substances are drawn off along with the HFC-245fa. As such, Solvay's proposed construction is not only contrary to the plain meaning of the claim limitation, but would be contrary to the scope of the invention Solvay disclaimed during prosecution. *See Atofina v. Great Lakes Chemical Co.*, 441 F.3d 991, 997 (Fed. Cir. 2006) ("[T]he meaning of [] claim language may be limited by a disclaimer in the specification or prosecution history. . . . Here, the applicants' statements in distinguishing their claimed "bulk or chromium catalyst" over prior art are a disclaimer of claim scope as to metal oxides and non-inert additives.").

#### d.    The Extrinsic Evidence.

While it is not necessary to consider extrinsic evidence to construe this limitation, such evidence supports Honeywell's construction. Specifically, Merriam-Webster's Collegiate Dictionary, 10th edition (1995) defines "isolate" to mean "to separate from another substance *so as to obtain pure or in a free state.*" (Ex. 8, Merriam-Webster's Collegiate Dictionary, p. 621 (emphasis added)). Moreover, The American Heritage Dictionary of the English Language (1995 ed.) provides a definition of "isolate" in the chemical context that is equally supportive of Honeywell's position: "3. Chemistry. To separate (a substance) out of a combined mixture." (Ex. 10, The American Heritage Dictionary, p. 956).

B.    **Construction Of Independent Claim 12.**

Like Claim 1, Claim 12 is an independent claim written in Jepson form with a preamble

and an alleged "improvement" to prior art:

> 12. In a process for the preparation of [HFC-245fa] comprising reaction of [HCC-240fa] with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises
>
> carrying out the reaction in a reactor equipped with a device for drawing off a gas stream at a temperature and under a pressure at which [HFC-245fa] is gaseous and wherein said device is controlled
>
> (a) to draw off a gas stream comprising [HFC-245fa] and hydrogen chloride as each of said [HFC-245fa] and hydrogen chloride is being formed thereby isolating said [HFC-245fa] from the reaction mixture
>
> (b) to keep in the reactor in the liquid state the unconverted [HCC-240fa], most of the hydrogen fluoride and most of the products of partial fluorination of [HCC-240fa].

The parties agree that the construction of the preamble should be the same as in Claim 1.

The remaining limitations are discussed below.

1.    **The First Limitation:  ". . . carrying out the reaction . . ."**

| Term | Honeywell's Construction | Solvay's Construction |
|------|--------------------------|------------------------|
| carrying out the reaction in a reactor equipped with a device for drawing off a gas stream at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous | Carrying out the reaction that creates HFC-245fa at a temperature and under a pressure such that pure HFC-245fa exists as a gas. | Carrying out the reaction in a reactor at a temperature and pressure at which HFC-245fa produced is present as a gas in the reactor, and the reactor is equipped with a device through which a gas stream containing HCl and HFC-245fa is drawn off. |

This claim limitation is the same as in Claim 1. For the reasons stated above, Honeywell's

proffered construction should be adopted by the Court.

2. **The Second Limitation: ". . . to draw off a gas stream . . . thereby isolating [HFC-245fa] from the reaction mixture . . ."**

| Term | Honeywell's Construction | Solvay's Construction |
|------|--------------------------|------------------------|
| and wherein said device is controlled (a) to draw off a gas stream comprising 1,1,1,3,3-pentafluoropropane and hydrogen chloride as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed thereby isolating said 1,1,1,3,3-pentafluoropropane from the reaction mixture | Removing only the HFC-245fa and HCl, and possibly with residual amounts of other non-reacting compounds, from the reaction mixture as a gas stream as soon as the HFC-245fa and HCl are created, in order to separate the HFC-245fa from the mixture of HCC-240fa, HF, hydrofluorination catalyst, and partially fluorinated intermediates. | The device is controlled to continuously separate a gaseous stream containing HFC-245fa and HCl from the reaction mixture. |

This claim limitation is nearly identical to the limitation in Claim 1. Similar claim terms should be consistently construed. *See Southwall Tech.*, 54 F.3d at 1579 (holding "[t]he fact that we must look to other claims using the same term when interpreting a term in an asserted claim mandates that the term be interpreted consistently in all claims."); *Phillips v. AWH Corp.,* 415 F.3d at 1314 ("usage of a term in one claim can often illuminate the meaning of the same term in other claims"). For the reasons stated above, Honeywell's proffered construction should be adopted by the Court.

3. **The Third Limitation: ". . . to keep in the reactor in the liquid state . . . most of the [HF] . . ."**

| Term | Honeywell's Construction | Solvay's Construction |
|------|--------------------------|------------------------|
| b) to keep in the reactor in the liquid state the unconverted [HCC-240fa], most of the hydrogen fluoride and most of the products of partial fluorination of [HCC-240fa]. | The unconverted HCC-240fa, more than 50% of the hydrogen fluoride and more than 50% of partially fluorinated intermediates remain in the reactor vessel in the liquid state. | Unconverted HCC-240fa, most of the HF and most of the products of partial fluorination of HCC-240fa are present in the reactor so that they can react with each other in the liquid phase, but do not have to be present in the reactor on a continuous basis. |

20

The parties disagree with the construction of this limitation. Honeywell construes this claim limitation in accordance with the ordinary meaning of its terms. Because the claim limitation plainly begins "to keep in the reactor …," Honeywell's construction specifies that all of the unconverted HCC-240fa, most of the HF, and most of the partially fluorinated compounds must not leave the reactor. Solvay's construction, which states that these substances "do not have to be present in the reactor on a continuous basis," not only contradicts the ordinary meaning of "keep in the reactor," but is also hopelessly vague.

The specification supports Honeywell construction. In column 3, line 67, the specification distinguishes "keep in" from "return to" via use of the disjunctive "or":

> . . . . It is advantageous to separate the 1,1,1,3,3-pentafluoropropane and the hydrogen chloride from the reaction mixture as they are being formed and to keep in, *or return to*, the reactor the unconverted reactants, as well as the chlorofluoropropanes possibly formed by incomplete fluorination of [HCC-240fa].

(Ex. 1, '817 Patent col. 2. ln. 64 - col. 4 ln. 2) (emphasis added). Significantly, the fact that Solvay chose to claim "keep in the reactor" but not claim "return to the reactor" dedicates to the public an embodiment where most of the HF and/or partially fluorinated compounds are ***not*** kept in the reactor, but rather leave the reactor and are later returned to the reactor. *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (holding that where a patent drafter discloses but declines to claim a subject matter, the unclaimed subject matter is deemed dedicated to the public). A patentee is simply not permitted to recapture subject matter deliberately left unclaimed. *Id.* Solvay plainly disclosed the two options of keeping in the reactor or returning to the reactor, but specifically claimed only the former. Solvay should not be allowed to reclaim subject matter that it disclosed but did not claim.

### C.    Construction Of Dependent Claims 2 And 13.

Claim 2 reads as follows:

> 2.  The process of claim 1, which comprises conducting the reaction continuously in a liquid phase and maintaining a molar ratio of the catalyst to [HCC-240fa] maintained from 0.001 to 1000.

Claim 13 is identical to Claim 2 except that it depends from Claim 12, not Claim 1.  For the sake of brevity, the analysis below only discusses Claim 2 but applies equally to Claim 13.

The parties agree that Claim 2 adds two additional limitations to the process recited in Claim 1.   While the parties largely agree on the construction of Claim 2, Honeywell's construction contains important details not present in Solvay's proposed construction.   These details are explained below.

### 1.    The First Limitation:  ". . . conducting the reaction continuously in the liquid phase . . ."

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| The process of claim 1, which comprises conducting the reaction continuously in a liquid phase | Adding components to, and removing components from, the reaction mixture while the reaction to create HFC-245fa proceeds wholly in a liquid state. | Continuously feeding HCC-240fa and HF into the reactor and reacting the HCC-240fa and the HF in the presence of a hydrofluorination catalyst in a liquid phase reaction. |

Honeywell proposes that this limitation mean that raw materials are added to *and products are removed from* the reaction continuously, while the reaction to create HFC-245fa proceeds *wholly in a liquid state*.   Solvay's proposed construction seems to agree with Honeywell's, yet omits the emphasized details.  Although "continuously" is not defined in the specification, one of ordinary skill in the art in 1995 would understand the term "continuously" to include a continuous removal of products.  (Ex. 6, Doherty Dec. 18, 2007 Dep. 100:4 - 9, 100:16 - 21).  Even Solvay's testifying technical experts agree on this point.  For example,

22

Solvay's infringement expert, Dr. Stanley Sandler, testified during his December 14, 2007

deposition that a continuous process includes "continuous product coming out the other end":

> Q.   What is your definition of a continuous process?
>
> A.    One that is not running episodically, that is, filling up something, closing some valves, letting things happen, then opening up, drawing off some things, maybe emptying the whole process, starting all over again.  **A continuous process is one where there's a continuous feed coming in at one side and a continuous product[s] coming out the other end of the process.**  There may be variations as the demand changes or as normal fluctuations, but essentially, it's running for long periods of time.

(Ex. 7, Sandler Dec. 14, 2007 Dep. 50:1 - 12) (emphasis added)).

Dr. William Dolbier, Solvay's validity expert, similarly testified during his January 3,

2008 deposition:

> Q.   So then it's fair to say your definition for a continuous process is one in which starting materials and reactants are continuously added to the reaction, and the products which are continuously being formed are continuously being removed from the reaction; correct?
>
> [Objection to form.]
>
> A.   I would say yes, generally, that's my definition – consistent with my definition.

(Ex. 9, Dolbier Jan. 3, 2008 Dep. 19:11 - 20).

### 2.    The Second Limitation: ". . . molar ratio of catalyst to [HCC-240fa] . . ."

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| and maintaining a molar ratio of the catalyst to [HCC-240fa] maintained from 0.001 to 1000. | The ratio of the quantity of catalyst compared to the stationary quantity of HCC-240fa present in the liquid phase and this ratio must be maintained from 0.001 to 1000. | Maintaining the molar ratio of catalyst to HCC-240fa in an amount of from 0.001 -1,000. |

Honeywell and Solvay's constructions are again very similar but Honeywell's construction specifically incorporates the definition provided by the specification of the '817 Patent:

> . . . . It is to be understood that, in a noncontinuous process, the quantity of catalyst used is expressed in relation to the initial quantity of [HCC-240fa] used and, *in a continuous process, in relation to the stationary quantity of [HCC-240fa] present in the liquid phase.*"

(Ex. 1, '817 Patent col. 2 lns. 50 - 55) (emphasis added)). *See also Phillips v. AWH Corp.*, 415 F.3d at 1315) (patent "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (citation omitted). Therefore, the construction of "molar ratio" should incorporate the quantity of catalyst used in relation to the stationary quantity of HCC-240fa present in the liquid phase.

### D.  Construction of Dependent Claims 3 and 14.

Claim 3 is dependent on Claims 1 & 2:

> 3.  The process of claim 2, wherein the molar ratio of the catalyst to [HCC-240fa] is greater than 0.5.

Claim 14 is identical to Claim 3 except that it depends from Claims 12 and 13, not Claims 1 and 2. For the sake of brevity, the analysis below only discusses Claim 3 but applies equally for Claim 14.

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| The process of claim 2, wherein the molar ratio of the catalyst to [HCC-240fa] is greater than 0.5. | The ratio of the quantity of catalyst compared to the stationary quantity of HCC-240fa present in the liquid phase and this ratio must be greater than 0.5. | Maintaining the molar ratio of catalyst to HCC-240fa in an amount greater than 0.5, which allows a continuous reaction to occur. |

Honeywell construes the "molar ratio" limitation in Claim 3 the same way as in Claim 2. Under Federal Circuit law, the construction of Claim 3 should be consistent with the construction of Claim 2. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001), (holding "claim terms found in different claims should be interpreted consistently."); *Southwall Tech.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995), (holding "[t]he fact that we must look to other claims using the same term when interpreting a term in an asserted claim mandates that the term be interpreted consistently in all claims.").

Notably, Solvay's proposed construction contains an extra phrase at the end – "which allows a continuous reaction to occur" – for which it provides no supporting basis and is not found in Solvay's proposed construction of similarly worded Claim 2. There simply is no mention in the specification or in any of the intrinsic evidence for a "molar ratio" to be maintained above 0.5 "to allow a continuous reaction to occur."

### E.    Construction Of Dependent Claims 4 And 15.

Claim 4 is dependent on Claim 3:

> 4.    The process of claim 3 wherein from 5 to 100 moles of hydrogen fluoride are used per mole of [HCC-240fa].

Claim 15 has identical language as Claim 4 except that it depends from Claim 12, not Claim 3.

| Term | Honeywell's Construction | Solvay's Construction |
|---|---|---|
| The process of claim 3 wherein from 5 to 100 moles of hydrogen fluoride are used per mole of [HCC-240fa]. | 5 to 100 moles of HF are consumed for each mole of HCC-240fa consumed in the reaction. | 5 to 100 moles of HF are added to the reactor for each mole of HCC-240fa added to the reactor. |

The parties disagree whether "used" in claim 4 means "consumed" or "added to the reactor." Because Solvay's patent is directed towards a process in which HCC-240 reacts with HF, consuming it, to create HFC-245fa, "used" should be construed to mean "consumed."

### F.    Dependent Claims 5-7, 10-11, 16-18, 21-22.

The parties agree that the Court need not construe the additional terms in these claims.

## V.    CONCLUSION.

The intrinsic evidence, reliable extrinsic evidence, and case law all lead one of ordinary skill in the art to Honeywell's constructions set forth in the claim construction chart submitted to the Court on January 15, 2008 (D.I. 108). Honeywell therefore respectfully requests that this Court enter an order adopting its proposed constructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm (#1098)*

_____

Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Robert G. Krupka, P.C.
Laura M. Burson
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Suite 3400
Los Angeles, CA 90017
(213) 680-8400

February 18, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered recipients.

I also certify that on March 6, 2008, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

### BY E-MAIL

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street, P.O. Box 951
Wilmington, DE 19899-0951

### BY E-MAIL

Arthur I. Neustadt, Esquire
Jean-Paul Lavalleye, Esquire
Barry J. Herman, Esquire
Jeffrey B. McIntyre, Esquire
Michael E. McCabe, Jr., Esquire
Aarti Shah, Esquire
John F. Presper, Esquire
OBLON, SPIVAK, MCCLELLAND, MAIER
   & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314

*/s/ Thomas C. Grimm*

_____

Thomas C. Grimm (#1098)
tgrimm@mnat.com