# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SOLVAY, S.A.                                    )
                                                )
        Plaintiff,                          )
                                                )
                                                )    C.A. No. 06-557-SLR
        v.                                  )
                                                )    **JURY TRIAL DEMANDED**
HONEYWELL SPECIALTY                             )
MATERIALS, LLC and                              )    **PUBLIC VERSION**
HONEYWELL INTERNATIONAL INC.,                   )
                                                )
        Defendants.                         )

## SOLVAY'S MEMORANDUM IN OPPOSITION TO HONEYWELL'S
## MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF
## <u>CLAIMS 1, 5, 7, 10 AND 11</u>

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

Dated: March 17, 2008
Public Version Dated: March 24, 2008
856766 / 30651

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

## TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT .................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

      A.    Honeywell's assertion that a mere reduction to practice satisfies
            35 U.S.C. § 102(g) is legally baseless ............................................................ 2

      B.    Honeywell's assertion that Honeywell's ▉▉▉▉ work was not
            abandoned, suppressed or concealed is baseless............................................. 6

III.  CONCLUSION....................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    Page

*BankAmerica Corp. v. United States,*
  462 U.S. 122 (1983)............................................................................3

*Burroughs Wellcome Co. v. Barr Laboratories, Inc.,*
  40 F.3d 1223 (Fed. Cir. 1994)...................................................... 2-3

*Checkpoint Systems, Inc. v. U.S. Int'l Trade Comm'n,*
  54 F.3d 756 (Fed. Cir. 1995)...........................................................8

*Corona Cord Tire Co. v. Dovan Chemical Corp.,*
  276 U.S. 358 (1928)............................................................................3

*Dow Chemical Co. v. Astro-Valcour, Inc.,*
  267 F.3d 1334 (Fed. Cir. 2001)...............................................2, 3, 4

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
  110 F.3d 1573 (Fed. Cir. 1997)......................................................5

*Novo Nordisk Pharm. Inc. v. Bio-Tech. General Corp.,*
  424 F.3d 1347 (Fed. Cir. 2005).......................................................9

*Pfaff v. Wells Electronics,*
  525 U.S. 55 (1998).........................................................................3, 4

*Price v. Symsek,*
  988 F.2d 1187 (Fed. Cir. 1993)......................................................5

*Tyler Refrigeration Corp. v. Kysor Indus. Corp.,*
  601 F. Supp. 590 (D. Del. 1985)..................................................3, 4

*Woodland Trust v. Flowertree Nursery,*
  148 F.3d 1368  (Fed. Cir. 1998)......................................................5

### <u>Statutes</u>

35 U.S.C. §102(g) ................................................................... *passim*

35 U.S.C. §103...............................................................................2, 7

## I.     SUMMARY OF ARGUMENT

In its opening brief in support of summary judgment of invalidity (D.I. 135, hereinafter "Brief"), Honeywell argues that it is entitled to summary judgment of invalidity of claims 1, 5, 7, 10 and 11 of the '817 patent under 35 U.S.C. § 102(g) because, ████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████ which corresponds to the identified claims ("Honeywell's ████ Work"). In support of its argument, Honeywell makes (1) the legal assertion that merely replicating the ████████ process in the United States is sufficient to satisfy the requirement that the "invention was made in this country by another inventor" of 35 U.S.C. §102(g); and (2) the factual assertion that Honeywell's ████ Work was not abandoned, suppressed or concealed. As explained below, Honeywell's arguments and assertions are incorrect and insufficient for it to prevail.

First, Honeywell's legal assertion is wrong – merely practicing the invention does not satisfy 35 U.S.C. § 102(g). Section 102(g) requires that the earlier invention be made in the United States by another inventor. ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Honeywell's ████ Work thus cannot invalidate Solvay's '817 patent under § 102(g).

Second, Honeywell's factual assertion is also wrong. Contrary to Honeywell's bald allegation in its Brief, Honeywell's ████ Work was, indeed, abandoned, suppressed or concealed for commercial reasons. *See* Solvay's Motion for Summary Judgment of No

Invalidity Under 35 U.S.C. §§ 102(g) and 103 Based on Commercial Suppression (D.I. 122)

(hereinafter "Solvay's No Invalidity Summary Judgment Motion").  Further, Honeywell did not

disclose its ▓▓▓▓▓ Work until ▓▓, a gap of more than ▓▓ years constituting

abandonment, suppression or concealment.  At the very least, there is a genuine issue of material

fact as to whether Honeywell's ▓▓▓ Work was abandoned, suppressed or concealed.

Because Honeywell's motion for summary judgment is based upon a misapplication of

the law and upon facts that are incorrect or, at minimum, disputed, its motion must be denied.

## II.    ARGUMENT

### A.    Honeywell's assertion that a mere reduction to practice satisfies 35 U.S.C. § 102(g) is legally baseless

In its Brief, Honeywell asserts that "[a]s long as the invention is practiced in the United

States before the priority date of the asserted patent, that is all that matters," and that "[t]herefore,

whether Solvay's contention that ▓▓▓ invented the process abroad before Honeywell

performed it in the United States is true is irrelevant to the instant motion." (D.I. 135 at 14).

This assertion is baseless.

35 U.S.C. § 102(g) provides that "[a] person shall be entitled to a patent unless . . . (2)

before such person's invention thereof, the invention was made in this country by another

inventor who had not abandoned, suppressed, or concealed it." To establish the "first-inventor"

defense of § 102(g), "it must be shown that an 'inventor' made the claimed invention." *Dow

Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1340 (Fed. Cir. 2001). An inventor is one

who is involved in conception of the invention, not reduction to practice. *Burroughs Wellcome*

*Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994) ("Conception is the touchstone of inventorship, the completion of the mental part of the invention.").[1]

What constitutes an "invention" was confirmed by the Supreme Court's decision in *Pfaff v. Wells Electronics*, 525 U.S. 55, 60 (1998), wherein the Supreme Court ruled that "invention" in 35 U.S.C. § 102 refers to conception, not reduction to practice. Specifically, in *Pfaff*, the Supreme Court held that "[t]he primary meaning of the word 'invention' in the Patent Act unquestionably refers to the inventor's conception rather than to a physical embodiment of that idea."[2] *Id.*

Thus, to establish the "first-inventor" defense of §102(g), conception (i.e. invention) in the United States must be proven by clear and convincing evidence.[3]

Honeywell rests its entire argument on a district court case from 1985, *Tyler Refrigeration Corp. v. Kysor Indus. Corp.*, 601 F. Supp. 590 (D. Del. 1985). In *Tyler*, the court stated that an invention that was conceived and reduced to practice in a foreign country (Japan), and then reduced to practice in the United States pursuant to instructions from a foreign entity,

---

[1] Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention . . . ." *Burroughs Wellcome*, 40 F.3d at 1228 (Fed. Cir. 1994). Reduction to practice of a process occurs when the process is successfully performed. *Pfaff v. Wells Electronics*, 525 U.S. 55, 57 n.2 (1998) (citing *Corona Cord Tire Co. v. Dovan Chemical Corp.*, 276 U.S. 358, 383 (1928)).

[2] While *Pfaff* specifically deals with 35 U.S.C. § 102(b), the Supreme Court's interpretation of "invention" applies to the rest of the Patent Act, including 35 U.S.C. § 102(g) – it is a familiar rule of statutory construction that like terms within the same statute should be interpreted alike. *BankAmerica Corp. v. United States*, 462 U.S. 122, 129 (1983).

[3] Such clarity concerning the interpretation of § 102(g) has not always existed. For example, in *Dow Chemical*, the Federal Circuit addressed Dow's assertion that § 102(g), which was amended in 1999 to include the word "inventor" after the word "another," "was always understood to apply only to inventors." *Dow Chemical*, 267 F.3d at 1340. The Federal Circuit agreed with Dow. *Id.* The fact that Dow made the argument and the fact that the Federal Circuit addressed it demonstrates that, prior to 1999, there may have been some confusion concerning the interpretation of § 102(g). However, after *Dow*, there could no longer be any confusion.

3

would qualify as prior art under §102(g). However, at the time *Tyler* was decided, §102(g) only stated that "[a] person is entitled to a patent unless . . . before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." *Id.* at 600, n.12. Subsequently, in 1999, § 102(g) was amended to require that the invention be made in "this country by another *inventor* . . . ." (emphasis added).

Since *Tyler* was decided 13 years before the Supreme Court's decision in *Pfaff*, 14 years before the 1999 amendment to §102(g), and 16 years before the Federal Circuit's decision in *Dow Chemical*, the *Tyler* court did not have the benefit of clarifying guidance from the change in the statute or the controlling Supreme Court and Federal Circuit case law. Since *Tyler* was based upon the belief that § 102(g) applies where "the identical [ ] concept was <u>reduced to practice</u> in this country" (*Tyler*, 601 F.Supp. at 600 (emphasis added)), it is not the law today – *Pfaff* and *Dow Chemical* made clear (albeit over a decade later) that the mere practicing of an invention based on instructions from a foreign entity cannot qualify as prior art under §102(g). Moreover, the *Tyler* court based its decision on the patentee's admission that the activities in question constituted prior art. *Id.*. Here, there is no such admission. Finally, in *Tyler*, no restriction on disclosure of the foreign (Japanese) work existed. In stark contrast, the ▓▓▓▓▓▓ work was subject to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, not publicly available. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Applying the proper standard for 35 U.S.C. § 102(g), Honeywell's motion must fail as a matter of law. In its Brief, Honeywell failed to provide any evidence that it conceived (i.e. invented) the claimed processes in the United States. To the contrary, ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████████ (D.I. 135 at 12, n.8) (emphasis added).

In the context of patent law, the concept of derivation "addresses originality – who invented the subject matter . . . ." *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). If the subject matter has been derived from another source, no "invention" has occurred. *Id.* To prove derivation, (1) prior conception of the claimed subject matter; and (2) communication of the claimed subject matter must be shown. *Id.*; *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997). Although the concept of derivation typically arises in cases where a patent challenger is asserting that a patentee derived his invention from another, thereby invalidating the patent, the reasoning is equally applicable in this case.

As acknowledged in Honeywell's Brief, ███████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ (Ex. 2, HON0029954-75). Honeywell then reproduced these processes the following year.

████████████████████████████████████, Honeywell, as a matter of law, cannot be the "inventor" of the processes. Because 35 U.S.C. § 102(g) requires prior invention (that is, conception) by an inventor in the United States, Honeywell's argument must fail.[4]

---

[4] Honeywell has not asserted that the ████████ work and Honeywell's reproduction/duplication of this work constitutes prior art under 35 U.S.C. §102(a), and for good reason. As noted above, this work was subject to a secrecy agreement. (Ex. 1, ████████████████████████ ██████████████████ at HON0026282-83). Because such work was secret and, thus, not public, it cannot constitute prior art under §102(a). *See, e.g., Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("in order to invalidate a patent based on prior knowledge or use [under § 102(a)], that knowledge or use must have been available to the public").

**B.**    **Honeywell's assertion that Honeywell's ▓▓▓ work was not abandoned, suppressed or concealed is baseless**

To constitute prior art under 35 U.S.C. § 102(g), a prior invention in the United States must not have been "abandoned, suppressed, or concealed." Thus, for Honeywell's ▓▓▓ work to constitute prior art under 35 U.S.C. § 102(g), Honeywell must also demonstrate by clear and convincing evidence that its ▓▓▓ work was not abandoned, suppressed or concealed. In its Brief, Honeywell asserts that Honeywell's ▓▓▓ work was not abandoned, suppressed or concealed. This assertion is baseless.

As set forth in greater detail in Solvay's No Invalidity Summary Judgment Motion and related exhibits (which are incorporated herein by reference) (D.I. 122), Honeywell suppressed or concealed its ▓▓▓ work for commercial reasons when, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ More specifically, the undisputed facts demonstrate that:

- Honeywell's researchers submitted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ related to the ▓▓▓ work on ▓▓▓▓▓▓

- Honeywell's ▓▓▓ work was completed by ▓▓▓▓▓▓

- In ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓

- Honeywell's policy was to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓

6

- Based on subsequent activities relating to ███████████████████████, Honeywell began to believe, in ███████████, that a commercial market for 245fa might exist as early as ████.

- On ███████████, Honeywell began pursuing a patent application related to its ██████ work.

Honeywell intended to suppress or conceal its ██████ work through its policy of ████████████████████████████████████████████████████████ ██████ Honeywell failed to pursue a patent application related to its ██████ work until ██████ ████████ months after Honeywell's researchers had submitted their ████████████ █████████████████████ (in ███████), at least ████ months after its ████████ work had been completed (in ███████████), and *after* Solvay had filed its own patent application (October 23, 1995).  During this period of patent inactivity, ██████████████████ ████████████████████████████████ Thus, pursuant to Honeywell policy, ████████████████████████████████████████████ ██████████████████████ Accordingly, to the extent that Honeywell's ██████ work predated the October 23, 1995 effective filing date of the '817 patent, that work cannot constitute prior art to the '817 patent under either 35 U.S.C. §§ 102(g) or 103.  At a minimum, for the reasons set forth in Solvay's No Invalidity Summary Judgment Motion, there are genuine issues of material fact that preclude the granting of Honeywell's present motion.

Additionally, contrary to the assertions in Honeywell's Brief, Honeywell did not disclose its ██████ work in U.S. patent 5,763,706 ("the '706 patent") (Ex. 3), but rather disclosed this work much later in U.S. Patent No. 7,214,839 ("the '839 patent") (Ex. 4).  Thus, Honeywell's



7

████ work was abandoned, suppressed or concealed at least until the '839 patent was filed on

May 23, 2003.[5] For this reason as well, Honeywell's motion should be denied.

Both the '706 and '839 patents relate to producing HFC-245fa by reacting HCC-240fa

with hydrogen fluoride ("HF") in the presence of a catalyst. During prosecution of the '839

patent, Honeywell distinguished its '706 patent from its '839 patent, stating:

> [The '706 patent] teaches a HF: HCC [240fa] mole ratio of 4-10, that is 4:1 to
> 10:1, rather than the presently required ratio of 15:1 in the present claims. The
> Examiner takes the position that this limitation of [the '706 patent] is not critical.
> However, there is *no* teaching anywhere in [the '706 patent] that offers a
> motivation for one skilled in the art to look outside this mole ratio of 4-10, much
> less to the much higher ratio of 15:1 or more. It is again submitted that the
> Examiner is impermissibly reconstructing the art in light of applicant's disclosure.
> The Examiner provides no basis to support his consideration of these mole ratio
> as being insignificant features in both the present claims and [the '706 patent's]
> invention.

(Ex. 5, Appeal Br. re Appl. No. 10/444,610, August 11, 2006, at 11) (emphasis in original).

Thus, according to Honeywell, the '706 patent discloses a HF: HCC-240fa ratio of 4-10, and

does not motivate one skilled in the art to look outside this ratio. In contrast, the '839 patent

discloses a ratio of at least 15:1. In other words, according to Honeywell, the '706 and '839

patents disclose different, patentably distinct processes.

---

[5] In its Brief, Honeywell also asserts that "[t]he slightly more than ████ between Honeywell's
reduction to practice in the United States and the filing of a patent application cannot, as a matter
of law, constitute unreasonable delay under § 102 (g)." (D.I. 135 at 12). However, there is no
such rule. Whether a delay is reasonable or unreasonable is a fact-specific inquiry to be
determined on a case-by-case basis – "there is no particular length of delay that is per se
unreasonable. Rather, *a determination of abandonment, suppression, or concealment has
consistently been based on equitable principles and public policy as applied to the facts of each
case.* A court must determine whether, under the facts before it, any delay was reasonable or
excused as a matter of law." *Checkpoint Systems, Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756,
761 (Fed. Cir. 1995) (emphasis added). Here, as explained above, at minimum, genuine issues
of material fact exist regarding Honeywell's delay in filing the '706 and '839 patents which
preclude the granting of Honeywell's motion.

To determine whether Honeywell's ▮▮▮ work is disclosed in the '706 patent or in the '839 patent, it is necessary to calculate the HF: HCC-240fa ratio of this work – if the ratio is not 4-10, Honeywell's ▮▮▮ work is not disclosed in the '706 patent.

Honeywell's experiments in ▮▮▮▮▮▮▮ were conducted by ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As explained in the expert report of Solvay's expert, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It was not until more than eight years later (May 23, 2003), when Honeywell filed the '839 patent, that Honeywell belatedly disclosed its ▮▮▮ work.[6] *Id.*

Honeywell may argue in reply that the statements it made during the prosecution of the '839 patent were incorrect. In December 2007, after this suit was well underway, Honeywell filed a disclaimer at the United States Patent and Trademark Office ("PTO") in connection with the '839 patent. In the disclaimer, Honeywell stated that it had made "certain incorrect statements regarding [Honeywell's] U.S. Patent Nos. 5,574,192 [ ] and 5,763,706 [ ]," and that, during the course of this litigation, it "became aware of the incorrect nature of these statements."

---

[6] Further proof that Honeywell's ▮▮▮▮▮▮▮ work was not disclosed in the '706 patent is that these examples are "prophetic examples" written in the present tense, meaning that the examples had not actually been performed. *See, e.g., Novo Nordisk Pharm. Inc. v. Bio-Tech. General Corp.*, 424 F.3d 1347, 1359-61 (Fed. Cir. 2005) (finding inequitable conduct where applicants knew that an example relied on in the specification was "prophetic" and never actually performed). If the '706 patent were directed to Honeywell's ▮▮▮▮▮▮ ▮▮▮ work, the '706 examples would have been written in the past tense, indicating that they had actually been performed.

9

(Ex. 8, Disclaimer of Entire Term of Patent, December 13, 2007, at HON0033988). With specific reference to the '706 patent, Honeywell stated that its characterization of the '706 patent as disclosing a HF: HCC-240fa ratio of 4-10, and as not motivating one skilled in the art to look outside this ratio was, supposedly, "incorrect" and "mistaken." (Ex. 8, Disclaimer of Entire Term of Patent, December 13, 2007, at HON0033989-90).

Honeywell's assertion in its disclaimer that its statements concerning the '706 patent were, supposedly, "incorrect" and "mistaken" is little more than a futile litigation driven attempt to rewrite history. Honeywell was fully aware that the '706 patent was limited to a HF: HCC-240fa ratio of 4-10. In the "Background of the Invention" section of the '839 patent, Honeywell distinguished the '706 patent from the '839 patent, stating that the '706 patent:

> employs a relatively low molar ratio of hydrogen fluoride to HCC-240fa or HCC-230fa. This technique produces a disadvantageously large amounts of high boiling point by-products and a lower than desired catalyst life. It has now been found that by the use of a large HF to hydrochlorocarbon (organic feed) ratio, of at least about 15:1 in the liquid phase, the reaction can reduce high boiling point by-product formation and also prolong catalyst life. This is opposed to the prior art teaching to use organic-rich, HF-lean conditions.

(Ex. 4 at col. 1, lines 43-58) (emphasis added). Thus, as clearly explained in the Background of the Invention section of the '839 patent, Honeywell's purpose in filing the '839 patent was to seek patent protection for higher HF to hydrochlorocarbon (that is, HCC) ratios of at least about 15:1 – ratios which were "opposed" to the lower prior art HF: HCC ratios in the '706 patent.

Finally, Honeywell's ███████████, a named inventor on both the '706 and '839 patents, testified that ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

Thus, Honeywell's ▓▓▓ work was abandoned, suppressed or concealed.  At minimum, there exist genuine issues of material fact which preclude summary judgment.

## III.    CONCLUSION

For all of the above reasons, Solvay respectfully submits that Honeywell's motion for summary judgment of invalidity of claims 1, 5, 7, 10 and 11 of the '817 patent under 35 U.S.C. § 102(g) must be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

By: /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

Dated:  March 17, 2008
Public Version Dated: March 24, 2008
856766 / 30651

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 24, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on March 24, 2008, the attached document was

Electronically Mailed to the following person(s):

Thomas C. Grimm
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tgrimm@mnat.com
bschladweiler@mnat.com

Robert G. Krupka
Laura M. Burson
Helen Hong
Kirkland & Ellis LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA 90017
service-solvay@kirkland.com

By: /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      Potter Anderson & Corroon LLP
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

799366 / 30651

# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

US005763706A

# United States Patent [19]

## Tung et al.

[11]    **Patent Number:**    **5,763,706**

[45]    **Date of Patent:**    **Jun. 9, 1998**

[54] **PROCESS FOR THE MANUFACTURE OF 1,1, 1,3,3-PENTAFLUOROPROPANE AND 1,1,1,3, 3-HEXAFLUOROPROPANE**

[75] Inventors: **Hsueh Sung Tung**. Getzville; **Daniel Chistopher Merkel**, West Seneca, both of N.Y.; **Zenart Joseph Dziadyk**, Lancaster, Canada; **Clayton Herbert Carson**, Clarence Center; **Hang Thanh Pham**, Amherst, both of N.Y.

[73] Assignee: **AlliedSignal Inc.**, Morristown, N.J.

[21] Appl. No.: **675,020**

[22] Filed:    **Jul. 3, 1996**

[51] Int. Cl.$^6$ ............................................. C07C 17/08
[52] U.S. Cl. ............................................... 570/167
[58] Field of Search ...................................... 570/167

[56]    **References Cited**

U.S. PATENT DOCUMENTS

5,574,192   11/1996   VanDerPuy et al. ..................... 570/167

5,616,819   4/1997   Boyce et al. ............................ 570/167
5,659,093   8/1997   Takubo et al. .......................... 570/167

FOREIGN PATENT DOCUMENTS

684687    4/1964   Canada .
WO 95/04022   2/1995   WIPO .

*Primary Examiner*—Paul F. Shaver
*Attorney, Agent, or Firm*—Jay P. Friedenson

[57]    **ABSTRACT**

An integrated manufacturing process for producing HFC-245fa, HFC-236fa or a mixture thereof by reaction of HCC-240fa, HCC-230 or a mixture thereof with HF. HCC-240fa, HCC-230 or a mixture thereof is reacted with hydrogen fluoride in a liquid phase in the presence of a fluorination catalyst. Optionally, produced HCl is removed by distillation. HF present is thereafter recovered by liquid-vapor extraction. Unsaturated compounds are then removed by photochlorination and HFC-245fa, HFC-236fa or a mixture thereof is obtained by distillation.

**27 Claims, 1 Drawing Sheet**



FIGURE 1

5,763,706

1

# PROCESS FOR THE MANUFACTURE OF 1,1,1,3,3-PENTAFLUOROPROPANE AND 1,1,1,3,3,3-HEXAFLUOROPROPANE

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to the preparation of hydrofluorocarbons. More particularly, the invention pertains to a method for the preparation of 1,1,1,3,3-pentafluoropropane (HFC-245fa) and 1,1,1,3,3,3-hexafluoropropane (HFC-236fa) or a mixture thereof. Specifically, the invention concerns an integrated manufacturing process for producing HFC-245fa, HFC-236fa or a mixture thereof by the reaction of 1,1,1,3,3-pentachloropropane (HCC-240fa), 1,1,1,3,3,3-hexachloropropane (HCC-230) or a mixture thereof with hydrogen fluoride.

### 2. Description of the Prior Art

Recently, there has been widespread concern that chlorofluorocarbons might be detrimental to the Earth's ozone layer. As a result, there is a worldwide effort to use halocarbons which contain fewer chlorine substituents. In this regard, 1,1,1,3,3-pentafluoropropane and 1,1,1,3,3,3-hexafluoropropane are hydrofluorocarbons having zero ozone depletion potential, and are being considered as replacements for chlorofluorocarbons in foams, refrigeration and other systems. The production of hydrofluorocarbons, i.e. compounds containing only carbon, hydrogen and fluorine has been the subject of interest to provide environmentally desirable products for use as solvents, foam blowing agents, refrigerants, cleaning agents, aerosol propellants, heat transfer media, dielectrics, fire extinguishing compositions and power cycle working fluids. It is known in the art to produce hydrofluorocarbons (HFCs) by reacting hydrogen fluoride with various hydrochlorocarbon compounds. Such HFC's are not only considered to be much more environmentally advantageous than hydrochlorofluorocarbons (HCFC's) or chlorofluorocarbons (CFC's) because they are non-ozone depleting, but also is they are also non-flammable and non-toxic as compared with the chlorine containing compounds. HFC-245fa itself is well known in the art as described in U.S. Pat. No. 2,942,036, Canadian 684,687, EP 381 986A, JP 02.272,086 and WO 95/04022. HFC-236fa is known from U.S. Pat. No. 5,395,997. All of the foregoing patents are incorporated herein by reference. However, it has been a problem in the art to conduct an economical process for the continuous preparation of HFC-245fa and HFC-236fa. It has now been found that HFC-245fa or HFC-236fa may be continuously and economically produced in an integrated manufacturing process by the reaction of HCC-240fa or HCC-230 with hydrogen fluoride. The HCC-240fa, HCC-230 or mixtures thereof and HF are first reacted in a liquid phase catalytic reaction, HCl is then optionally removed by distillation. HF is recovered, preferably by liquid-vapor or liquid—liquid extraction and then optionally recycled. Unsaturates are thereafter removed by photochlorination and HFC-245fa, HFC-236fa or a mixture thereof is obtained by distillation.

## SUMMARY OF THE INVENTION

The invention provides a process for the preparation of fluoropropanes which comprises

(a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in the presence of a fluorination catalyst;

(b) optionally removing HCl produced by step (a); and

2

(c) recovering HF present after step (b).

Preferably the process comprises the subsequent further steps of

(d) removing unsaturated compounds present after step (c) by photochlorination; and

(e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof from the result of step (d) by distillation.

The invention also comprises a process for the preparation of fluoropropanes which comprises

(a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in a liquid phase in the presence of a fluorination catalyst;

(b) optionally removing HCl produced by step (a) by distillation; and

(c) recovering HF present after step (b) by liquid-vapor or liquid—liquid extraction;

(d) optionally removing unsaturated compounds present after step (c) by photochlorination; and

(e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof from the result of step (d) by distillation.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a schematic view of a reaction sequence according to the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

In the practice of the present invention, a fluorination catalyst, preferably a liquid phase catalyst is charged to a fluorination reactor prior to heating of the reactor. Useful fluorination catalysts non-exclusively include transition metal halides, Group IVb metal halides and Group Vb metal halides and mixtures thereof. Such non-exclusively include chrome halides, SbCl₅, SbCl₃, TaCl₅, SnCl₄, NbCl₅, TiCl₄, MoCl₅ and mixtures thereof. The reactor according to this invention may be any suitable fluorination reaction vessel but it should be constructed from materials which are resistant to the corrosive effects of hydrogen fluoride such as Hastalloy, Inconel, Monel and fluoropolymer-lined vessels. FIG. 1 shows the reaction of HF and HCC-240fa in the production of HFC-245fa, however alternatively, HCC-230 would be substituted for HCC-240 in the production of HFC-236fa or a mixture of HCC-230 and HCC-240 substituted to form a mixture of HFC-245fa and HFC 236fa. As seen in FIG. 1, HCC-240 and HF are simultaneously fed to the reactor. This is done after the reactor reaches the desired temperature. The reactor is run at a preferred temperature ranging from about 60° to about 140° C.; more preferably from about 70° to about 120° C. and most preferably from about 80° to about 110° C. The HF to HCC-240fa or HCC-230 mole ratio preferably ranges from about 4 to about 10; more preferably from about 5 to about 9 and most preferably from about 5.5 to about 8. Reactor pressure is preferably maintained at from about 50 to about 300 psig; more preferably from about 100 to about 275 psig and most preferably from about 125 to about 260 psig. A chlorine feed is optional, but preferred to keep the catalyst active. A chlorine feed is especially advantageous when antimony chloride is used as catalyst. For every pound of SbCl₅ catalyst, about 0.06 to about 0.2 lb. of chlorine is fed to the reactor. Chlorine can be charged in either a batch or continuous mode.

5,763,706

3

Optionally, but preferably, a top catalyst stripper is used such that most of the unreacted HF and catalyst is refluxed back to the reactor. The catalyst stripper is a packed pipe equipped with a condenser and this step is conducted by adjusting the temperature of the condenser to a range of from about 20° C. to about 100° C.

The effluent from the catalyst stripper is then optionally, but preferably, fed to an HCl distillation column to remove relatively pure HCl from the reaction mixture exiting the catalyst stripper. The pressure of the HCl column is preferred to match that of the reactor.

The essentially HCl free organic/HF mixture exiting the HCl column is optionally fed to a distillation column (not shown in FIG. 1) to remove heavy reaction products before the resulting mixture enters a sulfuric acid absorber. The pressure of this column is preferably maintained at from about 200 psig or less, more preferably from about 150 psig or less and most preferably from about 100 psig or less. The overhead of the distillation column contains HfFC-245fa or HFC-236fa, volatile by-products as impurities and unreacted HF. The bottom cuts of the distillation column contains recyclable and non-recyclable heavies. The recyclable heavies are recycled back to the step (a) reactor. The non-recyclable heavies are disposed of.

The process then performs a step (c) of recovering HF present after step (b). This is preferably conducted by vapor–liquid or liquid—liquid extraction. This is preferably performed with a sulfuric acid absorber followed by a caustic or water scrubber. The mixture of fluorocarbons resulting from step (b) is in admixture with hydrogen fluoride. The HFC and HF may be separated by adding sulfuric acid to the HFC/HF mixture. This forms a phase rich in HFC and phase rich in the hydrogen fluoride and sulfuric acid. Sulfuric acid is preferably added such that the weight ratio of sulfuric acid to hydrogen fluoride ranges from about 1:1 to about 10:1. More preferably the weight ratio ranges from about 1:1 to about 8:1 and most preferably from about 2:1 to about 4:1. Preferably the extraction is conducted at a temperature of from about −20° C. to about 100° C., more preferably from about −10° C. to about 60° C., and most preferably from about 0° C. to about 40° C. The reaction is usually conducted at normal atmospheric pressure, however, higher or lower pressure conditions may be used by those skilled in the art. Pressure is preferably about 100 psig or less; more preferably about 50 psig or less, and most preferably about 20 psig or less.

The sulfuric acid/HF mixture from the sulfuric acid absorber is fed to a HF recovery column (not shown in FIG. 1). The HF and sulfuric acid may then be recycled. That is, the HF may be recirculated to the step (a) starting reaction for the formation of the HFC-245fa or HFC-236fa and the sulfuric acid may be recycled for use in the extraction step(c). The organic portion of the mixture exiting the sulfuric acid absorber is optionally fed into a distillation column (not shown in FIG. 1) to remove light products which are recycled.

Upon adding the sulfuric acid to the mixture of fluorocarbon and HF, two phases form. An upper phase is formed which is rich in organics and a lower phase which is rich in HF/sulfuric acid. By the term "rich" is meant, the phase contains more than 50% of the indicated component in that phase, and preferably more than 80% of the indicated component in that phase. The extraction efficiency of the fluorocarbon can range from about 90% to about 99%. After the separation of the phases, one removes the upper phase rich in the organics from the lower phase rich in the

4

hydrogen fluoride and sulfuric acid. One may optionally repeat the extraction by adding more sulfuric acid. Preferably one thereafter separates the hydrogen fluoride and sulfuric acid from the removed lower phase.

Alternatively the sulfuric acid absorber may be replaced by a HF/water azeotrope absorber. The HF/water azeotrope weight ratio is preferably maintained at about 42% HF and 58% water. HF is extracted and recycled back to the reactor in the same manner as in the sulfuric acid.

The HFC-245fa or HFC-236fa rich stream exiting either the light column or the sulfuric acid absorber is fed to a caustic or water scrubber for removal of acidity. Such a scrubber is well known in the art and conventionally comprises a caustic scrubbing with aqueous NaOH or KOH under conditions sufficient to neutralize residual acidity.

A photochlorination unit is then used to remove unsaturates in the HFC-245fa or HFC-236fa stream. This is done by adding chlorine to the stream to react with unsaturates in the presence of UV light. Photochlorination of unsaturates is itself well known in the art. The mole ratio of $Cl_2$/total unsaturates is preferably about 5 or less, more preferably about 4 or less, and most preferably about 3 or less. Pressure is not critical, although it is preferably operated under atmospheric or subatmospheric pressure. Temperature is preferably about 60° C. or less, more preferably about 40° C. or less and most preferably about 15° C. or less. UV light preferably has a wavelength of less than about 400 nanometers. The mixture is exposed to the UV light for a time and at an energy level sufficient to reduce unsaturates to less than about 500 ppm.

HFC-245fa or HFC-236fa is then recovered in a step (e) by distillation of the intermediate resulting from step (d). Distillation can be a batch or continuous distillation. In the batch mode, one distillation column is sufficient. In a continuous mode, two distillation columns may be required, one to remove light distillates and the other to remove heavies. Pressure of the distillation(s) is preferred to run at about 200 psig or less, more preferably about 150 psig or less and most preferably about 100 psig or less.

The HFC-245fa or HFC-236fa produced has a purity of at least about 99.5%. The reactions of the present invention may be conducted in either a batch or continuous mode of operation, however, continuous operation is preferred.

The following non-limiting examples serve to illustrate the invention.

EXAMPLE 1

400 lbs. of antimony pentachloride catalyst is charged into a 50 gallon reactor. The reactor temperature is raised to 95° C. 605 lbs./day of HCC-240, 332 lbs./day of HF and 36 lbs./day of chlorine are fed to the reactor continuously. The reactor pressure is maintained at about 150 psig. The product stream contains HFC-245fa, HF, HCl and organic by-products including 1,3,3,3-tetrafluoropropene, 1-chloro-3,3,3-trifluoropropene, and 1-chloro-1,3,3,3-tetrafluoropropene. About 504 lbs./day of HCl is removed from the product stream by low temperature distillation. The HCl free product stream is then fed to a sulfuric acid absorber to extract excess HF and to recycle HF back to the reactor. The effluent of the absorber is fed to a acid scrubber to remove trace amounts of HF. The HF-free product stream is then fed to a photochlorinator. Chlorine is added to remove the unsaturates in the presence of UV light. The excess chlorine is removed by aqueous wash by using caustic and sodium sulfite. The chlorine-free effluent is then dried and fed to a final distillation. The HFC-245fa produced

5,763,706

**5**

has high quality (99.5% purity) and about 300 lbs./day is produced. The single pass yield is about 80%. The yield with recycle of heavies and lights is greater than 90%.

### EXAMPLE 2

Example 1 is repeated except a distillation column is added after the HCl column and before the sulfuric acid absorber. This column is used to remove the heavies from the crude product stream exiting the HCl column. About 50% of the heavies are recyclable and are recycled back to the reactor. The light product mixture exiting the top of the heavies column is fed back to the sulfuric acid absorber. The HFC-245fa produced is greater than 300 lbs./day.

### EXAMPLE 3

Example 2 is repeated except an additional distillation column is added between the caustic scrubber and the sulfuric acid absorber to remove and recycle light intermediates. The bottoms of this distillation column is fed to the caustic scrubber. The HFC-245fa produced is greater than 300 lbs./day.

### EXAMPLE 4

Example 1 is repeated except a distillation column is added before the photochlorinator and after the caustic scrubber to remove and recycle the light by-products. The bottom of this lights distillation column is fed to the photochlorinator. The HFC-245fa produced is greater than 300 lbs./day.

### EXAMPLE 5

Example 1 is repeated except the sulfuric acid absorber is replaced by HF/water azetrope absorber. The HF/water azeotrope weight ratio is maintained at about 42% HF and 58% water. HF is extracted and recycled back to the reactor in the same manner as in the sulfuric acid.

### EXAMPLE 6

A 2.5 gallon PTFE-lined reactor is charged with 5 lbs. HF and 1.2 lbs. antimony pentachloride catalyst. 6.2 lbs. of 1,1,1,3,3,3-hexachloropropane are charged into the reactor. The reactor temperature is brought to 92° C. and pressure is controlled at less than 240 psig. Hourly samples are taken during the batch run. After 7 hours the reaction is complete and the yield of HFC-236fa is approximately 88%.

### EXAMPLE 7

Example 1 is repeated except the organic feed is changed from HCC-240 (1,1,1,3,3-pentachloropropane) to HCC-230 (1,1,1,3,3,3-hexachloropropane). The reaction is conducted at 95° C. The yield of HFC-236fa is 90%.

What is claimed is:

1. A process for the preparation of fluoropropanes which comprises (a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in the presence of a fluorination catalyst;

(b) optionally removing HCl produced by step (a); and

(c) recovering HF present after step (b).

2. The process of claim 1 further comprising the subsequent steps of: (d) removing unsaturated compounds present after step (c) by photochlorination; and (e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof from the result of step (d) by distillation.

**6**

3. The process of claim 1 wherein step (a) is conducted in a liquid phase.

4. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of transition metal halides, Group IVb metal halides and Group Vb metal halides and mixtures thereof.

5. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of chrome halides, $SbCl_5$, $SbCl_3$, $TaCl_5$, $SnCl_4$, $NbCl_5$, $TiCl_4$, $MoCl_5$ and mixtures thereof.

6. The process of claim 1 wherein step (a) is conducted at a temperature of from about 60° to about 140° C.

7. The process of claim 1 wherein step (a) is conducted at a pressure of from about 50 to about 300 psig.

8. The process of claim 1 wherein chlorine feed to reaction step (a) in an amount sufficient to maintain the catalytic activity of the catalyst.

9. The process of claim 1 wherein the HF to HCC-240fa mole ratio ranges from about 4 to about 10.

10. The process of claim 1 further comprising an additional step after step (a) and before step (b), wherein any unreacted hydrogen fluoride and catalyst in the reaction product resulting from step (a) is removed and recycled to the step (a) reaction.

11. The process of claim 1 wherein step (b) is conducted by distillation.

12. The process of claim 1 further comprising an additional step after step (b) and before step (c), comprising distilling the product resulting from step (b) to produce an overhead of the distillation column comprising 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof, hydrogen fluoride, unsaturated compounds and other impurities.

13. The process of claim 11 wherein the additional distilling step after step (b) and before step (c) is conducted at a pressure of from about 200 psig or less.

14. The process of claim 1 wherein step (c) is conducted by liquid-vapor extraction.

15. The process of claim 13 wherein step (c) is conducted by adding sulfuric acid to the product resulting after step (b) and then separating therefrom a mixture of sulfuric acid and HF from a reaction mass balance comprising 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or a mixture thereof, unsaturated compounds and other impurities.

16. The process of claim 15 comprising the step of removing residual acids from said reaction mass balance after step (c).

17. The process of claim 16 wherein the step of removing residual acids from said reaction mass balance after step (c) is conducted with a caustic scrubber or a water scrubber.

18. The process of claim 15 further comprising separating sulfuric acid and HF from the mixture of sulfuric acid and HF.

19. The process of claim 18 further comprising recycling HF recovered from step (c) back to step (a).

20. The process of claim 2 wherein step (d) is conducted with chlorine in a mole ratio of $Cl_2$ to total unsaturated compounds is about 5 or less.

21. The process of claim 2 wherein the step (c) distillation is conducted at about 200 psig or less.

22. The process of claim 1 wherein 1,1,1,3,3-pentafluoropropane produced.

23. The process of claim 1 wherein 1,1,1,3,3,3-hexafluoropropane produced.

24. The process of claim 1 wherein a mixture of 1,1,1,3,3-pentafluoropropane and 1,1,1,3,3,3-hexafluoropropane is produced.

5,763,706

7

25. The process of claim 1 wherein steps (a) through (c) are conducted in a continuous mode.

26. The process of claim 2 wherein steps (a) through (e) are conducted in a continuous mode.

27. A process for the preparation of fluoropropanes which comprises

(a) reacting a compound selected from the group consisting of 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane and mixtures thereof with hydrogen fluoride in a liquid phase in the presence of a fluorination catalyst;

8

(b) optionally removing HCl produced by step (a) by distillation; and

(c) recovering HF present after step (b) by liquid-vapor or liquid—liquid extraction;

(d) optionally removing unsaturated compounds present after step (c) by photochlorination; and

(e) recovering 1,1,1,3,3-pentafluoropropane; 1,1,1,3,3,3-hexafluoropropane or mixtures thereof from the result of step (d) by distillation.

*   *   *   *   *

# EXHIBIT 4

US007214839B2

(12) **United States Patent**
Tung et al.

(10) Patent No.: **US 7,214,839 B2**
(45) **Date of Patent:**         **May 8, 2007**

(54) **METHOD OF MAKING HYDROFLUOROCARBONS**

(75) Inventors: **Hsueh Sung Tung**, Getzville, NY (US); **Chad L. Marks**, Gonzales, LA (US); **Stephen A. Cottrell**, Baton Rouge, LA (US)

(73) Assignee: **Honeywell International Inc.**, Morristown, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 127 days.

(21) Appl. No.: **10/444,610**

(22) Filed: **May 23, 2003**

(65) **Prior Publication Data**

US 2004/0236160 A1      Nov. 25, 2004

(51) **Int. Cl.**
*C07C 17/00*        (2006.01)
(52) **U.S. Cl.** ..................... **570/163**; 570/164; 570/166; 570/167; 570/168; 570/169; 570/170
(58) **Field of Classification Search** ............... 570/163, 570/164, 166, 167, 168, 169, 170
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,942,036 A    6/1960   Smith et al. ............... 260/653

| | | | |
|---|---|---|---|
| 5,171,901 A | 12/1992 | Gassen et al. | 570/168 |
| 5,574,192 A | 11/1996 | VanDerPuy et al. | 570/167 |
| 5,710,352 A * | 1/1998 | Tung | 570/166 |
| 5,744,660 A | 4/1998 | Bradley et al. | 570/169 |
| 5,763,706 A | 6/1998 | Tung et al. | 570/167 |
| 5,763,708 A | 6/1998 | Clemmer et al. | 570/169 |
| 5,770,779 A * | 6/1998 | Nappa et al. | 570/166 |
| 5,877,359 A | 3/1999 | Elsheikh | 570/160 |
| 5,902,912 A * | 5/1999 | Tung et al. | 570/164 |
| 6,187,976 B1 | 2/2001 | Van Der Puy et al. | 570/176 |
| 6,362,383 B1 * | 3/2002 | Wilmet et al. | 570/166 |
| 6,479,718 B1 | 11/2002 | Elsheikh et al. | 570/167 |
| 6,730,817 B1 | 5/2004 | Wilmet et al. | 570/167 |

* cited by examiner

*Primary Examiner*—Sikarl A. Witherspoon
(74) *Attorney, Agent, or Firm*—Colleen D. Szuch

(57)        **ABSTRACT**

A manufacturing process for making hydrofluorocarbons (HFCs), by reacting a hydrochlorocarbon and HF in a liquid phase catalytic reactor using a large mole ratio of HF to hydrochlorocarbon to minimize formation of high boiling by-products and improve HF consumption and hydrofluorocarbon yields.

**30 Claims, No Drawings**

US 7,214,839 B2

1

# METHOD OF MAKING HYDROFLUOROCARBONS

## BACKGROUND OF THE INVENTION

The present invention relates to the preparation of hydrofluorocarbons (HFC's). More particularly, the invention pertains to a method for the preparation of difluoromethane (HFC-32), 1,1,1-trifluoroethane (HFC-143a), 1,1,1,3,3-pentafluoropropane (HFC-245fa), 1,1,1,3,3,3-hexfluoropropane (HFC-236fa), 1,1,1,3,3-pentafluorobutane (HFC-365mfc) by reacting the corresponding hydrochlorocarbon feedstocks and HF in a liquid phase catalytic reactor using a large mole ratio of HF to hydrochlorocarbon to minimize formation of high boiling by-products and improve HF consumption and hydrofluorocarbon yields.

In recent years there has been widespread concern that chlorofluorocarbons might be detrimental to the Earth's ozone layer. As a result, there is a worldwide effort to use halocarbons which contain fewer chlorine substituents. In this regard, 1,1,1,3,3-pentafluoropropane and other HFC's have zero ozone depletion potential, and are being considered as a replacement for chlorofluorocarbons in many applications. The production of hydrofluorocarbons, i.e. compounds containing only carbon, hydrogen and fluorine has been the subject of interest to provide environmentally desirable products for use as solvents, foam blowing agents, refrigerants, cleaning agents, aerosol propellants, heat transfer media, dielectrics, fire extinguishing compositions and power cycle working fluids. It is known in the art to produce hydrofluorocarbons by reacting hydrogen fluoride with various hydrochlorocarbon compounds. Such HFC's are not only considered to be much more environmentally advantageous than hydrochlorofluorocarbons (HCFC's) or chlorofluorocarbons (CFC's) because they are non-ozone depleting, but also is they are also non-flammable and non-toxic as compared to the chlorine containing compounds. Hydrofluorocarbons are themselves well known. For example, HFC-245fa itself is well known in the art as described in U.S. Pat. No. 2,942,036, which is incorporated herein by reference. It has been a problem in the art to conduct an economical process for the continuous preparation of hydrofluorocarbons. One such process has been disclosed in U.S. Pat. No. 5,763,706, which is incorporated by reference. This reference shows reacting 1,1,1,3,3-pentachloropropane (HCC-240fa) and 1,1,1,3,3,3-hexachloropropane (HCC-230fa) with hydrogen fluoride in the presence of a fluorination catalyst, however, this process employs a relatively low molar ratio of hydrogen fluoride to HCC-240fa or HCC-230fa. This technique produces a disadvantageously large amounts of high boiling point by-products and a lower than desired catalyst life. It has now been found that by the use of a large HF to hydrochlorocarbon (organic feed) ratio, of at least about 15:1 in the liquid phase, the reaction can reduce high boiling point by-product formation and also prolong catalyst life. This is opposed to the prior art teaching to use organic-rich, HF-lean conditions.

It has now been found that hydrofluorocarbons, such as HFC-32, HFC-143a, HFC-245fa, HFC-236fa, HFC-365mfc, but not limited thereto, may be continuously and economically produced in an integrated manufacturing process by the reaction of hydrochlorocarbons with a high mole ratio of hydrogen fluoride. The hydrochlorocarbon and HF are first reacted, in either the liquid or vapor phase, but preferably in a liquid phase catalytic reaction, and a portion of the excess amounts of HF is optionally recycled back to the reactor

2

such as by using a recycle column. HCl is then optionally removed by distillation, additional HF is recovered, such as by liquid-vapor or liquid-liquid extraction and then optionally recycled. Unsaturates are thereafter removed by photochlorination and hydrofluorocarbons are obtained by distillation.

## DESCRIPTION OF THE INVENTION

The invention provides a process for the preparation of a hydrofluorocarbon which comprises
  (a) reacting at least one hydrochlorocarbon with hydrogen fluoride in the presence of a fluorination catalyst, wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;
  (b) optionally recycling a portion of any unreacted HF back to step (a);
  (c) optionally removing any HCl produced by step (a); and
  (d) recovering at least one hydrofluorocarbon.

The invention also provides a process for the preparation of a hydrofluorocarbon which comprises (a) reacting at least one hydrochlorocarbon with hydrogen fluoride, in the presence of a fluorination catalyst, and wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;
  (b) optionally recycling a portion of any unreacted HF back to step (a);
  (c) optionally removing any HCl produced by step (a);
  (d) optionally recovering any additional unreacted HF present after step (c) by liquid-vapor or liquid-liquid extraction;
  (e) optionally removing unsaturated compounds present after step (d) by photochlorination; and
  (f) recovering at least one hydrofluorocarbon from the result of step (e) by distillation.

Useful hydrochlorocarbons for this invention non-exclusively include methylene chloride ($CH_2Cl_2$), for the production of difluoroethane $CH_2F_2$ (HFC-32); 1,1,1-trichloroethane (HCC-140a) for the production of 1,1,1-trifluoroethane (HFC-143a); 1,1,1,3,3-pentachloropropane (HCC-240fa) for the production of 1,1,1,3,3-pentafluoropropane (HFC-245fa); 1,1,1,3,3,3-hexachloropropane (HCC-230fa) for the production of 1,1,1,3,3,3-hexafluoropropane (HFC-236fa); 1,1,1,3,3-pentachlorobutane (HCC-360jfa) for the production of 1,1,1,3,3-pentafluorobutane (HFC-365mfc) and combinations thereof. 1,1,1,3,3-pentachloropropane (HCC-240fa) can also be used for the production of 1-chloro,3-3-3-trifluoropropene (HCFC-1233zd) and 1,3,3,3-tetrafluoropropene (HFC-1234ze). Perchloroethylene can be used to produce 1,1,1,3,3-pentafluoroethane (HFC-125).

In the practice of the present invention, a fluorination catalyst, preferably a liquid phase catalyst is charged to a fluorination reactor prior to heating of the reactor. Useful fluorination catalysts non-exclusively include transition metal halides, and oxides, Group IVb metal halides and Group Vb metal halides and mixtures thereof. Such catalysts non-exclusively include fluorinated chrome halides, fluorinated chrome oxides, fluorinated species of $SbCl_5$, $SbCl_3$, $TaCl_5$, $SnCl_4$, $NbCl_5$, $TiCl_4$, or $MoCl_5$ and combinations thereof. The reactor according to this invention may be any suitable fluorination reaction vessel but are preferably constructed from materials which are resistant to the corrosive effects of hydrogen fluoride such as Hastalloy, Inconel, Monel and fluoropolymer-lined vessels. At least one hydrochlorocarbon and HF are simultaneously fed to the reactor after the reactor reaches the desired temperature. An impor-

US 7,214,839 B2

3

tant feature of the invention is that the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 50:1.

In a preferred embodiment, the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 40:1 and in a more preferred embodiment, the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 20:1 to about 30:1. The reactor is run at a preferred temperature ranging from about 60° C. to about 180° C.; more preferably from about 70° C. to about 150° C. and most preferably from about 80° C. to about 120° C. Reactor pressure is usually maintained at a pressure of from about 20 to about 400 psig, preferably from about 50 to about 300 psig; more preferably from about 100 to about 275 psig and most preferably from about 125 to about 260 psig. A chlorine feed is optional, but preferred to keep the catalyst active. A chlorine feed is especially advantageous when antimony chloride is used as catalyst. For every pound of catalysts, such as SbCl₅ catalyst, about 0.002 to about 0.2 lb per hour of chlorine is fed to the reactor. Chlorine can be charged in either a batch or continuous mode.

Optionally, but preferably, a top catalyst stripper is used such that most of the unreacted HF and catalyst is refluxed back to the reactor. The catalyst stripper is equipped with a distillation column and a condenser and this step is conducted by adjusting the temperature of the condenser to a range of from about 20° C. to about 200° C. The effluent from the catalyst stripper is optionally, but preferably fed to a recycle column to recycle a portion of the excess amounts of HF. The pressure of the recycle column is preferred to match that of the reactor.

The effluent from the recycle column is then optionally, but preferably, fed to an HCl distillation column to remove relatively pure HCl from the reaction mixture exiting the recycle column. The pressure of the HCl column is preferred to match that of the recycle column. In another embodiment, unreacted HF can be recovered at this point in the process and with optional recycling of recovered hydrogen fluoride back to the reactor in step (a).

The essentially HCl free organic/HF mixture exiting the HCl column is optionally fed to HF recovery unit. The mixture of fluorocarbons resulting from step (c) is in admixture with hydrogen fluoride. The hydrofluorocarbon and HF may be separated by extracting the HF/hydrofluorocarbon mixture with sulfuric acid. This forms a phase rich in HFC and a phase rich in the hydrogen fluoride and sulfuric acid. Sulfuric acid is preferably added such that the weight ratio of sulfuric acid to hydrogen fluoride ranges from about 1:1 to about 25:1. More preferably the weight ratio ranges from about 1:1 to about 20:1 and most preferably from about 2:1 to about 15:1. Preferably the extraction is conducted at a temperature of from about –20° C. to about 100° C., more preferably from about –10° C. to about 80° C., and most preferably from about 0° C. to about 60° C. The extraction is usually conducted at normal atmospheric pressure, however, higher or lower pressure conditions may be used by those skilled in the art. Pressure is preferably about 100 psig or less; more preferably about 50 psig or less, and most preferably about 20 psig or less.

The sulfuric acid/HF mixture from the sulfuric acid absorber is fed to a HF recovery column. The HF and sulfuric acid may then be recycled. That is, the HF may be recirculated to the step (a) starting reactor for the formation of the hydrofluorocarbon, such as HFC-32, HFC-143a, HFC-245fa, HFC-236fa, or HFC-365mfc, and the sulfuric acid may be recycled for use in the extraction step. The

4

organic portion of the mixture exiting the sulfuric acid absorber is optionally fed into a distillation column.

The distillation column is used to remove heavy reaction products. The pressure of this column is preferably maintained at about 200 psig or less, more preferably from about 150 psig or less and most preferably from about 100 psig or less. The overhead of the distillation column contains hydrofluorocarbon, volatile by-products as impurities and some unreacted HF. The bottom cuts of the distillation column contains recyclable and non-recyclable heavies. The recyclable heavies are recycled back to the step (a) reactor. The non-recyclable heavies are disposed of.

Alternatively the sulfuric acid absorber may be replaced by a HF/water azeotrope absorber. The HF/water azeotrope weight ratio is preferably maintained at about 30% HF and 70% water. HF is extracted and recycled back to the reactor in the same manner as in the sulfuric acid.

The hydrofluorocarbon-rich stream exiting either the distillation column or the sulfuric acid absorber is fed to a caustic or water scrubber for removal of acidity. Such a scrubber is well known in the art and conventionally comprises a caustic scrubbing with aqueous NaOH or KOH under conditions sufficient to neutralize residual acidity.

A photochlorination unit is then used to remove unsaturates in the hydrofluorocarbon, e.g. HFC-32, HFC-143a, HFC-245fa, HFC-236fa, or HFC-365mfc, stream. This is done by adding chlorine to the stream to react with unsaturates in the presence of UV light. Photochlorination of unsaturates is itself well known in the art. The mole ratio of Cl₂/total unsaturates is preferably about 5 or less, more preferably about 4 or less, and most preferably about 3 or less. Pressure is not critical, although it is preferably operated under atmospheric or subatmospheric pressure. Temperature is preferably about 60° C. or less, more preferably about 40° C. or less and most preferably about 25° C. or less. UV light preferably has a wavelength of less than about 400 nanometers. The mixture is exposed to the UV light for a time and at an energy level sufficient to reduce unsaturates to less than about 500 ppm. The acidity of the resulting stream was removed once again using water and/or caustic scrubbers.

Hydrofluorocarbons may then be recovered in a step by distillation of the resulting crude product stream. Distillation can be a batch or continuous distillation. In the batch mode, one distillation column is sufficient. In a continuous mode, two distillation columns may be required, one to remove light distillates and the other to remove heavies. Pressure of the distillation(s) is preferred to run at about 200 psig or less, more preferably about 150 psig or less and most preferably about 100 psig or less.

The hydrofluorocarbon, i.e. HFC-32, HFC-143a, HFC-245fa, HFC-236fa, HFC-365mfc, but not limited thereto, produced has a purity of at least about 99.5%. The reactions of the present invention may be conducted in either a batch or continuous mode of operation, however, continuous operation is preferred.

The following non-limiting examples serve to illustrate the invention.

EXAMPLE 1

About 400 lbs antimony pentachloride catalyst were charged into a 50 gallon reactor. About 80 lbs of anhydrous HF were added to the reactor. The reactor temperature was raised to about 95° C. HCl was vented out of the reactor. About 300 lbs/day of methylene chloride (CH₂Cl₂), 141 lbs/day of fresh HF, 917 lbs/day of recycled/recovered HF

US 7,214,839 B2

5

and 20 lbs/day of chlorine are fed to the reactor continuously. The HF to methylene chloride ratio is about 15/1. Chlorine was used to keep catalyst active. The reactor pressure is maintained at about 200 psig. About 174 lbs of HFC-32 (99.9% purity) are produced. About 9.5 lbs of by-products are also produced.

EXAMPLE 2 COMPARATIVE

About 400 lbs antimony pentachloride catalyst was charged into a 50 gallon reactor. About 80 lbs of anhydrous HF was added to the reactor. The reactor temperature was raised to about 95° C. HCl was vented out of the reactor. About 300 lbs/day of methylene chloride (CH₂Cl₂), 282 lbs/day of fresh HF, no recycled/recovered HF and 20 lbs/day of chlorine are fed to the reactor continuously. The HF to methylene chloride ratio is about 4/1. Chlorine is used to keep catalyst active. The reactor pressure is maintained at about 200 psig. About 156 lbs of HFC-32 (99.9% purity) is produced. About 28 lbs of by-products were also produced.

EXAMPLE 3

About 400 lbs antimony pentachloride catalyst were charged into a 50 gallon reactor. About 80 lbs of anhydrous HF were added to the reactor. The reactor temperature was raised to about 95° C. HCl was vented out of the reactor. About 400 lbs/day of 1,1,1-trichloroethane (HCC-140a), 180 lbs/day of fresh HF, 719 lbs/day of recycled/recovered HF and 20 lbs/day of chlorine are fed to the reactor continuously. The HF to HCC-140a ratio is about 15/1. Chlorine is used to keep catalyst active. The reactor pressure is maintained at about 150 psig. About 240lbs of HFC-143a (99.9% purity) is produced. About 12 lbs of high boiling point by-products are also produced.

EXAMPLE 4 COMPARATIVE

About 400 lbs antimony pentachloride catalyst was charged into a 50 gallon reactor. About 80 lbs of anhydrous HF was added to the reactor. The reactor temperature was raised to about 95° C. HCl was vented out of the reactor. About 400 lbs/day of 1,1,1-trichloroethane (HCC-140a), 300 lbs/day of fresh HF, no recycled/recovered HF and 20 lbs/day of chlorine are fed to the reactor continuously. The HF to HCC-140a ratio was about 5/1. Chlorine was used to keep catalyst active. The reactor pressure is maintained at about 150 psig. About 214 lbs of HFC-143a (99.9% purity) are produced. About 38 lbs of high boiling point by-products are also produced.

EXAMPLE 5

About 400 lbs antimony pentachloride catalyst was charged into a 50 gallon reactor. About 80 lbs of anhydrous HF was added to the reactor. The reactor temperature was raised to about 95° C. HCl was vented out of the reactor. About 605 lbs/day of HCC-240fa, 280 lbs/day of fresh HF, 684 lbs/day of recycled/recovered HF and 20 lbs/day of chlorine were fed to the reactor continuously. The HF to HCC-240fa ratio was about 17/1. Chlorine was used to keep catalyst active. The reactor pressure was maintained at about 150 psig. About 340 lbs of HFC-245fa (99.9% purity) was produced. About 36.4 lbs of high boiling point by-products were also produced.

6

EXAMPLE 6

About 400 lbs antimony pentachloride catalyst was charged to a 50 gal reactor. About 80 lbs of anhydrous HF was added to the reactor. The reactor temperature was raised to about 95° C. HCl was vented out of the reactor. About 605 lbs/day HCC-240fa, 280 lbs/day of fresh HF, 1128 lbs/day of recycled/recovered HF and 20 lbs/day chlorine were fed to the reactor continuously. The HF to HCC-240fa ratio was about 25/1. Chlorine was used to keep catalyst active. The reactor pressure was maintained at about 150 psig. About 345 lbs of HFC-245fa (99.9% purity) was produced. About 21 lbs of high boiling point by-products were also produced.

EXAMPLE 7 COMPARATIVE

About 400 lbs antimony pentachloride catalyst was charged to a 50 gal reactor. About 80 lbs of anhydrous HF was added to the reactor. The reactor temperature is raised to about 95° C. HCl was vented out of the reactor. About 605 lbs/day HCC-240fa, 280 lbs/day of fresh HF, 461 lbs/day of recycled/recovered HF and 20 lbs/day chlorine were fed to the reactor continuously. The HF to HFC-240fa ratio was about 13/1. Chlorine was used to keep catalyst active. The reactor pressure was maintained at about 150 psig. About 320 lbs of HFC-245fa (99.9% purity) was produced. About 50 lbs of high boiling by-products were also produced.

As one can see, the processes of Examples 1, 3, 5 and 6 produce a substantially larger yield of HFC-32, HFC-143a, HFC-245fa and a much lower amount of high boiling point by-products

While the present invention has been particularly shown and described with reference to preferred embodiments, it will be readily appreciated by those of ordinary skill in the art that various changes and modifications may be made without departing from the spirit and scope of the invention. It is intended that the claims be interpreted to cover the disclosed embodiment, those alternatives which have been discussed above and all equivalents thereto.

What is claimed is:

1. A continuous, integrated manufacturing process for the preparation of a hydrofluorocarbon which comprises

  (a) reacting at least one hydrochlorocarbon with hydrogen fluoride in the presence of a fluorination catalyst, wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;

  (b) optionally recycling a portion of any unreacted HF back to step (a);

  (c) continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;

  (d) removing any HCl produced by step (a); and

  (e) recovering at least one hydrofluorocarbon.

2. The process of claim 1 wherein the recycling of step (b) is conducted.

3. The process of claim 1 wherein step (d) is conducted by distillation.

4. The process of claim 1 wherein step (a) is conducted in a liquid phase.

5. The process of claim 1 wherein the hydrochlorocarbon comprises methylene chloride; 1,1,1-trichloroethane; 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane; 1,1,1,3,3-pentachlorobutane; 1,1,1,3,3-pentachloropropane; perchloroethylene or combinations thereof.

6. The process of claim 1 wherein the hydrochlorocarbon comprises 1,1,1,3,3-pentachloropropane and wherein the hydrofluorocarbon comprises 1,1,1,3,3-pentafluoropropane.

US 7,214,839 B2

7

7. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of transition metal halides and oxides, Group IVb metal halides, Group Vb metal halides and combinations thereof.

8. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of fluorinated chrome halides, fluorinated chrome oxides, fluorinated species of $SbCl_5$, $SbCl_3$, $TaCl_5$, $SnCl_4$, $NbCl_5$, $TiCl_4$, $MoCl_5$ and combinations thereof.

9. The process of claim 1 wherein the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 50:1.

10. The process of claim 1 wherein the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 40:1.

11. The process of claim 1 wherein the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 30:1.

12. The process of claim 1 wherein step (a) is conducted at a temperature of from about 60° C. to about 180° C.

13. The process of claim 1 wherein step (a) is conducted at a pressure of from about 20 to about 400 psig.

14. The process of claim 1 which comprises recovering any hydrogen fluoride present after step (b).

15. The process of claim 1 which comprises recovering any hydrogen fluoride present after step (b) and then recycling the recovered hydrogen fluoride to step (a).

16. The process of claim 1 further comprising the subsequent step (e) of removing any unsaturated compounds present after step (e) by photochlorination.

17. The process of claim 1 wherein step (e) comprises recovering hydrofluorocarbon from the result of step (d) by distillation.

18. The process of claim 1 further comprising an additional step after step (d) and before step (e), comprising distilling the product resulting from step (d) to produce an overhead of the distillation column comprising a hydrofluorocarbon, hydrogen fluoride, unsaturated compounds and other impurities.

19. The process of claim 18 wherein the additional distilling step after step (d) and before step (e) is conducted at a pressure of about 200 psig or less.

20. The process of claim 1 wherein step (e) is conducted by liquid-vapor extraction.

21. The process of claim 1 wherein step (e) is conducted by extracting the HF/hydrofluorocarbon stream with sulfuric acid to the product resulting after step (d) and then separat-

8

ing therefrom a mixture of sulfuric acid and HF from a reaction mass balance comprising hydrofluorocarbon, unsaturated compounds and other impurities.

22. The process of claim 21 comprising the step of removing residual acids from said reaction mass balance after step (e).

23. The process of claim 22 wherein the step of removing residual acids from said reaction mass balance after step (e) is conducted with a caustic scrubber or a water scrubber.

24. The process of claim 21 further comprising separating sulfuric acid and HF from the mixture of sulfuric acid and HF.

25. A continuous, integrated manufacturing process for the preparation of a hydrofluorocarbon which comprises (a) reacting at least one hydrochlorocarbon with hydrogen fluoride, in the presence of a fluorination catalyst, and wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;

(b) optionally recycling a portion of any unreacted HF back to step (a);

(c) continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;

(d) removing any HCl produced by step (a);

(e) optionally recovering any additional unreacted HF present after step (d) by liquid-vapor or liquid-liquid extraction;

(f) optionally removing unsaturated compounds present after step (e) by photochlorination; and

(g) recovering at least one hydrofluorocarbon from the result of step (f) by distillation.

26. The process of claim 25 wherein the recycling of step (b) is conducted.

27. The process of claim 25 wherein step (d) is conducted by distillation.

28. The process of claim 25 wherein step (a) is conducted in a liquid phase.

29. The process of claim 25 wherein the hydrochlorocarbon comprises methylene chloride; 1,1,1-trichloroethane; 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane; 1,1,1,3,3-pentachlorobutane and combinations thereof.

30. The process of claim 25 wherein the hydrochlorocarbon comprises 1,1,1,3,3-pentachloropropane and wherein the hydrofluorocarbon comprises 1,1,1,3,3-pentafluoropropane.

*    *    *    *    *

# EXHIBIT 5

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re the application of:                    Docket: H0005108
HSUEH SUNG TUNG, ET AL.

Serial Number: 10/444,610                    Group Art Unit: 1621

Filed: May 23, 2003                          Examiner: Sikarl A. Witherspoon

For: METHOD OF MAKING HYDROFLUOROCARBONS


<u>APPEAL BRIEF</u>


Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


Sir:

This is an Appeal to the Board of Patent Appeals and Interferences from the Final
Rejection of claims 1-13, 15-25, and 27-32 mailed January 12, 2006 in the above
identified case. A Notice of Appeal was filed on June 12, 2006 . An oral hearing is not
requested.


The Commissioner is authorized to charge the required appeal brief fee of $500.00
Deposit Acct. No. 01-1125. In the event that the Commissioner determines that an
additional extension of time is required in order for this submission to be timely, it is
requested that this submission include a petition for an additional extension for the
required length of time and the Commissioner is authorized to charge any other fees
necessitated by this paper to Deposit Acct. No. 01-1125.

08/15/2006 MBELETE1 00000019 011125   10444610
01 FC:1402     500.00 DA

1

# TABLE OF CONTENTS

Page No.

I.   REAL PARTY IN INTEREST ..........................          3

II.  RELATED APPEALS AND INTERFERENCES ..............        3

III. STATUS OF CLAIMS ................................       3

IV.  STATUS OF AMENDMENTS ...........................        3

V.   SUMMARY OF THE CLAIMED SUBJECT MATTER ........        3

VI.  GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL...        5

VII. ARGUMENTS .....................................          5

VIII. CLAIMS APPENDIX ........................................   14

I.  REAL PARTY IN INTEREST

The real party in interest is Honeywell International, Inc., the assignee of record.


II.  RELATED APPEALS AND INTERFERENCES

With respect to other appeals or interferences that will directly affect, or be directly

affected by, or have a bearing on the Board's decision in this appeal, please note that there

are no other related applications on appeal or subject to an interference known to

appellant, appellant's legal representative or the assignee.


III.  STATUS OF CLAIMS

The claims in the application are 1-32. Claims 1-13, 15-25, and 27-32 are pending, stand

rejected and are on appeal.  Claims 14 and 26 have been canceled.  No claims are

allowed.


IV.  STATUS OF AMENDMENTS

A response after final rejection was filed on April 3, 2006.  No claims were amended in

this response. An Advisory Action was mailed April 17, 2006. No claims were allowed.


V.  SUMMARY OF THE CLAIMED SUBJECT MATTER

The present invention claims a continuous, integrated manufacturing process for the

preparation of a hydrofluorocarbon which comprises

(a) reacting at least one hydrochlorocarbon with hydrogen fluoride in the presence of a

fluorination catalyst, wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at

least about 15:1;

(b) optionally recycling a portion of any unreacted HF back to step (a);

3

(c) continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;

(d) removing any HCl produced by step (a); and

(e) recovering at least one hydrofluorocarbon.

Support for the above claim can be found on page 3 lines 5-12 and throughout the specification. Support for step (a) can be found 3 line 27 through page 5 line 11. Step (b) is supported in the specification on page 5, lines 24-26. Support for step (c) can be found on page 5, lines 7-11. Support for step (d) can be found on page 5, lines 21-23. Support for step (e) can be found throughout the specification, particularly on page 5 lines 24-26.

The invention further claims a continuous, integrated manufacturing process for the preparation of a hydrofluorocarbon which comprises

(a) reacting at least one hydrochlorocarbon with hydrogen fluoride, in the presence of a fluorination catalyst, and wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;

(b) optionally recycling a portion of any unreacted HF back to step (a);

(c) continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;

(d) removing any HCl produced by step (a);

(e) optionally recovering any additional unreacted HF present after step (d) by liquid-vapor or liquid-liquid extraction;

(f) optionally removing unsaturated compounds present after step (e) by photochlorination; and

(g) recovering at least one hydrofluorocarbon from the result of step (f) by distillation.

Support for the above claim can be found on page 3 lines 5-12 and throughout the specification. Support for step (a) can be found 3 line 27 through page 5 line 11. Step (b) is supported in the specification on page 5, lines 24-26. Support for step (c) can be found on page 5, lines 7-11. Support for step (d) can be found on page 5, lines 21-23.

4

Step (e) is supported on the specification on page 2 line 27 through page 3 line 1. Support for step (f) can be found on page 3, lines 1-2. Support for step (g) can be found throughout the specification, particularly on page 8, lines 1-9.

## VI. GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL

(a) Claims 1-9, 13, 18, and 27 stand rejected under 35 U.S.C. 103 over Wilmet, et al. '817 in view of VanDerPuy et al.

(b) Claims 1-13, 15, 16, 18-21, and 27-30 stand rejected under 35 U.S.C. 103 over Elsheikh et al. in view of VanDerPuy et al.

(c) Claims 1-13, 15-25, and 27-32 stand rejected under 35 U.S.C. 103 over Wilmet et al. '383 in view of Tung et al.

## VII. ARGUMENTS

(a) Claims 1-9, 13, 18, and 27 stand rejected under 35 U.S.C. 103 as being unpatentable over Wilmet, et al. '817 in view of VanDerPuy et al. It is respectfully urged that this ground of rejection should be overruled.

The present invention claims:

1. A continuous, integrated manufacturing process for the preparation of a hydrofluorocarbon which comprises:

(a) reacting at least one hydrochlorocarbon with hydrogen fluoride in the presence of a fluorination catalyst, wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;

(b) *optionally recycling a portion of any unreacted HF back to step (a);*

(c) *continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;*

(d) *removing any HCl* produced by step (a); and

(e) recovering at least one hydrofluorocarbon.

Wilmet, et al '817 relates to a process for the production of 1,1,1,3,3-pentafluoropropane.
Indeed some of the individual process steps of the present invention are shown in Wilmet,
et al '817. For instance, one step of Wilmet, et al '817 includes the reacting of a
hydrochlorocarbon with HF in the presence of a hydrofluorination catalyst. However, as
the Examiner agrees, certain features of the present invention are *not* disclosed by this
reference. For example, the Examiner admits that Wilmet, et al '817 *fails to teach the
continuous addition of chlorine* to maintain activity of the catalyst. In an effort to fill this
void, the Examiner cites VanDerPuy, et al. It is respectfully urged that one skilled in the
art would not have combined the teachings of VanDerPuy, et al with Wilmet, et al '817 in
an effort to devise the presently claimed invention.


VanDerPuy, et al relates to process for forming pentafluoropropane. However, this
reference teaches away from both Wilmet, et al '817 and the present claims. First,
VanDerPuy, et al fails to teach the present step (d), which requires removal of *any* HCl
produced by a reaction of the present step (a). The only mention of any HCl removal in
VanDerPuy, et al 's disclosure is in Examples 3 and 5 where an HCl by-product is
*periodically* vented, during the venting of pressure in excess of 2655 Kpa. It should be
noted that in Example 3 the hydrogen fluoride to hydrochlorocarbon mole ratio would be
12.5:1, which is well below the presently required ratio at least about 15:1. In addition,
during such a periodic venting of HCl, the process would be operating in a batch mode.
Importantly, in these examples, only a periodic venting to relieve pressure is mentioned,
rather than a required removal of any produced HCl.


In short, Wilmet, et al show HCl removal, but does not show continuously adding
chlorine. VanDerPuy, et al show continuously adding chlorine, but does not show

*removing any HCl* produced by step (a). It is therefore submitted that one skilled in the art would not have combined VanDerPuy, et al with Wilmet, et al '817 in an effort to devise a continuous process with a continuous addition of chlorine and a removal of any HCl formed. One shilled in the art would not have any selection criteria at hand to combine the features of Wilmet, et al and VanDerPuy, et al to hypothetically form the instant invention. The processes of Wilmet, et al and VanDerVuy, et al. are simply incompatible with each other such that they are not combinable due to conflicting process requirements. It is therefore respectfully requested that the above rejection be overruled.

(b) Claims 1-13, 15, 16, 18-21, and 27-30 stand rejected under 35 U.S.C. 103 as being unpatentable over Elsheikh et al. in view of VanDerPuy et al. It is urged that this ground of rejection is unfounded and should be overruled.

Elsheikh, et al relates to the production of HCFC-123 via a process wherein perchloroethylene is reacted with HF in the presence of a catalyst. While this reference may have certain steps in common with the present invention, it is urged that it several key features of the present claims are absent in Elsheikh, et al. As the Examiner agrees, this reference fails to teach the continuous addition of chlorine to maintain the activity of the catalyst.

In an attempt to fill Elsheikh, et al's failure to disclose the continuous addition of chlorine, the Examiner again cites VanDerPuy, et al. The arguments against VanDerPuy, et al are repeated from above and apply equally here. VanDerPuy, et al's process employs the continuous addition of chlorine. VanDerPuy, et al fails to teach the present step (d), which requires removal of *any* HCl produced by the reaction of hydrochlorocarbon with HF.

7

The only instance of VanDerPuy, et al where some HCl is removed is during a periodic venting during a batch mode in Examples 3 and 5.  There is no removal of *any* (meaning all) of the HCl which may have been produced.

With regard to optional recycling step (b), the asserts that while Elsheikh does not disclose the recycling of unreacted HF, that it would have been obvious to one skilled in the art to do so in conducting a more efficient process and in view of VanDerPuy., et al. Applicants respectfully disagree.  The mere fact that VanDerPuy, et al show recycling, does not mean that such a step can arbitrarily be extracted and conbimed into the process of Elsheikh, et al.  While an HF recycling step may have been known or used in other processes before, the Examiner leaps to the conclusion that, such must be combinable with the processes of others and therefore must therefore be <u>prima facie</u> obvious.  This is certainly not the case.  The invention cannot be deemed unpatentable merely because, in a hindsight attempt to reconstruct the invention, one can find elements of it in the art; it must be shown that the invention <u>as a whole</u> was obvious at the time the invention was made <u>without knowledge</u> of the claimed invention. <u>35 U.S.C. 103</u>.  It is urged that the presently claimed sequence of steps and its attained benefits have not been heretofore known, and it would *not* have been obvious to formulate the present upon a combining of the presently cited references with or without the general knowledge of those skilled in the art.

In short, one skilled in the art would have no selection criteria for hypothetically combining Elsheikh, et al with VanDerVuy, et al.  The Elsheikh, et al process does not add chlorine and removes HCl.  VanDerPuy, et al, et al, continuously adds chlorine and does not teach removing *any HCl* produced, although batch mode examples 3 and 5 do teach some periodic venting of HCl.  It is submitted that the examiner is merely

8

reconstructing the art in light of the Applicant's disclosure by picking and choosing individual process steps from Elsheikh, et al and VanDerVuy, et al. It is submitted that one would not have combined VanDerVuy, et al. with Elsheikh in an effort to devise the claimed process. The processes of Elsheikh, et al and VanDerVuy, et al. are simply incompatible with each other such that they are not combinable due to conflicting process requirements in the references. It is therefore respectfully requested that the above rejection be overruled. For the above reasons, it is requested that the 35 U.S.C. 103 rejection be overruled.

(c) The Examiner has rejected claims 1-13, 15-25, and 27-32 under 35 U.S.C. 103 as being unpatentable over Wilmet et al. '383 in view of Tung et al. Applicants respectfully urge that this ground of rejection should be overruled.

The Examiner agrees that Wilmet, et al '383 differs from the present invention for several reasons, including failure to teach the removal of unsaturated compounds by photochlorination, as well as failure to teach the extraction of the HF/hydrofluorocarbon stream with sulfuric acid. Most importantly, the Examiner agrees that this reference differs from the present invention in that Wilmet, et al '383 conducts their process with the continuous introduction of HCl into the reaction mixture. Applicants respectfully urge that this feature of Wilmet, et al '383 is in direct contradiction with the present claims, which require HCl's continuous _removal_. It is urged that Wilmet, et al '383 directly teaches away from the present invention, and that one skilled in the art would therefore not look to Wilmet, et al's teachings in an effort to devise the presently claimed invention.

The Examiner is of the view that Wilmet, et al '383 discloses a removal of HCl after step 1 of Wilmet, et al's process, in col.4, lines 41-64. However, it is urged that HCl is _not_ removed from the process, but sent from the first step to the second step of the process,

for the preparation of HFC-245fa in the second step. This is described in detail in col.5, lines 14-17 and in col.5, lines 25-36, which states that the HCl from the first stage is sent to the second stage for the preparation of HFC-245fa. Throughout Wilmet, et al, they teach that it is advantageous to their process to continuously feed HCl into their reaction medium. This directly teaches away from the present invention which *only removes* and *does not* add HCl.

Applicants submitted that Wilmet, et al '383 fails to teach the continuous addition of chlorine as required by the present claims. The Examiner disagreed, stating that there would be chlorine present in some of the HCl added in Wilmet, et al's process, which would act as a catalyst as required by the present claims. Applicants strongly disagree. The present claims require the addition of chlorine, not HCl. HCl is detrimental to the present reaction, and hence it is removed. Nowhere in Wilmet, et al '383 is it taught that HCl maintains their catalyst, and furthermore, it would be obvious to one skilled in the art that HCl would not act in Applicant's process to maintain their catalyst. That is, Applicants would not go through the steps of removing HCl and adding chlorine if the HCl would have been sufficient to maintain the catalyst in this process. Applicants urge that the Examiner is impermissibly reconstructing the art in light of the present disclosure, without reason.

The Examiner next cites Tung, et al in an attempt to fill the voids of Wilmet, et al '383. Applicants again urge that one skilled in the art would not have combined Tung, et al with Wilmet, et al '383, which directly teach away from each other. The Examiner disagrees with Applicant's assertion that Wilmet, et al '383 requires the *addition* of HCl, while Tung, et al *removes* HCl. The Examiner asserts that Wilmet, et al merely *prefers* the addition of HCl, pointing out the abstract. Applicants disagree. Upon reading Wilmet, et al's abstract, it is clear that it is not the *presence* of HCl that is preferred, but it is the *continuous feeding* of HCl that is preferred. Instead, the word preferably in the

10

abstract relates to the *manner of addition* of the HCl. It is again asserted that the presence of HCl itself is *required* by Wilmet, et al's process, while it is *removed* by the processes of both Tung, et al and the present invention.

Furthermore, Tung, et al teaches a HF: HCC mole ratio of 4-10, that is 4:1 to 10:1, rather than the presently required ratio of 15:1 in the present claims. The Examiner takes the position that this limitation of Tung, et al is not critical. However, there is *no* teaching anywhere in Tung, et al that offers a motivation for one skilled in the art to look outside this mole ratio of 4-10, much less to the much higher ratio of 15:1 or more. It is again submitted that the Examiner is impermissibly reconstructing the art in light of applicant's disclosure. The Examiner provides no basis to support his consideration of these mole ratios as being insignificant features in both the present claims and Tung, et al's invention. For all the above reasons, it is respectfully requested that this rejection be overruled.

In short: there would be no selection criteria for combining Wilmet, et al '383 with Tung, et al. Wilmet, et al, requires the addition of HCl, while Tung, et al removes HCl. Tung, et al adds a chlorine feed while Wilmet, et al '383 does not. It is submitted that the processes of Wilmet, et al '383 and Tung, et al. are simply incompatible with each other such that they are not combinable due to their conflicting process requirements. It is therefore respectfully requested that the above rejection be overruled. For the above reasons, it is requested that the 35 U.S.C. 103 rejection be overruled.

The Examiner appears to be going to great lengths to locate and try to interrelate references involving one or two features of the present claims, but no matter how one applies or combines these references they do not teach using the specific sequence of steps in the claimed invention to attained the demonstrated benefits. The invention cannot be deemed unpatentable merely because, in a hindsight attempt to reconstruct the invention, one can find elements of it in the art; it must be shown that the invention <u>as a</u>

11

whole was obvious at the time the invention was made without knowledge of the claimed invention. 35 U.S.C. 103. When selective combination of prior art references is needed to make an invention seem obvious, there must be something in the art to suggest that particular combination other than hindsight gleaned from the invention itself, something to suggest the desirability of the combination. Uniroyal, Inc. v. Rudkin-Wiley Corp., 5 U.S.P.Q.2d 1434, 1438 (CAFC 1988). Such a suggestion is absent in the cited references.

The Examiner's approach seems to be to cite a string of references, figuratively throw all the ingredients of the reference teachings in one pot, and then pull out whichever ingredients are needed to reconstruct the claimed invention. How would one know which ingredients to combine absent the guidance provided in the present application? Where Applicants' teachings are needed to find the invention, the invention is not obvious. Obviousness is determined at the time the invention is made, not after reading Applicants' teaching. Citing references that merely indicate that isolated elements recited in the claims are known is not a sufficient basis for a conclusion of obviousness; there must be something that suggests the desirability of combining the references in a manner calculated to arrive at the claimed invention. Ex parte Hiyamizu, 10 U.S.P.Q.2d 1393, 1394 (PTO Bd. Pat. Ap. and Int., 1988).

None of the cited references, taken alone or in combination, teaches or suggests the invention claimed by Applicants. For all the above reasons, claims 1-13, 15-25, and 27-32 are urged to be patentable over the cited references, and all the above rejections under 35

12

U.S.C.103 should be overruled.

Respectfully submitted,

Richard S. Roberts
Attorney for Applicants
Registration No. 27,941
P.O. Box 484
Princeton, New Jersey 08542
Tel: 609-921-3500
FAX: 609-921-9535
Date: August 11, 2006

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, postage pre-paid in an envelope addressed to Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, on August 11, 2006.

_____
Richard S. Roberts

13

VIII. CLAIMS APPENDIX

1. A continuous, integrated manufacturing process for the preparation of a hydrofluorocarbon which comprises

(a) reacting at least one hydrochlorocarbon with hydrogen fluoride in the presence of a fluorination catalyst, wherein the hydrogen fluoride to hydrochlorocarbon mole ratio is at least about 15:1;

(b) optionally recycling a portion of any unreacted HF back to step (a);

(c) continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;

(d) removing any HCl produced by step (a); and

(e) recovering at least one hydrofluorocarbon.

2. The process of claim 1 wherein the recycling of step (b) is conducted.

3. The process of claim 1 wherein step (d) is conducted by distillation.

4. The process of claim 1 wherein step (a) is conducted in a liquid phase.

5. The process of claim 1 wherein the hydrochlorocarbon comprises methylene chloride; 1,1,1-trichloroethane; 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-hexachloropropane; 1,1,1,3,3-pentachlorobutane; 1,1,1,3,3-pentachloropropane; perchloroethylene or combinations thereof.

6. The process of claim 1 wherein the hydrochlorocarbon comprises 1,1,1,3,3-pentachloropropane and wherein the hydrofluorocarbon comprises 1,1,1,3,3-pentafluoropropane.

7. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of transition metal halides and oxides, Group IVb metal halides, Group Vb metal halides and combinations thereof.

8. The process of claim 1 wherein the fluorination catalyst is selected from the group consisting of fluorinated chrome halides, fluorinated chrome oxides, fluorinated species of SbCl$_5$, SbCl$_3$, TaCl$_5$, SnCl$_4$, NbCl$_5$, TiCl$_4$, MoCl$_5$ and combinations thereof.

9. The process of claim 1 wherein the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 50:1.

10. The process of claim 1 wherein the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 40:1.

11. The process of claim 1 wherein the hydrogen fluoride to hydrochlorocarbon mole ratio ranges from about 15:1 to about 30:1.

12. The process of claim 1 wherein step (a) is conducted at a temperature of from about 60 °C to about 180 °C.

13. The process of claim 1 wherein step (a) is conducted at a pressure of from about 20 to about 400 psig.

14. (Canceled)

15. The process of claim 1 which comprises recovering any hydrogen fluoride present after step (b).

16. The process of claim 1 which comprises recovering any hydrogen fluoride present after step (b) and then recycling the recovered hydrogen fluoride to step (a).

17. The process of claim 1 further comprising the subsequent step (e) of removing any unsaturated compounds present after step (e) by photochlorination.

15

18. The process of claim 1 wherein step (e) comprises recovering hydrofluorocarbon from the result of step (d) by distillation.

19. The process of claim 1 further comprising an additional step after step (d) and before step (e), comprising distilling the product resulting from step (d) to produce an overhead of the distillation column comprising a hydrofluorocarbon, hydrogen fluoride, unsaturated compounds and other impurities.

20. The process of claim 19 wherein the additional distilling step after step (d) and before step (e) is conducted at a pressure of about 200 psig or less.

21. The process of claim 1 wherein step (e) is conducted by liquid-vapor extraction.

22. The process of claim 1 wherein step (e) is conducted by extracting the HF/hydrofluorocarbon stream with sulfuric acid to the product resulting after step (d) and then separating therefrom a mixture of sulfuric acid and HF from a reaction mass balance comprising hydrofluorocarbon, unsaturated compounds and other impurities.

23. The process of claim 22 comprising the step of removing residual acids from said reaction mass balance after step (e).

24. The process of claim 23 wherein the step of removing residual acids from said reaction mass balance after step (e) is conducted with a caustic scrubber or a water scrubber.

25. The process of claim 22 further comprising separating sulfuric acid and HF from the mixture of sulfuric acid and HF.

16

26. (Canceled)

27. A continuous, integrated manufacturing process for the preparation of a
hydrofluorocarbon which comprises

(a) reacting at least one hydrochlorocarbon with hydrogen fluoride, in the presence of a
fluorination catalyst, and wherein the hydrogen fluoride to hydrochlorocarbon mole ratio
is at least about 15:1;

(b) optionally recycling a portion of any unreacted HF back to step (a);

(c) continuously adding sufficient chlorine to keep the activity of the fluorination catalyst;

(d) removing any HCl produced by step (a);

(e) optionally recovering any additional unreacted HF present after step (d) by liquid-
vapor or liquid-liquid extraction;

(f) optionally removing unsaturated compounds present after step (e) by
photochlorination; and

(g) recovering at least one hydrofluorocarbon from the result of step (f) by distillation.

28. The process of claim 27 wherein the recycling of step (b) is conducted.

29. The process of claim 27 wherein step (d) is conducted by distillation.

30. The process of claim 27 wherein step (a) is conducted in a liquid phase.

31. The process of claim 27 wherein the hydrochlorocarbon comprises methylene
chloride; 1,1,1-trichloroethane; 1,1,1,3,3-pentachloropropane; 1,1,1,3,3,3-
hexachloropropane; 1,1,1,3,3-pentachlorobutane and combinations thereof.

32. The process of claim 27 wherein the hydrochlorocarbon comprises 1,1,1,3,3-
pentachloropropane and wherein the hydrofluorocarbon comprises 1,1,1,3,3-
pentafluoropropane.

17

# EXHIBIT 6

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 7

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 8

PTO/SB/21 (09-04)
Approved for use through 07/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **TRANSMITTAL FORM** | Application Number | 10/444,810 |
| --- | --- | --- |
| | Filing Date | May 23, 2003 |
| | First Named Inventor | Hsueh Tung |
| | Art Unit | 1621 |
| | Examiner Name | SIKARL A WITHERSPOON |
| *(to be used for all correspondence after initial filing)* | Attorney Docket Number | H0005108 |
| Total Number of Pages in This Submission      8 | | |

## ENCLOSURES     *(Check all that apply)*

| | | |
| --- | --- | --- |
| ☐ Fee Transmittal Form | ☐ Drawing(s) | ☐ After Allowance Communication to TC |
| ☐ Fee Attached | ☐ Licensing-related Papers | ☐ Appeal Communication to Board of Appeals and Interferences |
| ☐ Amendment/Reply | ☐ Petition | ☐ Appeal Communication to TC (Appeal Notice, Brief, Reply Brief) |
| ☐ After Final | ☐ Petition to Convert to a Provisional Application | ☐ Proprietary Information |
| ☐ Affidavits/declaration(s) | ☑ (Power of Attorney) Revocation Change of Correspondence Address | ☐ Status Letter |
| ☐ Extension of Time Request | ☐ Terminal Disclaimer | ☑ Other Enclosure(s) (please identify below): |
| ☐ Express Abandonment Request | ☐ Request for Refund | Transmittal for Statutory Disclaimer under 37C.F.R. 1.321(b) |
| ☐ Information Disclosure Statement | ☐ CD, Number of CD(s) _____ | Disclaimer of Entire Term of Patent under 35 U.S.C. § 253 and 37 C.F.R. 1.321(b) |
| | ☐ Landscape Table on CD | |
| ☐ Certified Copy of Priority Document(s) | Remarks | |
| ☐ Reply to Missing Parts/ Incomplete Application | | |
| ☐ Reply to Missing Parts under 37 CFR 1.52 or 1.53 | | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm Name | Honeywell International Inc. | | |
| --- | --- | --- | --- |
| Signature | *[signature]* | | |
| Printed name | Scott D. Jacobson | | |
| Date | December 13, 2007 | Reg. No. | 42,689 |

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below:

| Signature | *[signature]* Julianne Holland | | |
| --- | --- | --- | --- |
| Typed or printed name | Julianne Holland | Date | December 13, 2007 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and1.14. This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

HON0033984

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re:        Tung et al.                    U.S. Patent No.:    7,214,839
Appl. No.:  10/444,610                       Filed:              May 23, 2003
                                             Issue Date:         May 8, 2007

For:        METHOD OF MAKING
            HYDROFLUOROCARBONS


Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### POWER OF ATTORNEY BY ASSIGNEE

Honeywell International Inc., the assignee of record of the above-identified patent,

hereby appoints the practitioner named below to transact all business in the Patent and

Trademark Office connected with the above-identified patent:

> Scott D. Jacobson
> Registration No. 42,689
> Honeywell International Inc.
> 101 Columbia Road, Bichols Building
> Morristown, NJ  07962
> Tel. (973) 455-2013

with full power of substitution and revocation to transact all business in the Patent and

Trademark Office in connection therewith.

Honeywell International Inc., the assignee of record, hereby certifies that it is the

assignee of the entire right, title, and interest in the patent identified above by virtue of an

assignment from the inventor(s) of the patent application identified above. The assignment was

recorded in the Patent and Trademark Office at Reel 014112, Frame 0105.

HON0033985

In re: Tung et al.
Appl. No.: 10/444,610
Filed: May 23, 2003
U.S. Patent: 7,214,839
Issue Date: May 8, 2007
Page 2

      The undersigned (whose title is supplied below) is empowered to sign this certificate on behalf of the assignee.

Assignee of Record:

**HONEYWELL INTERNATIONAL INC.**

By: _Peter M. Kennedy_ (signature)

_Peter M. Kennedy_
(Print or type name of person signing)

Title: _Sr VP & Gen'l Counsel_

Date: _12/12/07_

---

**CERTIFICATION OF FACSIMILE TRANSMISSION**

I hereby certify that this paper is being facsimile transmitted to the U.S. Patent and Trademark Office to Fax No. (571) 273-8300 on the date shown below.

_Julianne Holland_ (signature)

JULIANNE HOLLAND

_December 13, 2007_
Date

HON0033986

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re:     Tung et al.
Appl. No.: 10/444,610

U.S. Patent No.:     7,214,839
Filed:               May 23, 2003
Issue Date:          May 8, 2007

For:      METHOD OF MAKING
          HYDROFLUOROCARBONS

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## TRANSMITTAL FOR STATUTORY DISCLAIMER
### UNDER 37 C.F.R. 1.321(b)

Submitted herewith is a disclaimer of the entire term of the above-identified
patent by the assignee pursuant to 37 C.F.R. 1.321(b).

The U.S. Patent and Trademark Office is hereby authorized to charge the fee of
$130.00 under 37 C.F.R. 1.20(d), and any other fees necessary to allow consideration and
entry of the statutory disclaimer, to the assignee's deposit account number 01-1125.

Respectfully submitted,

*Scott D. Jacobson*
Registration No. 42,689
Honeywell International Inc.
101 Columbia Road, Solvay Building
Morristown, NJ  07962

---

**CERTIFICATION OF FACSIMILE TRANSMISSION**
I hereby certify that this paper is being facsimile transmitted to the U.S. Patent and Trademark Office to
Fax No. (571) 273-8300 on the date shown below.

JULIANNE  HOLLAND

December 13, 2007
Date

---

HON0033987

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re:         Tung et al.
Appl. No.:     10/444,610                    Patent No.: 7,214,839
Filed:         May 23, 2003                  Issue Date: May 8, 2007
For:           METHOD OF MAKING HYDROFLUOROCARBONS

Certificate of Correction Branch
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### DISCLAIMER OF ENTIRE TERM OF PATENT
### UNDER 35 U.S.C. § 253 AND 37 C.F.R. § 1.321(b)

Sir:

The assignee of record of U.S. Patent No. 7,214,839 ("the '839 patent"), Honeywell
International Inc., hereby disclaims the entire term of the '839 patent to the public.

Honeywell International Inc. was assigned the '839 patent from the inventors in an
assignment that was recorded in the United States Patent and Trademark Office on May 23,
2003, at Reel 014112, Frame 0105.

This disclaimer is being made because it has come to the assignee's attention that certain
incorrect statements were made regarding assignee's U.S. Patent Nos. 5,574,192 ("the '192
patent", also referred to below as "VanDerPuy") and 5,763,706 ("the '706 patent", also referred
to below as "Tung, et al") during the prosecution of the application leading to the '839 patent.
These statements were made in good faith with no deceptive intent. During proceedings in a case
pending in the U.S. District Court in Delaware, the assignee became aware of the incorrect nature
of these statements. Accordingly, the assignee wishes to notify the USPTO of these incorrect
statements, retract them to correct the public record, and expressly disclaim the entire term of the
patent that was issued as a result of them.

A.    Representative statements regarding the '192 patent made during prosecution of the '839
      patent

By way of example, in the April 3, 2006 Response to the Second and Final Office Action
it was stated:

> To begin, VanDerPuy fails to teach the removal of HCl in a continuous process.
> The only mention of any HCl removal in VanDerPuy's disclosure is in Example 5,
> where HCl is *periodically* vented. During such a periodic venting of HCl, the
> process would be operating in a batch mode. Further, as stated in VanDerPuy in

HON0033988

In re: Tung et al.
Appl. No.: 10/444,610
Filed: May 23, 2003
Page 2

> col. 3, lines 31-35, chlorine is only continuously added while in continuous mode, but is *periodically added* when the process is operating in a batch mode. Thus, the only embodiment of VanDerPuy where HCl is removed is during a *batch mode*, where chlorine is then also added periodically, *not continuously*. VanDerPuy's only embodiment including a continuous addition of chlorine would not include the removal of HCl, thereby teaching away from Wilmet '817 and the present claims. (Emphasis in original).

These same arguments were repeated in assignee's Appeal Brief:

> First, VanDerPuy, et al fails to teach the present step (d), which requires removal of *any* HCl produced by a reaction of the present step (a). The only mention of any HCl removal in VanDerPuy, et al's disclosure is in Examples 3 and 5 where an HCl by-product is *periodically* vented, during the venting of pressure in excess of 2655 Kpa. It should be noted that in Example 3 the hydrogen fluoride to hydrochlorocarbon mole ratio would be 12.5:1, which is well below the presently required ratio at least about 15:1. In addition, during such a periodic venting of HCl, the process would be operating in a batch mode. Importantly, in these examples, only a periodic venting to relieve pressure is mentioned, rather than a required removal of any produced HCl.

>            \*            \*            \*

> VanDerPuy, et al show continuously adding chlorine, but does not show *removing any HCl* produced by step (a). (Emphasis in original).

These statements, and others to the same effect, are incorrect. Persons skilled in the art understand that the '192 patent discloses and enables a process that includes the continuous removal of HCl as a reaction product. The statements made to the contrary are inaccurate.

B.  Representative statements regarding the '706 patent made during prosecution of the '839 patent

In the November 17, 2005 Amendment, the response stated:

> Although Tung, et al show a chlorine feed, Tung, et al is not properly combinable with Wilmet, et al because Tung, et al teach a lower HF:HCC mole ratio of 4-10 rather than 15 more as presently claimed.

Later, in the April 3, 2006 response, it was stated:

> Furthermore, as previously stated, Tung teaches a HF:HCC mole ratio of 4-10, rather than 15:1 or more, as presently claimed. The Examiner asserts that this limitation of Tung is not critical. However, there is no teaching anywhere in Tung

HON0033989

In re: Tung et al.
Appl. No.: 10/444,610
Filed: May 23, 2003
Page 3

> that offers a motivation for one skilled in the art to look outside this mole ratio of
> 4-10, to a much higher ratio of 15:1 or more.

The response continued in the later-filed Appeal Brief:

> Furthermore, Tung, et al teaches a HF:HCC mole ratio of 4-10, that is 4:1 to 10:1,
> rather than the presently required ratio of 15:1 in the present claims. The
> Examiner takes the position that this limitation of Tung, et al is not critical.
> However, there is *no* teaching anywhere in Tung, et al that offers a motivation for
> one skilled in the art to look outside this mole ratio of 4-10, much less to the much
> higher ratio of 15:1 or more. (Emphasis in original).

Assignee notes that these arguments regarding the '706 patent are incorrect and were
mistaken. The following Examiner's response to the statement in the November 17, 2005
Amendment was correct (Response by Examiner, dated 1-12-2006):

> Regarding Tung et al, the examiner finds the molar ratio of HF to
> hydrochlorocarbon immaterial with regard to the compatibility of the two
> references. Tung et al state that the *preferred* ratio is from 4 to about 10,
> however, a person of ordinary skill would recognize that that limitation is not
> critical given the disclosure of Tung et al. (Emphasis in original).

The assignee also notes that the disclosure and many of the claims of the '706 are not
limited to the preferred mole ratio referenced in the '706 patent specification.

C.    Representative statements comparing the '192 patent with the '817 patent made during
      prosecution of the '839 patent

Misstatements regarding comparisons between the '192 patent and the '817 patent were
also made, e.g.:

> VanDerPuy, et al show continuously adding chlorine, but does not show removing any
> HCl produced by step (a). It is therefore submitted that one skilled in the art would not
> have combined VanDerPuy, et al with Wilmet, et al '817 in an effort to devise a
> continuous process with a continuous addition of chlorine and a removal of any HCl
> formed. One skilled in the art would not have any selection criteria at hand to combine
> the features of Wilmet et al and VanDerPuy, et al to hypothetically form the instant
> invention. The processes of Wilmet, et al and VanDerPuy, et al are simply incompatible
> with each other such that they are not combinable due to conflicting process
> requirements. (Substitute Appeal Brief 09-22-06).

These statements regarding the '192 and '817 patents are inaccurate in that persons
skilled in the art understand that the '192 patent discloses the continuous removal of HCl as a
reaction product and as a continuous process.

HON0033990

In re: Tung et al.
Appl. No.: 10/444,610
Filed: May 23, 2003
Page 4

Accordingly, the assignee hereby disclaims to the public the entire term of U.S. Patent

No. 7,214,839 pursuant to 35 U.S.C. § 253 and 37 C.F.R. § 1.321(b).

Respectfully submitted,

Scott D. Jacobson
Registration No. 42,689
Honeywell International Inc.
101 Columbia Road, Solvay Building
Morristown, NJ 07962
Tel. (973) 455-2013

---

CERTIFICATION OF FACSIMILE TRANSMISSION

I hereby certify that this paper is being facsimile transmitted to the U.S. Patent and Trademark Office to
Fax No. (571) 273-8300 on the date shown below.

_Julianne Halland_                                      _December 13, 2007_
JULIANNE HOLLAND                                        Date

---

HON0033991

Page 1 of 1

**Holland, Julianne**

From: GenifaxMessageServer

Sent: Thursday, December 13, 2007 10:55 AM

To: Holland, Julianne

Subject: Message Succeeded: 15712738300 () on 12/13/2007 at 10:55:12 AM



*Fax Confirmation*

Current Date: 12/13/2007
Current Time: 10:55:13 AM
Fax JobID: 228668
Total Pages: 8

The fax you sent to 15712738300 on 12/13/2007 at 10:52:57 AM:
*Delivery - Successful*
If you have any questions, please contact the Fax Admin on x5060.



12/13/2007

HON0033992

PTO/SB/21 (09-04)
Approved for use through 04/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL FORM | Application Number | 10/844,810 |
|---|---|---|
| | Filing Date | May 26, 2006 |
| | First Named Inventor | Kwok Tsoi |
| (to be used for all correspondence after initial filing) | Art Unit | 1621 |
| | Examiner Name | SENTA A WITHERSPOON |
| Total Number of Pages in This Submission | 8 | Attorney Docket Number | 01000.000000 |

## ENCLOSURES (Check all that apply)

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Fee Transmittal Form | ☐ | Drawing(s) | ☐ | After Allowance Communication to TC |
| | | | | | |
| ☐ | Fee Attached | ☐ | Licensing-Related Papers | ☐ | Appeal Communication to Board of Appeals and Interferences |
| | | | | | |
| ☐ | Amendment/Reply | ☐ | Petition | ☐ | Appeal Communication to TC (Appeal Notice, Brief, Reply Brief) |
| ☐ | After Final | ☐ | Petition to Convert to a Provisional Application | ☐ | Proprietary Information |
| ☐ | Affidavits/declaration(s) | ☐ | Power of Attorney, Revocation Change of Correspondence Address | ☐ | Status Letter |
| ☐ | Extension of Time Request | ☐ | Terminal Disclaimer | ☑ | Other Enclosure(s) (please identify below): |
| ☐ | Express Abandonment Request | ☐ | Request for Refund | | Transmittal for Statutory Disclaimer under 37CFR, 1.321(a) |
| ☐ | Information Disclosure Statement | ☐ | CD, Number of CD(s) ___ | | Disclaimer of Entire Term of Patent under 35 U.S.C. § 253 and 37 C.F.R. 1.321(b) |
| ☐ | Certified Copy of Priority Document(s) | ☐ | Landscape Table on CD | | |
| ☐ | Reply to Missing Parts/ Incomplete Application | ☐ | Remarks | | |
| ☐ | Reply to Missing Parts under 37 CFR 1.52 or 1.53 | | | | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| | |
|---|---|
| Firm Name | Transport International Inc. |
| Signature | [signature] Kwok Tsoi |
| Printed name | Kwok R. Jackson |
| Date | December 13, 2007 | Reg. No. | 42,986 |

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below.

| | | | |
|---|---|---|---|
| Signature | [signature] Julianne Gilliland | Date | December 13, 2007 |
| Typed or printed name | Julianne Gilliland | | |

This collection of information is required by 37 CFR 1.5. The information is used by the public to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

HON0033993

# EXHIBIT 9

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY