IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOLVAY, S.A.,

Plaintiff and Counterclaim Defendant,

v.

HONEYWELL SPECIALTY MATERIALS, LLC and HONEYWELL INTERNATIONAL INC.,

Defendants and Counterclaim Plaintiffs.

C.A. No. 06-557-SLR

PUBLIC VERSION

**HONEYWELL INTERNATIONAL, INC.'S OPPOSITION TO SOLVAY'S OPENING BRIEF IN SUPPORT OF SUMMARY JUDGMENT <u>OF NO INEQUITABLE CONDUCT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Robert G. Krupka, P.C.
Laura M. Burson
KIRKLAND & ELLIS LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA 90017
(213) 680-8400

Confidential Version Filed: March 17, 2008
Public Version Filed: March 24, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....... ii

I. NATURE AND STAGE OF THE PROCEEDINGS ....... 1

II. SUMMARY OF ARGUMENT ....... 1

III. COUNTERSTATEMENT OF FACTS ....... 3

A. Solvay's Selective Disclosure Of The Advances In Fluorine Chemistry Treatise. ....... 3

B. Solvay's Misrepresentation About The '192 Patent. ....... 6

IV. ARGUMENT ....... 8

A. Legal Standards. ....... 8

1. Summary Judgment Is Improper Where Facts Are In Dispute Or Do Not Support The Movant's Position. ....... 8

2. Legal Standard For Inequitable Conduct. ....... 8

3. Inequitable Conduct Is Not Normally Amenable To Resolution On Summary Judgment. ....... 10

B. The Evidence Supports Honeywell's Claim Of Inequitable Conduct. ....... 10

1. Solvay Committed Inequitable Conduct By Purposefully Mischaracterizing The '192 Patent. ....... 11

2. Solvay Committed Inequitable Conduct By Failing To Disclose Material Portions Of The Advances In Fluorine Chemistry Treatise. ....... 22

V. CONCLUSION ....... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
808 F.2d 1471 (Fed. Cir. 1986)........................................................................ *passim*

*Ampex Corp. v. Eastman Kodak Co.*,
460 F. Supp. 2d 569 (D. Del. 2006)........................................................................ 10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................ 12

*Baker Oil Tools, Inc. v. Geo Vann, Inc.*,
828 F.2d 1558 (Fed. Cir. 1987)........................................................................ 10

*Baxter Int'l, Inc. v. McGraw, Inc.*,
149 F.3d 1321 (Fed. Cir. 1998)........................................................................ 9

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*,
267 F.3d 1370 (Fed. Cir. 2001)........................................................................ 24

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*,
394 F.3d 1348 (Fed. Cir. 2005)........................................................................ 9, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1984)........................................................................................ 8

*Digital Control (DCI) v. Charles Machine Works*,
437 F.3d 1309 (Fed. Cir. 2006)........................................................................ 9, 12, 19

*Eagles Tool Warehouse, Inc. v. Fisher Tooling Col.*,
439 F.3d 1335 (Fed. Cir. 2006)........................................................................ 9

*eSpeed, Inc. v. BrokerTec, USA, LLC*,
480 F.3d 1129 (Fed. Cir. 2007)........................................................................ 18

*Finish Eng'g v. Zerpa Indus., Inc.*,
806 F.2d 1041 (Fed. Cir. 1986)........................................................................ 8

*Hodash v. Block Drug Co.*,
786 F.2d 1136 (Fed. Cir. 1986)........................................................................ 8

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
778 F.2d 1571 (Fed. Cir. 1985)........................................................................ 10

*Kansas Jack, Inc. v. Kuhn*,
719 F.2d 1144 (Fed. Cir. 1983)........................................................................ 9

*Mollins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995)........................................................................... 23

*Poller v. Columbia Broadcasting Sys., Inc.*,
368 U.S. 464 (1962)........................................................................................... 10

*Semiconductor Energy Lab v. Samsung Elec.*
204 F.3d 1368 (Fed. Cir. 2000).................................................................... 18, 25

**Rules**

35 C.F.R. 1.56................................................................................................................. 24

37 C.F.R. 1.56................................................................................................................... 8

Fed. R. Civ. P. 56(c) ......................................................................................................... 7

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Solvay, S.A. ("Solvay") filed its complaint on September 7, 2006, accusing Honeywell International, Inc. ("Honeywell") of infringing U.S. Patent No. 6,730,817 ("the '817 patent"). (D.I. 1). On October 23, 2006, Honeywell answered and counterclaimed that the '817 patent was not infringed, invalid and unenforceable due to inequitable conduct. (D.I. 9). Solvay filed its Reply to Honeywell's Counterclaims on November 13, 2006. (D.I. 13). Both fact and expert discovery are now closed in this case. Trial is currently scheduled for July 28, 2008. (D.I. 20).

On February 18, 2008, Solvay filed its Opening Brief In Support Of Its Motion For Summary Judgment Of No Inequitable Conduct. (D.I. 116). This is Honeywell's Opposition Brief.

## II. SUMMARY OF ARGUMENT

The evidence in the record reveals that on at least two separate instances, Solvay committed inequitable conduct during prosecution of the '817 patent. In the first instance, Solvay mischaracterized and omitted material disclosures contained in the prior art U.S. Patent No. 5,574,192 ("the '192 patent"). Based on the facts and circumstances surrounding the prosecution and on internal Solvay documents indicating that the process claimed in the '817 patent was "covered" by the foreign equivalent of the '192 patent, there is overwhelming evidence in the record for the trier of fact to infer that Solvay committed the aforementioned mischaracterizations and omissions with the intent to deceive.

Contrary to Solvay's belief, *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1477 (Fed. Cir. 1986) does not absolve Solvay's inequitable conduct based on its mischaracterizations and omissions of material portions of the '192 patent. *Akzo* does not stand for the proposition

that an applicant may intentionally mischaracterize prior art references to a patent examiner under any circumstances. Solvay's conduct was particularly egregious given that it was Solvay, not the examiner, that initially cited and misrepresented the reference in the record.[1] (Ex. 26, Amendment, Aug. 30, 2000 at 11). Moreover, the examiner apparently relied on Solvay's misrepresentations and omissions relating to the '192 patent to allow the '817 patent to issue. Because Solvay's interpretation of *Akzo* is wrong and because there are genuine issues of material fact as to whether Solvay mischaracterized the '192 patent, this Court should deny Solvay's motion for summary judgment of no inequitable conduct based on Solvay's mischaracterizations and omissions relating to the '192 patent.

In the second instance, Solvay failed to disclose material portions of *Advances In Fluorine Chemistry* ("the *Advances* reference"). Specifically, Solvay failed to disclose the Hamilton chapter and page 184 of the Barbour chapter, both of which are contained within the *Advances* reference. These omitted portions of the *Advances* reference disclose methods of removing compounds in a fluorination reaction in a continuous process, nearly identical to the process Solvay alleges is covered by the '817 patent. Based on the facts and circumstances surrounding the prosecution of the '817 patent, there is strong evidence in the record to allow the trier of fact to infer that Solvay omitted material portions of the *Advances* reference with the intent to deceive the United States Patent and Trademark Office ("USPTO").

In addition, the Court should disregard Solvay's unfounded assertion that Honeywell must identify specific individuals at Solvay who have committed the inequitable conduct. There

---

1 All Exhibits are attached to the Appendix to Honeywell International Inc.'s Oppositions to Solvay's February 18, 2008 Motions for Summary Judgment, filed and submitted concurrently herewith.

is no such requirement. Even if there were, Honeywell attempted to obtain that information during discovery. Portions of a letter were provided to the USPTO during prosecution of the '817 patent application that specifically discuss the *Advances* reference. However, Solvay refused to produce this Solvay document — which would identify the person at Solvay who knew about the reference — under claim of privilege. Solvay should not be allowed to withhold evidence under claim of privilege and then fault Honeywell for not having that evidence. Accordingly, for the reasons stated above, this Court should deny Solvay's motion for summary judgment of no inequitable conduct based on Solvay's omission of material portions of the *Advances* reference.

## III. COUNTERSTATEMENT OF FACTS

### A. Solvay's Selective Disclosure Of The Advances In Fluorine Chemistry Treatise.

U.S. Patent Application Serial No. 09/051,746 ("the '746 application"), which issued as the '817 patent, is directed to a method for preparing 1,1,1,3,3-pentafluoropropane ("HFC-245fa"). (Ex. 31, '817 Patent col. 1 lns. 4 - 8). In short, Solvay alleges that the claims of the '817 patent cover any continuous process for manufacturing HFC-245fa.[2] (Ex. 45, Solvay's Resp. to Honeywell's RFA Nos. 30 and 32, Oct. 5, 2007; Ex. 46, Dec. 14, 2007 Stanley Sandler Dep. 90:11 - 18). The compound HFC-245fa is a possible substitute for wholly or partially halogenated chlorofluoro hydrocarbons ("CFCs" and "HCFCs"), which are suspected of causing damage to the ozone layer. (Ex. 31, '817 Patent col. 1 lns. 9 - 12). Prosecution of the '746 application lasted nearly six years, during which time the patent examiner issued several

---

2 REDACTED

obviousness rejections over U.S. Patent Nos. 3,862,978 to Decker *et al*. and 5,395,997 to Van Der Puy *et al*. (Ex. 20, Response to Official Action of Feb. 9, 1999 at 2 - 3; Ex. 21, Final Rejection, Aug. 24, 1999 at 2 - 3; Ex. 24, Office Action, May 31, 2000 at 2 - 4; Ex. 25, Final Rejection, Oct. 13, 2000 at 2 - 3).

According to the examiner of the '746 application, the '997 Van Der Puy patent and the claims of the '746 application disclosed the same process, with analogous starting materials. The examiner noted that based on the similarity in starting materials, a person of skill in the art would have been motivated to use the starting materials of the claims of the '746 application in the process disclosed in Van Der Puy because there would have been an expectation of obtaining an analogous product. (Ex. 20, Response to Official Action of Feb. 9, 1999 at 2 - 3). According to the examiner, it would have been obvious to use the catalyst disclosed in Decker in the Van Der Puy process. (Ex. 20, Response to Official Action of Feb. 9, 1999 at 2 - 3). Based on these positions, the examiner issued a final rejection on Aug. 24, 1999. (Ex. 21, Final Rejection, Aug. 24, 1999).

In its response to a final rejection, Solvay submitted some pages from the Barbour chapter in the *Advances* reference, but omitted others. (Ex. 22, Notice Of Appeal And Response, Feb. 24, 2000 at 4). According to Solvay, the Barbour chapter refuted the examiner's analogy between Van Der Puy and the claims of the '746 application. (Ex. 22, Notice Of Appeal And Response, Feb. 24, 2000 at 4 - 5). The examiner, however, still refused to allow the claims. (Ex. 23, Advisory Action, March 3, 2000). Solvay then filed a Continued Prosecution Application ("CPA") with amended and new claims. (Ex. 71, Continued Prosecution Application, April 25, 2000). The examiner rejected the claims in the CPA as well. (Ex. 25, Final Rejection, Oct. 13, 2000).

After final rejection of the CPA, Solvay appealed the examiner's decision to the Board Of Patent Appeals And Interferences ("BPAI"). (Ex. 27, Notice of Appeal, Jan. 12, 2001). In its appeal brief, Solvay again referred to the **selected** pages from the Barbour chapter in *Advances In Fluorine Chemistry*. (Ex. 28, Appeal Brief, March 13, 2001 at 9). According to Solvay, the teachings in these pages of the *Advances* reference refuted the examiner's proposed analogy between the compounds disclosed in the Van Der Puy reference and the '746 application. *Id.*

REDACTED

Marina V. Schneller, Solvay's outside prosecution attorney, knew of *Advances In Fluorine Chemistry* since at least February 18, 2000, when Solvay's foreign representatives informed Ms. Schneller of that reference in a letter. (Ex. 35, Feb. 18, 2000 Letter from Solvay to Ms. Schneller, HON0021454). In the letter, Solvay describes *Advances In Fluorine Chemistry* and cites to the Barbour chapter contained therein. (Ex. 35, Feb. 18, 2000 Letter from Solvay to Ms. Schneller, HON0021454). Notably, the Barbour chapter refers to the Hamilton chapter in several instances and explains that Hamilton provides a "more detailed account" of the preparation of fluorocarbon products. (Ex. 36, A.K. Barbour *et al.*, The Preparation Of Organic Fluorine Compounds By Halogen Exchange, 188, *in* ADVANCES IN FLUORINE CHEMISTRY, Vol. 3 (1963)). Page 184 of the Barbour chapter, which Solvay failed to disclose, discusses the Hamilton chapter's relevance and specifically describes a continuous process which Solvay

alleges to be a novel aspect of the '817 patent claims. (Ex. 36, A.K. Barbour *et al.*, The Preparation Of Organic Fluorine Compounds By Halogen Exchange, 188, *in* ADVANCES IN FLUORINE CHEMISTRY, Vol. 3 (1963) at 184).

**B. Solvay's Misrepresentation About The '192 Patent.**

In an amendment to a final rejection dated August 30, 2000, Solvay raised and discussed the '192 patent during prosecution of the '746 application even though the examiner did not cite that reference in an office action. It is undisputed that the '192 patent, like the '817 patent, discloses a method of manufacturing 1,1,1,3,3-pentafluoropropane. (Ex. 44, Solvay's Resp. and Objections to Honeywell's RFA No. 7; Ex. 32, '192 Patent col. 1 lns. 8 - 10). According to Solvay, however, the '192 patent "does not provide motivation" to perform the following process steps:

(1) to select carrying out the reaction at a temperature and under a pressure at which 1,1,1,3,3-pentafluoropropane is gaseous, or

(2) to draw off in vapour phase 1,1,1,3,3-pentafluoropropane and hydrogen chloride as each of said 1,1,1,3,3-pentafluoropropane and hydrogen chloride is being formed.

(Ex. 26, Amendment, Aug. 30, 2000 at 11). As will be discussed in detail below, the named inventors on the '817 patent, as well as Honeywell's technical expert, agree that these are inaccurate statements regarding the '192 patent.

As noted above, unable to convince the examiner to allow the '746 application, Solvay filed an appeal with the BPAI. In its appeal brief, Solvay again cited the '192 patent and argued that, unlike the invention claimed in the '746 application, the '192 patent does not disclose the continuous venting of the reaction products. (Ex. 28, Appeal Brief, March 13, 2001 at 3 - 4). To support its characterization of the '192 patent, Solvay pointed solely to Example 3 of the '192 patent, which, according to Solvay, discloses a process whereby "pressure is maintained . . . by

periodically venting HCl-by product." (Ex. 28, Appeal Brief, March 13, 2001 at 4). Solvay intentionally failed to disclose, however, the following disclosure of the '192 patent that expressly describes a continuous process and continuous venting of reaction products HF, HCl, and organics:[3] "The chlorine, which is continuously added to the process of this invention when operating in a ***continuous mode*** . . . ." (Ex. 32, '192 Patent col. 3 lns. 31 - 33 (emphasis added)); "***HFC-245fa may be recovered*** from the mixture of unreacted starting materials, by-products, and catalyst ***by any means known in the art***, such as distillation and extraction[]" (Ex. 32, '192 Patent col. 3 lns. 55 - 57 (emphasis added)); and "Alternatively, unreacted HF and organics may be vented and condensed . . . . The organic layer can then be treated . . . . ***This isolation procedure is particularly useful for a continuous fluorination process***." (Ex. 32, '192 Patent col. 3 ln. 63 - col. 4 ln. 1 (emphasis added)).

On January 30, 2003, the Board reversed the examiner's final rejection in the CPA of the '746 application. (Ex. 29, U.S. Patent And Trademark Office, Before The Board Of Patent Appeals And Interferences, Decision On Appeal, Jan. 30, 2003). The Board's decision was based on the specific pages from the Barbour chapter of *Advances In Fluorine Chemistry* that Solvay submitted to the examiner, unaware of the other portions of the *Advances in Fluorine Chemistry* materials that undermined this decision. The Board agreed that those selected pages of the Barbour chapter submitted by Solvay refuted the examiner's proposed analogy between Van Der Puy and the '817 patent. In reaching its conclusion, however, the Board did not have,

---

3 REDACTED

and therefore could not consider, any of the other portions of the *Advances In Fluorine Chemistry* reference or the '192 patent.

# IV. ARGUMENT

## A. Legal Standards.

### 1. Summary Judgment Is Improper Where Facts Are In Dispute Or Do Not Support The Movant's Position.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The movant bears the burden of demonstrating the absence of all genuine issues of material fact, and the district court must view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Hodash v. Block Drug Co.*, 786 F.2d 1136, 1141 (Fed. Cir. 1986). "All reasonable inferences must be drawn in favor of the party opposing the motion and where 'there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant.'" *Finish Eng'g v. Zerpa Indus., Inc.*, 806 F.2d 1041, 1043 (Fed. Cir. 1986) (internal citations omitted). Where a summary judgment motion is based on an alleged failure of proof, such as the instant motion, the non-movant can defeat the motion by showing specific facts that demonstrate a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1984).

### 2. Legal Standard For Inequitable Conduct.

Patent applicants and their attorneys owe an uncompromising duty of candor and good faith to the USPTO when prosecuting patent applications. *See* 37 C.F.R. 1.56. This duty requires a patent applicant to disclose all material information during the examination process. *See id.* In addition, the Manual Of Patent Examining Procedures ("MPEP") requires that "[c]are should be taken to see that prior art or other information cited in a specification or in an

information disclosure statement is properly described and that the information is **not incorrectly or incompletely characterized**." (Ex. 37, MPEP § 2004, ¶ 7, Eighth Ed., Rev. 2, May 2004) (emphasis added)). If an applicant breaches his or her duty of candor to the USPTO, the subsequently issued patent may be found unenforceable due to inequitable conduct. *See, e.g.*, *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Col.*, 439 F.3d 1335, 1339-40 (Fed. Cir. 2006).

To prove inequitable conduct, the moving party must demonstrate, by clear and convincing evidence, "affirmative misrepresentations of material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Baxter Int'l, Inc. v. McGraw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). Information is material if a reasonable examiner would consider it important when determining patentability issues. *Digital Control (DCI) v. Charles Machine Works*, 437 F.3d 1309, 1315-16 (Fed. Cir. 2006). As to the requisite intent, it need not be proven through direct evidence. *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005). Rather, intent may be proven based on all of the facts and circumstances surrounding the applicant's conduct. *Id.* As the Federal Circuit has recognized, "the duty of candor owed the PTO being uncompromising, it would deal a deathblow to that duty if direct proof of wrongful intent were required." *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151 (Fed. Cir. 1983).

Once a party demonstrates the requisite levels of materiality and intent to deceive, the court balances the levels of materiality and intent to determine whether the applicant has committed inequitable conduct. *Digital Control*, 437 F.3d at 1313. Where materiality is high, a lower showing of intent is required. *Id.*

**3. Inequitable Conduct Is Not Normally Amenable To Resolution On Summary Judgment.**

The Federal Circuit and this Court have expressed the general view that inequitable conduct is not amenable to resolution on summary judgment. For example, the Federal Circuit has cautioned that "[i]f the facts of materiality or intent are reasonably disputed, the issue is not amenable to summary disposition." *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1566 (Fed. Cir. 1987). Because the intent inquiry "requires the factfinder to evaluate all the facts and circumstances in each case," it "is rarely enabled in summary proceedings." *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1577 (Fed. Cir. 1985); *see also Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962) ("summary procedures should be used sparingly . . . where motive and intent play leading roles . . . ."). And in *Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 569, 570 (D. Del. 2006), this Court stated that "charges of inequitable conduct are particularly ill-suited to resolution by summary judgment because they often involve questions of intent and materiality." *Id.*

**B. The Evidence Supports Honeywell's Claim Of Inequitable Conduct.**

The evidence in the record reveals that on at least two separate instances, Solvay committed inequitable conduct during prosecution of the '746 application to deceive the USPTO into issuing the '817 patent. In the first instance, Solvay mischaracterized the '192 patent to the examiner by arguing that the reference "does not provide motivation" to perform certain process steps of the '746 application. (Ex. 26, Amendment, Aug. 30, 2000 at 11). Solvay also withheld from the examiner express disclosure contained in the '192 patent that directly contradicts its description of that reference. Based on the facts and circumstances surrounding the prosecution of the '746 application, REDACTED

REDACTED

there is sufficient evidence in the record to allow the trier of fact to infer that Solvay committed the aforementioned mischaracterizations and omissions with intent to deceive the USPTO.

In the second instance, Solvay failed to disclose material portions of the *Advances In Fluorine Chemistry* reference. REDACTED

REDACTED

REDACTED

Based on the facts and circumstances surrounding the prosecution of the '746 application, there is strong evidence in the record to allow the trier of fact to infer that Solvay omitted material portions of the *Advances* reference with intent to deceive the USPTO.

**1. Solvay Committed Inequitable Conduct By Purposefully Mischaracterizing The '192 Patent.**

As the actions by Solvay and the testimony of Honeywell's expert confirm, the '192 patent was highly material to the prosecution of the '746 application. The '192 patent was so material that Solvay voluntarily raised and attempted to distinguish the '192 patent during prosecution of the '746 application even though the examiner never cited it in an office action. (Ex. 26, Amendment, Aug. 30, 2000 at 6, 11 - 12; Ex. 28, Appeal Brief, March 13, 2001 at 3 - 4).

REDACTED

REDACTED

A reference that may render unpatentable the claims of a pending application is the epitome of a material reference. *See Digital Control*, 437 F.3d at 1315-16 (noting that information is material if a reasonable examiner would consider it important when determining patentability issues). To the extent that Solvay disputes this contention, a genuine issue of material fact exists that precludes summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (explaining that summary judgment is inappropriate where there are genuine issues of material fact).

**a. Solvay Mischaracterized And Withheld Material Portions Of The '192 Patent During Prosecution Of The '817 Patent.**

REDACTED

Although the examiner never cited the '192 patent in an office action, Solvay discussed the patent in its response to the examiner's final rejection. In particular, Solvay argued that the claims of the '746 application were patentable over the '192 patent because:

- The '192 patent does not provide motivation to select and carry out the reaction at a temperature and under a pressure at which HFC-245fa is gaseous; and
- The '192 patent does not provide motivation to draw off HFC-245fa and HCl as each is being formed.

(Ex. 26, Amendment, Aug. 30, 2000 at 11). REDACTED

REDACTED

REDACTED

REDACTED

***

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

Solvay also argued to the examiner that the '192 patent "does not provide motivation to draw off HFC-245fa and HCl as each is being formed." (Ex. 26, Amendment, Aug. 30, 2000 at 11). This, too, was a mischaracterization of the '192 patent. REDACTED

REDACTED

.

REDACTED

REDACTED

REDACTED Thus, Solvay's statements to the examiner were false. But, at a minimum, this evidence creates a genuine issue of material fact as to whether Solvay mischaracterized the '192 patent during prosecution of the '746 application, which precludes summary judgment.

In addition to mischaracterizing the '192 patent, Solvay also withheld material portions of that patent during prosecution of the '746 application. For example, in its appeal brief to the BPAI, Solvay argued that the process disclosed in the '746 application is "quite distinct from Van Der Puy 5,574,192" because:

> Van Der Puy 5,574,192 discloses a process for manufacturing 1,1,1,3,3-pentafluropropane by fluorination of 1,1,1,3,3,-pentachloropropane in the presence of HF and antimony pentachloride; pressure is maintained in autoclave (at 300-400 psig) by periodically venting HCL-by product.

(Ex. 28, Appeal Brief, March 13, 2001 at 3 - 4). This selective disclosure of the '192 patent was deceptive and misleading.

The '192 patent expressly provides the following disclosure:

> "The chlorine, which is **continuously** added to the process of this invention when operating in a ***continuous mode*** . . . ."

(Ex. 32, '192 Patent col. 3 lns. 32 - 33 (emphasis added));

> "***HFC-245fa may be recovered*** from the mixture of unreacted starting materials, by-products, and catalyst ***by any means known in the art***, such as distillation and extraction"

((Ex. 32, '192 Patent col. 3 lns. 55 - 57 (emphasis added)); and

> "Alternatively, unreacted HF and organics may be vented and condensed . . . . The organic layer can then be treated . . . . ***This isolation procedure is particularly useful for a continuous fluorination process***."

((Ex. 32, '192 Patent col. 3 ln. 63 - col. 4 ln. 1 (emphasis added)).

REDACTED

REDACTED

Independent of Solvay's mischaracterization of the '192 patent, Solvay, nonetheless, had an obligation to disclose this portion of the '192 patent to the examiner of the '746 application:

REDACTED

REDACTED

REDACTED

REDACTED

In the end, Solvay's selective (and deceptive) disclosure of the '192 patent not only kept highly material information from the examiner but effectively led the examiner away from properly considering that reference. REDACTED Indeed, there is no evidence in the record that the examiner of the '746 patent independently reviewed the relevant portions of the '192 patent, including the express disclosure of a continuous process and that the specification contemplates processes known in the art, which would include continuous processes.[4] If anything, the record suggests that the examiner

[4] To the extent Solvay relies on the examiner's initials next to the '192 patent in an Information Disclosure Statement, Honeywell contends that that fact alone does not

(Continued…)

simply relied on Solvay's misrepresentations. REDACTED

In its opening brief, Solvay makes the incredible assertion that "as a matter of undisputed fact," it did not make any misrepresentations of the '192 patent. As set forth above, Solvay is wrong, but at least a genuine issue of material fact exists that Solvay misrepresented the '192 patent during prosecution of the '746 application. Moreover, in its opening brief, Solvay mischaracterizes the testimony of Honeywell's technical expert. REDACTED

REDACTED

REDACTED

REDACTED

Tellingly, Solvay does not cite any testimony in the record for support because none exists.

**b. Solvay's Reliance On Akzo Is Misplaced.**

In its opening brief, Solvay contends that even if it did purposefully mischaracterize the '192 patent, such mischaracterizations are permissible under the Federal Circuit decision in *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1477 (Fed. Cir. 1986). (Solvay's Opening Brief at 1, 9). Solvay's reliance on *Akzo*, however, is misplaced. Indeed, Solvay's interpretation

---

prove the examiner reviewed the relevant portions of the '192 patent, or even reviewed it at all. Nor are the examiner's initials indicative of the thoroughness with which the reference was reviewed.

of *Akzo* would conflict with the MPEP, which requires that "[c]are should be taken to see that prior art or other information cited in a specification or in an information disclosure statement is properly described and that the information is not incorrectly or incompletely characterized." (Ex. 37, MPEP § 2004, ¶ 7). In *Akzo*, the patent examiner cited the prior art references at issue during anticipation and obviousness rejections and the applicant was later accused of inequitable conduct for mischaracterizing those references. *Akzo*, 808 F.2d at 1481. The Federal Circuit disagreed, finding that an applicant's attempt to *distinguish* its inventions from prior art references that were the subject of back-and-forth negotiations with the examiner, and were the basis for multiple rejections, does not constitute a material omission. *Id.* at 1482.

Solvay's actions during the prosecution of the '746 application are fundamentally different than the accused conduct in *Akzo*. Here, Solvay did not attempt to distinguish its alleged invention from prior art that was before the examiner throughout prosecution, and which the examiner previously relied on to support an invalidity rejection. Instead, Solvay affirmatively misrepresented the scope of a new reference *it* put before the examiner mid-way through prosecution, by misstating the factual scope of the prior art's disclosure. By bringing the '192 patent reference to the patent examiner's attention, Solvay had an affirmative duty to describe the factual aspects of the patent accurately. (Ex. 37, MPEP § 2004, ¶ 7). The examiner is presumed to have relied on Solvay's characterization. Solvay also had a duty to bring all of the material disclosure contained in the '192 patent to the examiner's attention — not just the disclosure that it believed benefited its positions. By stating only that the '192 patent discloses the batch process of Example 3, Solvay materially misrepresented the scope of the '192 patent which discloses, in separate portions of the specification, "a continuous fluorination process." (Ex. 32, '192 Patent col. 3 ln. 67 - col. 4 ln. 1). Solvay's conduct amounts to an affirmative

misrepresentation of the scope of the '192 patent's disclosure, not an attempt to distinguish its alleged invention over prior art that the examiner relied on to support an invalidity rejection, as was the case in *Akzo*.

In *Semiconductor Energy Lab v. Samsung Elec.*, 04 F.3d 1368, 1377 (Fed. Cir. 2000), for instance, the applicant voluntarily disclosed a foreign prior art reference to the USPTO but offered a misleading summary of the reference that highlighted the less material portions of the reference. *Id.* The Federal Circuit affirmed a finding of inequitable conduct based on the applicant's selective disclosure of a prior art reference. According to the Federal Circuit:

> By . . . focusing on less material portions and a concise statement directed to these less material portions, [the applicant] left the examiner with the impression that the examiner did not need to conduct any further . . . investigation. Thus, [the applicant] deliberately deceived the examiner into thinking that the [prior art] reference was less relevant than it really was, and constructively withheld the reference from the PTO. [The applicant's] submission hardly satisfies the duty of candor required of every applicant before the PTO.
>
> ***
>
> The duty of candor . . . [requires] that the applicant refrain from submitting . . . concise explanations that it knows will misdirect the examiner's attention from the reference's relevant teaching.

*Id.* at 1377-78. Just as in *Semiconductor Energy Lab*, Solvay's mischaracterizations and selective carving of the '192 patent "deceived the examiner into thinking [the '192 patent] was less relevant than it really was." *See also*, *eSpeed, Inc. v. BrokerTec, USA, LLC*, 480 F.3d 1129, 1136-37 (Fed. Cir. 2007) (finding inequitable conduct where the patentee submitted portions of source code in a declaration, and misrepresented what the code included, in order to mislead the examiner into believing no further investigation was required).

The primary basis for Solvay's motion for summary judgment of no inequitable conduct based on its misrepresentations and omissions of the '192 patent is its interpretation of *Akzo*. For the reasons set forth above, *Akzo* does not apply to Solvay's intentional misrepresentations

regarding the factual scope of disclosure in a prior art reference it introduced mid-way through the examination procedure. Moreover, there can be no question that at least a genuine issue of material fact exists regarding whether Solvay misrepresented the disclosure contained in the '192 patent during prosecution of the '746 application. Accordingly, Solvay's motion for summary judgment should be denied.

**c. Solvay Acted With Deceptive Intent.**

The requisite deceptive intent required to support an inequitable conduct charge need not be proven through direct evidence. *See Bruno Indep. Living Aids, Inc.*, 394 F.3d at 1354. Rather, intent may be proven based on all the facts and circumstances surrounding the applicant's conduct. *See id.* Where the materiality of the mischaracterization is high, a lower showing of intent is required to substantiate an inequitable conduct charge. *See Digital Control*, 437 F.3d at 1313.

Here, the highly material nature of the '192 patent, coupled with the facts and circumstances surrounding Solvay's misleading and selective disclosure of the '192 patent, provide sufficient evidence that Solvay acted with deceptive intent. REDACTED

REDACTED

The trier of fact would also find it incredible that Solvay comprehended and disclosed Example 3 of the '192 patent, but failed to recognize the relevance and materiality of other portions of that patent that disclosed the same continuous process of the then-pending claims. REDACTED

REDACTED

REDACTED

Moreover, Solvay's research documents from 1997 confirm that it recognized the high materiality and relevance of the '192 patent and intentionally mischaracterized that patent to procure the '817 patent. REDACTED

REDACTED

REDACTED

REDACTED

Based on these internal Solvay documents, there can be no dispute that Solvay mischaracterized the '192 patent and did so intentionally.

**d. Honeywell's Prosecution Statements.**

Fearful of an inequitable conduct ruling, Solvay resorts to making irrelevant arguments regarding Honeywell's statements during prosecution of U.S. Patent No. 7,214,839 ("the '839 patent"), a patent that is not at issue in this action. According to Solvay, because Honeywell distinguished the '192 patent during prosecution of the '839 patent with no deceptive intent, it too must somehow have made its statements regarding the '192 patent without deceptive intent. This is a non-sequitur. The events that transpired during prosecution of the '817 patent and the '839 patent were totally different and unrelated. During prosecution of the '839 patent, the examiner was familiar with the '192 patent and cited the patent against Honeywell in an office action. (Ex. 30, Final Rejection, Jan. 12, 2006 at 2 - 3). Indeed, unlike in the '817 patent

prosecution, the examiner in the ‘839 patent prosecution was fully aware of the fact that the ‘192 patent disclosed a process whereby chlorine could be added in a continuous process. (Ex. 30, Final Rejection, Jan. 12, 2006 at 3). There was no need for Honeywell to further disclose in the ‘839 patent prosecution the disclosures in the ‘192 patent relating to a continuous process that Solvay misrepresented and omitted in the ‘817 patent prosecution because the examiner had indicated he already knew of them.

Moreover, Solvay’s argument seeks to have the Court disregard Solvay research documents expressing Solvay’s belief that the foreign equivalent of the ‘192 patent “covered” or “blocked to a large extent” the manufacturing process disclosed in the ‘817 patent. As these documents confirm, unlike Honeywell, Solvay knew that it was making arguments to the patent examiner regarding the ‘192 patent that were false. These facts and circumstances, which were not present during prosecution of the ‘839 patent, establish Solvay’s deceptive intent.

Nonetheless, in an effort to remove any semblance of impropriety, Honeywell has taken the extraordinary step of dedicating the ‘839 patent to the public. (Ex. 39, Statutory Disclaimer Under 37 C.F.R. § 1.321(b), HON0033987 - HON0033991). Honeywell took these steps after learning that its outside patent counsel (not a fluorocarbon engineer) made incorrect statements regarding the ‘192 patent’s disclosure during prosecution of the ‘839 patent. (Ex. 30, Final Rejection, Jan. 12, 2006 at 2 - 4). Honeywell took these steps because it is impossible to tell at this time whether the examiner would have allowed the ‘839 patent if a correct description of the ‘192 patent had been provided. The same cannot be said of Solvay, which continues to assert its patent.

**2. Solvay Committed Inequitable Conduct By Failing To Disclose Material Portions Of The Advances In Fluorine Chemistry Treatise.**

Solvay's mischief with prior art references did not end with the '192 patent. To refute the examiner's analogy between the '997 Van Der Puy patent and the '817 patent (then-pending application), Solvay submitted to the patent office carefully selected pages of the Barbour chapter in *Advances In Fluorine Chemistry*. (Ex. 22, Notice Of Appeal And Response, Feb. 24, 2000 at 4). REDACTED

REDACTED

For example, Solvay did not disclose the Hamilton chapter of the *Advances* reference. Solvay similarly did not disclose page 184 of the Barbour chapter, which specifically discussed continuous processes, even though it disclosed several pages that immediately proceeded it. Indeed, Solvay failed to disclose page 184 even though the end of page 183 was in mid-sentence. These actions more than sufficiently allow a fact finder to infer that Solvay withheld these material references with intent to deceive the USPTO into granting a patent.

**a. The Hamilton Chapter And Page 184 Of The Barbour Chapter Are Material.**

Solvay does not dispute the materiality of the Hamilton chapter or page 184 of the Barbour chapter. REDACTED

REDACTED

REDACTED

REDACTED

Based on Solvay's admission, REDACTED REDACTED, there is overwhelming evidence from which the fact finder should conclude that those portions of the treatise should have been cited during prosecution of the '817 patent.

**b. Solvay Demonstrated Its Deceptive Intent By Selectively Disclosing Portions Of Advances In Fluorine Chemistry.**

Sufficient evidence exists for the fact finder to reasonably infer that Solvay selectively disclosed portions of *Advances In Fluorine Chemistry* with intent to deceive. Solvay disingenuously argues in its opening brief that Honeywell cannot demonstrate deceptive intent because it has not identified any specific person with knowledge of the Hamilton chapter or Barbour chapter. This, however, is not the legal standard. Rather, Honeywell must demonstrate knowledge chargeable to the "applicant," which is a general, collective term. *Mollins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 n.6 (Fed. Cir. 1995). Moreover, Solvay refused to produce the entire portion of a letter written by a Solvay representative which specifically discusses the *Advances* reference. Producing the letter would identify the person at Solvay who knew about the reference. Portions of this letter were provided to the USPTO during prosecution of the '817 patent, but Solvay has withheld from Honeywell a complete version of the letter under a claim of privilege. Solvay should not now be allowed to benefit from its failure to provide complete discovery by alleging that Honeywell cannot identify specific Solvay individuals with knowledge of the *Advances* reference.

The record more than sufficiently allows the trier of fact to determine that Solvay failed to disclose material portions of the *Advances* reference, *i.e.*, p. 184 and the Hamilton chapter, to the Examiner with intent to deceive. For example:

- A letter from Solvay's foreign representatives to Solvay's prosecution attorney demonstrates that Solvay had possession of the *Advances In Fluorine Chemistry* reference. (Ex. 35, Feb. 18, 2000 Letter from Solvay to Ms. Schneller, HON0021454);

- Solvay produced page 183 of the Barbour chapter, but not page 184, which is material and discusses the removal of compounds in a fluorination reaction. (Ex. 36, A.K. Barbour *et al*, The Preparation Of Organic Fluorine Compounds By Halogen Exchange, 184, *in* ADVANCES IN FLUORINE CHEMISTRY, Vol. 3 (1963); REDACTED
REDACTED

- Pages 184 and 188 of the Barbour chapter explicitly refer to the Hamilton chapter, yet Solvay did not disclose these pages of the Barbour chapter. (Ex. 36, A.K. Barbour *et al.*, The Preparation Of Organic Fluorine Compounds By Halogen Exchange, 184, 188, *in* ADVANCES IN FLUORINE CHEMISTRY, Vol. 3 (1963));

- The Barbour chapter explicitly states that the Hamilton chapter provides a "more detailed account" of the preparation of fluorocarbon products, yet Solvay did not disclose this portion of the Barbour chapter. (Ex. 36, A.K. Barbour *et al.*, The Preparation Of Organic Fluorine Compounds By Halogen Exchange, 184, 188, *in* ADVANCES IN FLUORINE CHEMISTRY, Vol. 3 (1963) at 188);

- The *Advances In Fluorine Chemistry* Table Of Contents Lists Only Six References, the Hamilton Chapter being one of them. (Ex. 36, A.K. Barbour *et al.*, The Preparation Of Organic Fluorine Compounds By Halogen Exchange, 184, 188, *in* ADVANCES IN FLUORINE CHEMISTRY, Vol. 3 (1963) at Table Of Contents);

- REDACTED

These facts and circumstances properly allow the trier of fact to infer that Solvay acted with deceptive intent during prosecution of the '746 application. Moreover, Solvay's claim to have known only of the disclosed portions from the *Advances* reference, but not to have known of the material, undisclosed portions of the reference, is unsupported and improper. *See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1383 (Fed. Cir. 2001) ("[O]ne

should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art.”).

Just as it did with the ‘192 patent, Solvay selectively carved out a disclosure from the *Advances* reference to suit its arguments before the patent examiner. The duty of disclosure, however, requires more. *See* 35 C.F.R. 1.56; *Semiconductor Energy Lab*, 204 F.3d at 1377. Solvay’s deceptive intent, coupled with the highly material nature of the references it withheld from the USPTO, are sufficient to support Honeywell’s inequitable conduct charge. At a minimum, the evidence raises genuine issues of material fact that precludes Solvay’s motion for summary judgment.

## V. CONCLUSION

For at least the reasons set forth above, there is sufficient evidence in the record to allow the trier of fact to determine that Solvay, on at least two instances, misrepresented and omitted material references from the examiner. Moreover, based on the facts and circumstances surrounding the prosecution of the ‘817 patent, there is sufficient evidence in the record to allow the trier of fact to infer that Solvay committed these acts with intent to deceive the USPTO into granting it the ‘817 patent. Accordingly, this Court should deny Solvay’s motion for summary judgment of no inequitable conduct.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com
*Attorneys for Defendants*

OF COUNSEL:

Robert G. Krupka, P.C.
Laura M. Burson
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Suite 3400
Los Angeles, CA 90017
(213) 680-8400

March 17, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered recipients.

I also certify that on March 24, 2008, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

**BY E-MAIL**

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street, P.O. Box 951
Wilmington, DE 19899-0951

Arthur I. Neustadt, Esquire
Jean-Paul Lavalleye, Esquire
Barry J. Herman, Esquire
Jeffrey B. McIntyre, Esquire
Michael E. McCabe, Jr., Esquire
Aarti Shah, Esquire
John F. Presper, Esquire
OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
tgrimm@mnat.com