IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLVAY, S.A., | ) | |
|     Plaintiff and Counterclaim Defendant, | )<br>)<br>)<br>) | |
| v. | )<br>) | C.A. No. 06-557-SLR |
| HONEYWELL SPECIALTY MATERIALS, LLC and HONEYWELL INTERNATIONAL INC., | )<br>)<br>)<br>) | PUBLIC VERSION |
|     Defendants and Counterclaim Plaintiffs. | )<br>)<br>)<br>) | |

**HONEYWELL INTERNATIONAL INC.'S REPLY TO SOLVAY'S
OPPOSITION TO HONEYWELL'S MOTION FOR
<u>SUMMARY JUDGMENT OF INVALIDITY</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com

OF COUNSEL:

*Attorneys for Defendants*

Robert G. Krupka, P.C.
Laura M. Burson
Amber T. Aubry
Jacob R. Buczko
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Suite 3400
Los Angeles, CA 90017
(213) 680-8400

Confidential Version Filed: March 28, 2008
Public Version Filed: April 4, 2008

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................3

    A. Even Assuming That Honeywell "Derived" Its Continuous Process For Making HFC-245fa From HCC-240fa REDACTED , Honeywell's Receipt And Reduction To Practice Of The Process In The United States Establishes Prior Art Under § 102(g).......................................................3

        1. Solvay Was Not The First Inventor. .........................................................3

        2. Honeywell's Receipt Of Information In The United States REDACTED REDACTED Concerning How To Practice The Invention Constitutes Conception And Its Subsequent Performance Of The Continuous Process Constitutes Reduction To Practice Under The Law, Thereby Establishing Honeywell's Priority Of Invention Under § 102(g). ........................................................................................................4

        3. Contrary To Solvay's Assertions, *Tyler* Is Still Good Law And Supports A Finding By This Court That Honeywell's Reduction To Practice Of A Foreign Invention In The United States Based Upon Instructions REDACTED Qualifies As § 102(g) Invalidating Art. .........................................................................................6

    B. Honeywell's Buffalo Work Was Not Abandoned, Suppressed Or Concealed.............................................................................................................9

        1. Honeywell Worked Diligently To Develop And Perfect Its Integrated Manufacturing Process For Producing HFC-245fa Before Disclosing It In The '706 Patent. ...................................................10

        2. Solvay's Argument Regarding The '839 Patent Is Irrelevant....................11

        3. Honeywell Has Never Had A Policy Of Commercial Suppression Or Concealment. ......................................................................................11

III. CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin Powder Co. v. Atlas Powder Co.*,
    568 F. Supp. 1294 (D. Del. 1983) .................................................................................. 8

*Chan v. Kunz*,
    231 U.S.P.Q. 462 (Pat. & Tr. Office Bd. App. 1984) ....................................................... 5

*Checkpoint Systems, Inc. v. U.S. Int'l Trade Com'n*,
    54 F.3d 756 (Fed. Cir. 1995) ......................................................................................... 10

*Cooper v. Goldfarb*,
    154 F.3d 1321 (Fed. Cir. 1998) ...................................................................................... 3

*Corona Cord Tire Co. v. Dovan Chemical Corp.*,
    276 U.S. 358 (1928) ........................................................................................................ 5

*Dow Chemical Co. v. Astro-Valcour, Inc.*,
    267 F.3d 1334 (Fed. Cir. 2001) ............................................................................. 6, 7, 8

*Fujikawa v. Wattanasin*,
    93 F.3d 1559 (Fed. Cir. 1996) ...................................................................................... 10

*Maxwell v. KMart Corp.*,
    880 F. Supp. 1323 (D. Minn. 1995) ............................................................................... 5

*Mycogen Plant Science, Inc. v. Monsanto Co.*,
    61 F. Supp. 2d 199 (D. Del. 1999) .............................................................................. 4, 5

*Pfaff v. Wells Electronics*,
    525 U.S. 55 (1998) .................................................................................................. 5, 6, 7

*Rexam Indus. Corp. v. Eastman Kodak Co.*,
    182 F.3d 1366 (Fed. Cir. 1999) ...................................................................................... 3

*Staehelin v. Secher*,
    24 U.S.P.Q.2d 1513 (Bd. Pat. App. & Int. 1992) ............................................................ 5

*Tyler Refrigeration Corp. v. Kysor Indus. Corp.*,
    601 F. Supp. 590 (D. Del. 1985) ............................................................................ 6, 7, 8

**I.     INTRODUCTION**

Solvay's Opposition to Honeywell's Motion for Summary Judgment of Invalidity (D.I. 171) fails to present any evidence or law sufficient to support the validity of claims 1, 5, 7, and 10 - 11 of U.S. Patent No. 6,730, 817 ("the '817 Patent") under 35 U.S.C. § 102(g). Rather, the undisputed facts demonstrate that, as a matter of law, Honeywell reduced to practice a process for making HFC-245fa[1] in the United States        REDACTED        which is invalidating § 102(g) prior art. The evidence further shows that Honeywell wasted no time in disclosing the invention to the public in U.S. Patent No. 5,763,706 (the '706 Patent) after working diligently to refine the process. Thus, as a matter of law, Honeywell did not abandon, suppress or conceal its invention. Accordingly, Honeywell's Motion for Summary Judgment of Invalidity of claims 1, 5, 7, and 10 - 11 of the '817 Patent should be granted and Solvay's counter motion denied.

Solvay's opposition rests solely upon two legally deficient contentions: (1) Honeywell's prior reduction to practice does not qualify as § 102(g) prior art[2]; and (2) Honeywell abandoned, suppressed, or concealed its invention for commercial reasons. Solvay's contentions lack any legal merit. Try as it might, Solvay does not, and can not, show that it was the "first inventor" in the United States of a continuous process for producing HFC-245fa from HCC-240fa. This Court's finding in *Tyler* that an invention reduced to practice in the United States prior to the patentee's conception of the invention qualifies as § 102(g) prior art, even if that invention was

---

[1]     The chemical name for HFC-245fa is 1,1,1,3,3-pentafluoropropane.

[2]     As noted in the opening brief, although Honeywell disputes that its prior inventive work was derived from a foreign source, for purposes of this briefing, Honeywell assumes Solvay's version of the facts is true.

the result of foreign instruction, remains the applicable law, and Solvay has not cited any law to the contrary.  Solvay's argument rests on the legally irrelevant distinction that, under Solvay's version of the facts, REDACTED instructed Honeywell on how to practice the invention instead of flying to the United States and practicing the invention itself.  Thus, even if Solvay's version of the facts is true (i.e., that Honeywell's domestic reduction to practice was pursuant to instructions of a foreign inventor – REDACTED ), there was a domestic conception and reduction to practice of the invention in the United States before the priority date of Solvay's patent.  Therefore, Solvay's claims that read on this prior reduction to practice cannot be valid under any reading of § 102(g).

Furthermore, Solvay fails to set forth any credible evidence that Honeywell abandoned, suppressed, or concealed the prior invention.  The undisputed facts demonstrate that Honeywell worked diligently to perfect the process before disclosing it to the public in the '706 Patent

REDACTED

Solvay's allegations that Honeywell had a policy of deferring the filing of patent applications for commercial purposes is factually specious, as is its reliance upon REDACTED

REDACTED

Even crediting Solvay's contention of Honeywell's actions from the time that it reduced the REDACTED to practice in the United States REDACTED (i.e., ignoring the prior invention of the '192 Patent) to the date Solvay admits Honeywell disclosed that invention in its application for the '706 Patent filed on July 3, 1996, Solvay cannot show any evidence of abandonment, suppression or concealment.  Rather, all the evidence presented shows that Honeywell not only diligently pursued a patent on an "integrated manufacturing process for producing HFC-245fa", but also made efforts to promptly commercialize HFC-245fa.

2

As Solvay has failed to set forth any genuine issues of material fact as to whether Honeywell's prior reduction to practice qualifies as § 102(g) prior art or whether Honeywell abandoned, suppressed, or concealed its invalidating Buffalo work, Honeywell is entitled to summary judgment of invalidity under § 102(g) of claims 1, 5, 7, and 10 - 11 of the '817 Patent.

## II.    ARGUMENT

### A.    Even Assuming That Solvay's Version Of The Facts Is True, Honeywell's Receipt And Reduction To Practice Of The Invention In The United States Establishes Prior Art Under § 102(g).

#### 1.    Solvay Was Not The First Inventor.

Solvay claims that Honeywell's performance of the process in early 1995 does not qualify as prior art under § 102(g) because Solvay alleges that Honeywell did not conceive of the process, but rather just reproduced a process that <sup>REDACTED</sup> conceived outside the United States. But, for purposes of invalidating the '817 Patent under § 102(g), it is immaterial whether Honeywell *first* conceived of the continuous process for making HFC-245fa from HCC-240fa or whether it *first* introduced a foreign conception into the United States. Reduction to practice presumes conception by someone – either Honeywell or <sup>REDACTED</sup>  Under either scenario it is evident that Solvay was *not* the first inventor. Because Honeywell's reduction to practice in the United States   REDACTED   precedes the priority date of the '817 Patent (October 1995), it is irrelevant whether Honeywell or <sup>REDACTED</sup> conceived of the process; Honeywell's reduction to practice establishes priority of invention under § 102(g). *See Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) ("[P]riority of invention goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive of the invention and that it exercised reasonable diligence in later reducing that invention to practice."); *see, e.g., Rexam Indus. Corp. v. Eastman Kodak Co.*, 182 F.3d 1366, 1370 (Fed. Cir. 1999) (holding that a second party to make an invention, who lost in an interference proceeding to a

3

first inventor, could still assert its making of the invention as § 102(g) prior art as a defense against a third inventor). It is undisputed that Honeywell successfully performed in the United States a continuous process falling within claims 1, 5, 7, 10 – 11 of the '817 Patent (as asserted by Solvay) REDACTED before the priority date for the '817 Patent. As a matter of fact and law, Honeywell's reduction to practice of the alleged invention in the United States *before* Solvay evidences that Solvay was not the first inventor.

**2. Honeywell's Receipt Of Information In The United States** REDACTED REDACTED **Concerning How To Practice The Invention Constitutes on And Its Subsequent Performance Of The Continuous Process Constitutes Reduction To Practice Under The Law, Thereby Establishing Honeywell's Priority Of Invention Under § 102(g).**

Rather than addressing the law surrounding the undisputed facts before this Court – the introduction of an allegedly foreign conception into the United States – Solvay chooses, instead, to cite cases discussing *general* concepts of "invention," "conception," and "derivation." Solvay's recitation of general definitions, however, offers little guidance to this Court in determining whether the *specific* facts of this case render the '817 Patent invalid under § 102(g) – i.e. whether Honeywell's receipt of information REDACTED and subsequent reduction to practice of the process in the United States prior to Solvay's conception of the invention in the United States qualifies as a prior invention "made in this country by another inventor" for purposes of invalidating the '817 Patent under § 102(g). 35 U.S.C. § 102(g)(2).

Indeed, Solvay's entire "inventorship" argument relies on the premise that Honeywell "derived" its prior invention REDACTED . This Court has previously held, in accordance with Honeywell's arguments in its opening brief, that the legal concept of "derivation" is irrelevant to the question of whether, under § 102(g), Solvay may obtain a patent on a process already reduced to practice in the United States. *Mycogen Plant Science, Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199 (D. Del. 1999) *aff'd*, 243 F.3d 1316 (Fed. Cir. 2001).

4

In *Mycogen* the court stated the following regarding Mycogen's argument that Monsanto was not an inventor of the § 102(g) prior art in question because it derived the invention:

> Mycogen raises the issue of derivation in the context of Monsanto's argument that Mycogen's patents' claims are invalid for prior invention because Monsanto was the first to reduce the invention to practice. Mycogen argues in response that Monsanto derived its invention from Mycogen. . . . *Because the validity of Monsanto's patent is not at issue here, the court need not address Mycogen's derivation argument.* *Mycogen*, 61 F. Supp. 2d at 241 (emphasis added).

Additionally, receipt of knowledge of a foreign conception in the United States is conception in the United States as of the date of receipt in the United States. *See, e.g., Staehelin v. Secher*, 24 U.S.P.Q.2d 1513, 1521-22 (Bd. Pat. App. & Int. 1992) (finding conception in the United States when an invention conceived of in Switzerland was discussed in the United States); *Chan v. Kunz*, 231 U.S.P.Q. 462, 469 (Pat. & Tr. Office Bd. App. 1984) (finding conception in the United States upon receipt of meeting minutes where an invention was reduced to practice in Switzerland at the request of a scientist in the United States and then minutes of meetings concerning the Switzerland testing were sent back to scientists in the United States).

Under this settled law, and taking Solvay's allegations as true, Honeywell's receipt of information REDACTED constitutes conception in the United States as of the date of receipt in the United States.

As Solvay asserts in its brief, reduction to practice of a process occurs when the process is successfully performed. *Pfaff v. Wells Electronics*, 525 U.S. 55, 57 n.2 (1998) (citing *Corona Cord Tire Co. v. Dovan Chemical Corp.*, 276 U.S. 358, 383 (1928)). In the case of a foreign conception, reduction to practice under § 102(g) occurs either when the completed invention is introduced into the United States or reduced to practice in the United States. *See Maxwell v. KMart Corp.*, 880 F. Supp. 1323, 1334 (D. Minn. 1995) ("It is well established that the

introduction of a completed invention into the United States may be relied upon for priority purposes even though the invention was conceived and reduced to practice abroad.").

It is undisputed that REDACTED, Honeywell's Dan Merkel performed in the United States a continuous process for the production of HFC-245fa (as described in claims 1, 7, 10-11) by reacting HCC-240fa with HF in the presence of antimony pentachloride (the catalyst) at temperatures which fall within the range of 50 to 150ºC as claimed in claim 5 of the '817 Patent.[3]  REDACTED

REDACTED It is also undisputed that Mr. Merkel removed the gaseous HFC-245fa and gaseous HCl produced in the process as each was formed (as claimed by claim 1), REDACTED

REDACTED

REDACTED

Under Solvay's version of the facts, these circumstances constitute either the introduction of a complete invention into the United States REDACTED REDACTED or the reduction to practice in the United States of an invention conceived REDACTED REDACTED But in either case, under settled law the asserted claims are invalid under § 102(g).

    **3.**    **Contrary To Solvay's Assertions, *Tyler* Is Still Good Law And Supports A Finding By This Court That Honeywell's Reduction To Practice Of A Foreign Invention In The United States Based Upon Instructions REDACTED Qualifies As § 102(g) Invalidating Art.**

Although Solvay stridently argues that "*Pfaff* and *Dow Chemical* made clear (albeit over a decade later) that the mere practicing of an invention based on instructions from a foreign entity cannot qualify as prior art under § 102(g)[]", Solvay does not support its argument by

---

[3]    All Exhibits are attached to the Appendix to Honeywell International Inc.'s Reply Briefs, filed and submitted concurrently herewith.

citing any cases or other authority. (D.I. 171, Solvay's Opp'n to Honeywell's Motion for Summ. J. of Invalidity, March 17, 2008 at 4).

In fact, *Dow Chemical* did not even concern the issue of purported derivation, and instead focused on the question of whether there was any prior invention at all. In *Dow Chemical*, the patentee questioned whether the prior inventor appreciated the fact that he had made an invention, not whether he had reduced the invention to practice pursuant to instructions from another. Hence, the Federal Circuit questioned whether or not there was any prior conception of the invention at issue. Here, it is undisputed that either Honeywell or $^{\text{REDACTED}}$ conceived of the process before the '817 Patent's priority date. The fact remains that, unlike the patentee in *Dow Chemical*, Solvay is attempting to preserve patent protection on a process indisputably conceived and reduced to practice in this country by another before Solvay's priority date.

It follows that neither *Pfaff* nor *Dow Chemical* overturned this Court's decision in *Tyler Refrigeration Corp. v. Kysor Indus. Corp.*, 601 F. Supp. 590 (D. Del. 1985). *Pfaff* did not even address the issue raised in *Tyler* whether a foreign conception reduced to practice in the United States can qualify as § 102(g) prior art. *See Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 57 (1998) (granting certiorari "to determine whether [under § 102(**b**)] the commercial marketing of a newly invented product may mark the beginning of the 1-year period even though the invention has not yet been reduced to practice"). And in *Dow Chemical*, although both parties addressed *Tyler* in their appeal briefs in discussing whether the defendant (AVI) qualified as an inventor, the Federal Circuit did not overturn *Tyler* in finding that AVI qualified as a prior inventor; rather, the Federal Court indicated that the *Tyler* decision needed no further clarification or restrictions placed upon it by declining to do so. *See Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1340-41 (Fed. Cir. 2001); Brief of Plaintiff-Appellant at 18, *Dow Chemical Co. v. Astro-*

*Valcour, Inc.*, No. 01-1003 (Fed. Cir. Jan. 30, 2001), 2001 WL 34401628; Brief of Defendant-Appellee at 36, *Dow Chemical Co. v. Astro-Valcour, Inc.*, No. 01-1003 (Fed. Cir. Feb. 7, 2001), 2001 WL 34401629.

Solvay also argues that *Tyler* is inapplicable because it was decided prior to § 102(g)'s revision to include the requirement that another "inventor" had not abandoned, suppressed, or concealed its invention. (D.I. 171, Solvay's Opp'n Honeywell's Motion for Summ. J. of Invalidity, March 17, 2008 at 4). This argument has no merit. As the Federal Circuit confirmed in *Dow Chemical*, "[35 U.S.C. § 102(g)] was always understood to apply only to inventors, since §102(g) deals with interference disputes between *inventors* with competing claims to the invention." *Dow Chemical*, 267 F.3d at 1340.

Contrary to Solvay's suggestion, when deciding *Tyler*, this Court was well aware that, though the word "inventor" was not originally included in the language of § 102(g), the statute required a prior invention "made in this country by another *inventor*" for purposes of invalidating a patent under § 102(g). 35 U.S.C. § 102(g)(2). *See generally Austin Powder Co. v. Atlas Powder Co.*, 568 F. Supp. 1294, 1301 (D. Del. 1983) (explaining that a requirement of 102(g) is met "when *the inventor* constructs a device that is within the scope of the patent claims . . . . *The inventor's efforts* need not have reached a form which is commercially marketable, but they must have passed beyond a mere hope of future achievement of the intended purpose") (citation omitted) (emphasis added). At the time *Tyler* was decided, this Court was also aware that an inventor was one involved in the conception of the invention. *See id.* at 1303, fn. 21 ("Conception occurs when *the inventor* has and discloses a complete idea for a product.") (emphasis added). Thus, Solvay's assertion that *Tyler* "is not the law today" is baseless. (D.I. 171, Solvay's Opp'n Honeywell's Motion for Summ. J. of Invalidity, March 17, 2008 at 4).

This Court's holding in *Tyler* -- that an invention qualifies as § 102(g) prior art even if it is first conceived and reduced to practice in a foreign country, and even if the foreign inventor sends instructions on how to practice the invention into the United States[4] -- remains good law. And under *Tyler*, the undisputed fact that Honeywell successfully performed in the United States a continuous process falling within claims 1, 5, 7, 10 – 11 of the '817 Patent (as asserted by Solvay) following the receipt of information from REDACTED nearly *nine months* prior to the priority date for the '817 Patent, renders those claims invalid under § 102(g). Whether Honeywell or the REDACTED is deemed the first "inventor" is irrelevant to the outcome -- because as a matter of law Solvay is not the first inventor and the asserted claims of the '817 patent are invalid under § 102(g).

### B.      Honeywell's Buffalo Work Was Not Abandoned, Suppressed Or Concealed.

Solvay, for the *first* time, in its Motion for Summary Judgment of No Invalidity, alleges that Honeywell abandoned, suppressed or concealed its Buffalo work. (D.I. 121, Solvay's Motion for Summary Judgment of No Invalidity at 6 - 8). No such assertion was made in any discovery or prior pleading in this case. Nevertheless, even if Solvay is permitted to raise this assertion now, as set forth in greater detail in Honeywell's Opening Brief in Support of Summary Judgment of Invalidity (D.I. 135) and Honeywell's Opposition to Solvay's Motion for Summary Judgment of No Invalidity (D.I. 175), incorporated herein by reference, Honeywell disclosed the process disclosed in the '706 Patent *immediately* after perfecting it.

---

[4]      Solvay states in its opposition that "in *Tyler*, no restriction on disclosure of the foreign (Japanese) work existed." (D.I. 171 at 4). Solvay provides no support for this statement, nor does it state why it is relevant to § 102(g). The foreign work in *Tyler* was communicated from the foreign inventor to the United States individual who practiced the invention pursuant to a licensing agreement which requires the exchange of certain technical information. *Tyler*, 601 F. Supp at 593-594).

**1.     Honeywell Worked Diligently To Develop And Perfect Its Integrated Manufacturing Process For Producing HFC-245fa Before Disclosing It In The '706 Patent.**

Solvay's assertion that Honeywell delayed its disclosure of the invalidating prior art lacks any evidentiary foundation. Honeywell first disclosed to the public a continuous process of fluorinating HFC-245fa where HFC-245fa and HCl are vented as a gas in July of 1994 via the '192 Patent. (Ex. 5, '192 Patent col. 3 ln. 63 - col. 4 ln. 1). After Honeywell's disclosure of the continuous fluorination process in the '192 Patent, Honeywell disclosed to the public in the '706 Patent its *prior* actual reduction to practice of the '817 Patent's alleged invention.

In the '706 Patent, Honeywell described a process for making HFC-245fa from HCC-240fa and HF in the presence of an antimony catalyst, including antimony pentachloride, wherein the HFC-245fa and HCl are continuously removed as a gas as they are formed and wherein the disclosed temperature ranges for the reaction fall within 50 to 150ºC. (Ex. 6, '706 Patent col. 2 lns. 33 - 55, col. 4 ln. 39 - col. 5 ln. 3, claims 1, 2, 4, 6, 22). And, indeed, the examples in the '706 Patent's specification reflect later pilot plant operations     REDACTED
REDACTED    perfected from Honeywell's earlier laboratory work. (*Compare*     REDACTED
    REDACTED    *with* Ex. 6, '706 Patent at "Detailed Description of the Preferred Embodiment"; *see also* D.I. 175, Honeywell's Opp'n to Solvay's Motion for Summ. J. of Invalidity at 9-10). The undisputed facts show that Honeywell did not delay in developing and perfecting the process disclosed in the '706 Patent,     REDACTED
    REDACTED    *See, e.g., Checkpoint Systems, Inc. v. U.S. Int'l Trade Com'n*, 54 F.3d 756, 761 (Fed. Cir. 1995) (Four-year delay between completing invention and production of a commercial product was not considered an unreasonable delay); *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1568 (Fed. Cir. 1996) (17-month delay between reduction to practice and filing of the patent application was reasonable).

### 2. Solvay's Argument Regarding The '839 Patent Is Irrelevant.

Solvay claims that Honeywell did not disclose the process in the '706 Patent, but rather waited to disclose it in the later-filed '839 Patent.[5] (D.I. 171, Solvay's Opp'n Honeywell's Motion for Summ. J. of Invalidity, March 17, 2008 at 7). Solvay bases its argument on the allegation that the '706 Patent and the '839 Patent disclose different reactant ratios and the reactant ratios used in Honeywell's prior reduction to practice are disclosed, not in the '706 Patent, but in the later-filed '839 Patent. Solvay's argument is irrelevant because this motion does not concern the dependent claims of the '817 Patent containing the reactant ratio limitation. Only claims 4 and 15 of the '817 Patent contain a limitation regarding the molar ratio of reactants. These claims are not subject to Honeywell's motion, and thus any allegation that this limitation is not disclosed in the '706 Patent is irrelevant.

### 3. Honeywell Has Never Had A Policy Of Commercial Suppression Or Concealment.

Solvay's only proffered "evidence" of Honeywell's alleged commercial suppression or concealment stems from testimony related to an internal form          REDACTED

                    REDACTED

However, none of this testimony relates in any way to the disclosure of the '706 Patent's technology -- the issue pertinent to this motion.

---

[5] As Solvay is aware, Honeywell disclaimed the '839 Patent because of statements made during its prosecution concerning the disclosure of the '706 Patent. (D.I. 171, Solvay's Opp'n to Honeywell's Motion for Summ. J. of Invalidity, March 17, 2008 at 9; D.I. 173, Honeywell's Opp'n to Solvay's Motion for Summ. J. of No Inequitable Conduct, March 17, 2008 at 21; Ex. 11, Statutory Disclaimer Under 37 C.F.R. § 1.321(b) at HON0033988 - HON0033990).

REDACTED

REDACTED

REDACTED

First, the above statement was not made in the context of the '706 Patent, and Mr. Friedenson was not directing his comments towards the prosecution of the '706 Patent. (D.I. 175, Honeywell's Opp'n to Solvay's Motion for Summ. J. of No Invalidity, March 17, 2008 at 11).                             REDACTED

Solvay has not shown, nor can it show, that Honeywell in any way either delayed or slowed down its disclosure of the process (i.e., what was reduced to practice at least REDACTED REDACTED and disclosed in a patent application on July 3, 1996) or its work on continued development of the process.  To the contrary, Honeywell continued to perfect the process before it disclosed the "integrated manufacturing process for producing HFC-245fa" in the '706 Patent REDACTED REDACTED  Honeywell, also, took efforts to commercialize HFC-245fa, offering to sell, and indeed selling, samples of HFC-245fa to potential customers REDACTED

REDACTED

Clearly, Solvay's allegation that Honeywell commercially suppressed its HFC-245fa process lacks foundation, and there was never a policy of suppression at Honeywell that would lend a modicum of validation to this allegation.  (D.I. 177, March 17, 2008 Declaration of Jay Friedenson at ¶ 9; D.I. 176, March 17, 2008 Declaration of Ian Shankland at ¶ 5).  The undisputed facts indicate that Honeywell did not abandon, suppress, or conceal its prior reduction to practice of the asserted claims at issue in this motion.

---

6   *See* Honeywell's Opening Brief in Support of Summary Judgment of Invalidity (D.I. 135) and Honeywell's Opposition to Solvay's Motion for Summary Judgment of No Invalidity (D.I. 175).

### III. CONCLUSION

It is undisputed that Honeywell performed in the United States a continuous process for making HFC-245fa *long before* the priority date of the '817 Patent, and that this process included each limitation in asserted claims 1, 5, 7, and 10 – 11.  The undisputed facts also demonstrate that Honeywell did not abandon, suppress, or conceal the process, but instead disclosed it to the public promptly via the '706 Patent.  Accordingly, and for all the reasons stated above, Honeywell respectfully requests the Court grant summary judgment of invalidity under § 102(g) of claims 1, 5, 7, and 10-11 of the '817 Patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

_____
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
bschladweiler@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Robert G. Krupka, P.C.
Laura M. Burson
Amber T. Aubry
Jacob R. Buczko
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Suite 3400
Los Angeles, CA 90017
(213) 680-8400

March 28, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered recipients.

I also certify that on April 4, 2008, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

**BY E-MAIL**

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street, P.O. Box 951
Wilmington, DE  19899-0951

**BY E-MAIL**

Arthur I. Neustadt, Esquire
Jean-Paul Lavalleye, Esquire
Barry J. Herman, Esquire
Jeffrey B. McIntyre, Esquire
Michael E. McCabe, Jr., Esquire
John F. Presper, Esquire
OBLON, SPIVAK, MCCLELLAND, MAIER
  & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314

/s/ *Thomas C. Grimm*

Thomas C. Grimm (#1098)
tgrimm@mnat.com