**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SOLVAY, S.A.                              )
                                          )
                Plaintiff,                )         C.A. No. 06-557-SLR
                                          )
        v.                                )         **JURY TRIAL DEMANDED**
                                          )
HONEYWELL SPECIALTY                       )         **PUBLIC VERSION**
MATERIALS, LLC and                        )
HONEYWELL INTERNATIONAL INC.,             )
                                          )
                Defendants.               )


**SOLVAY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON HONEYWELL'S SEVENTH
AFFIRMATIVE DEFENSE OF LACHES, EQUITABLE ESTOPPEL AND
PROSECUTION LACHES**


OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

Dated: March 28, 2008
Public Version Dated: April 4, 2008
858795 / 30651

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

I.     SUMMARY OF ARGUMENT ........................................................1

II.    ARGUMENT ..............................................................................2

       A.     Honeywell Could Not Reasonably Have Believed That Solvay Did Not
              Intend To Enforce The '817 Patent When The Parties Were ███████

              ███████████ ...........................................................2

       B.     The Pre-'817 Patent Issuance Communications Are Irrelevant.........................4

       C.     Solvay's ███████████████████████████████ While
              The Parties ████████████████████████████ Does
              Not Show That Solvay Abandoned Its Rights In The '817 Patent ...................5

       D.     Honeywell Has No Evidence Of Detrimental Reliance.......................................7

       E.     Honeywell Has No Evidence Of Economic Prejudice ....................................11

III.   CONCLUSION.......................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*ABB Robotics, Inc. v. Cincinnati Milacron, Inc.*,
    52 F.3d 1062 (Fed. Cir. 1995)..................................................................10

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ..............................................2, 11, 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................11

*Ecolab, Inc. v. Envirochem, Inc.*,
    264 F.3d 1358 (Fed. Cir. 2001) .........................................................11, 12

*Essilor Int'l v. Nidek Co.*,
    1998 U.S. Dist. LEXIS 22960 (E.D.N.Y. July 27, 1998),
    1999 U.S. App. LEXIS 28426 (Fed. Cir. Oct. 29, 1999)........................5

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
    60 F.3d 770 (Fed. Cir. 1995)..............................................................8, 12

*Hemstreet v. Computer Entry Systems Corp.*,
    972 F.2d 1290 (Fed. Cir. 1992)..............................................................12

*Heraeus Electro-Nite Co. v. Midwest Instr. Co.*,
    2007 U.S. Dist. LEXIS 51510 (E.D. Pa. July 12, 2007).....................5, 6

*Howell Hydrocarbons v. Adams*,
    897 F.2d 183 (5th Cir. 1990) ...................................................................9

*James River Corp. v. Hallmark Cards*,
    915 F. Supp. 968 (E.D. Wis. 1996).....................................................12, 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................11

*Meyers v. Asics Corp.*,
    974 F.2d 1304 (Fed. Cir. 1992)................................................................2

*Scholle Corp. v. Blackhawk Molding Co., Inc.*,
    133 F.3d 1469 (Fed. Cir. 1998)............................................................9, 10

*Stryker Corp. v. Zimmer, Inc.*,
    741 F. Supp. 509 (D. N.J. 1990) ..........................................................................6

*Wanlass v. General Electric Co.*,
    148 F.3d 1334 (Fed. Cir. 1998)). .......................................................................7

### Rules & Statutes

Fed. R. Civ. P. 56 ............................................................................................................1

Fed. R. Civ. P. 56(e) .......................................................................................................1

35 U.S.C. § 295 ...............................................................................................................7

## I.    SUMMARY OF ARGUMENT

Although it purports to oppose Solvay's motion for summary judgment, Honeywell's

"Opposition" does not raise any genuine issue of material fact with respect to its two laches-

styled defenses (laches and prosecution laches).  As for its two laches defenses, Honeywell states

in its Opposition (D.I. 168, at 1) that it will not be asserting either of these defenses at trial

"[b]ased upon the facts as Honeywell understands them thus far in this case."  Honeywell

purports to "reserve the right" to raise those defenses later.  (*Id.*).  Honeywell's attempt to

"reserve" its laches defenses is contrary to the mandate of Fed. R. Civ. P. 56, which provides that

a party that wishes to oppose the entry of summary judgment against it "may not rely merely on

allegations or denials" but must "set out specific facts showing a genuine issue for trial."  Fed. R.

Civ. P 56(e).  Honeywell failed to meet its burden under Rule 56.  Accordingly, this Court

should enter summary judgment in Solvay's favor on Honeywell's laches and prosecution laches

defenses.

Having conceded two of the three issues raised in Solvay's summary judgment motion,

Honeywell dedicates the remainder of its Opposition to its equitable estoppel defense.  However,

even accepting only for purposes of argument the properly supported facts set forth in its

Opposition, Honeywell has failed to demonstrate that:  (1) Solvay's purported "misleading

conduct" by "silence" led Honeywell reasonably to infer that Solvay did not intend to enforce the

'817 patent against Honeywell; (2) Honeywell "detrimentally relied on Solvay's silent

assurance" that it would not enforce the '817 patent; or (3) Honeywell has suffered any prejudice

as a result of Solvay's conduct.  For the reasons discussed more fully below and in Solvay's

Opening Brief, there are no disputed facts and this Court should enter summary judgment in

Solvay's favor on Honeywell's equitable estoppel defense.

## II.    ARGUMENT

### A.    Honeywell Could Not Reasonably Have Believed That Solvay Did Not Intend To Enforce The '817 Patent When The Parties ███████████████

It is well settled that silence alone is not sufficient for purposes of establishing equitable estoppel.  The patentee's silence must be "combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033-34 (Fed. Cir. 1992) (reversing summary judgment of equitable estoppel where there was over eight years of silence between the parties).  Cases of intentionally misleading silence where there is a duty to speak typically involve a patentee previously threatening immediate or vigorous enforcement of its patent rights.  *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308-09 (Fed. Cir. 1992) (suggestion of infringement coupled with offer to license followed by silence did not suffice to establish equitable estoppel).

In its Opposition, Honeywell asserts that Solvay's "misleading silence" – in not specifically accusing Honeywell of infringing the '817 patent during a ███████ ███████ ███████████████ █████████████ – led Honeywell to conclude that Solvay did not intend to enforce the '817 patent.  Contrary to Honeywell's conclusory argument, the undisputed facts establish that: (1) Solvay's alleged silence about the '817 patent *per se* during █████████████████ was not misleading; and (2) Honeywell could not reasonably have concluded █████████ that Solvay did not intend to enforce the '817 patent or any of its other patent rights.

Here, the facts as asserted by Honeywell (and accepted only for purposes of this motion) prove that Solvay at no time ever acquiesced in Honeywell's infringement of any of Solvay's

2

intellectual property rights, including any of Solvay's worldwide patent rights in HFC-245fa manufacturing processes.  It is undisputed that Solvay and Honeywell directly compete against each other in the hydroflourocarbon business, and that Solvay makes and sells HFC-365mfc (not the subject of the '817 patent) in competition with Honeywell's HFC-245fa (which it manufactures by the process claimed in the '817 patent).  ███████████████████████ ██████████████████████████████████████████████████████.  It is also undisputed that Solvay owns United States and foreign patents relating to the manufacture of HFC-245fa and HFC-365mfc.  (D.I. 168 at 3-4).  From time to time ██████████████ ███████████████████████████████████████████████████████████ ██████████████████████.  (*Id.* at 3).  The parties also discussed the possibility of ███████████████████████████████.  (*Id.*).  Significantly, ████████████████ ███████████████████████████████ Solvay and Honeywell have never entered into any agreement to license or cross-license of any of their respective patent rights concerning HFC-245fa or HFC-365mfc products or manufacturing processes.  ███████████████████ ██████████████████████.

The fact that Honeywell unsuccessfully attempted to obtain a license to Solvay's HFC-245fa manufacturing process patents is dispositive of Honeywell's estoppel defense for at least two independent reasons.  First, the ████████████████████████████ show that Honeywell reasonably knew (or at least should have known) that it required a license from Solvay and that, absent such a license, litigation concerning one or more of Solvay's HFC-245fa manufacturing process patents (including the '817 patent) was foreseeable.  Second, the parties'

███████████████████████████████████████████████████████████████

███████████████████████ establishes that it was unreasonable for Honeywell to infer that Solvay was "abandoning" any of its patent rights.

**B.    The Pre-'817 Patent Issuance Communications Are Irrelevant**

Honeywell dedicates much of its Opposition to ███████████████



███████████. *See, e.g.,* D.I. 168 at 3 ███████████

███████████. Honeywell also makes much of the fact that the United States Patent & Trademark Office sent a Notice of Allowance for the '817 patent on March 17, 2003 and that from that date forward "Solvay never told Honeywell that it needed a license under Solvay's soon-to-issue patent." D.I. 168 at 4. Honeywell does not cite any authority to support the proposition that a patent owner has a duty to notify a potential infringer of a patent <u>before</u> that patent has issued, and Solvay is unaware of any such authority. Thus, any communications that occurred prior to issuance of the '817 patent on May 4, 2004 are irrelevant to whether Honeywell reasonably believed that Solvay intended to enforce that patent.

Even if the parties' pre-May 4, 2004 communications were relevant, they would not support Honeywell's equitable estoppel defense. Those pre-patent communications, like the post-patent communications, clearly establish that Solvay was serious about enforcing its patent rights concerning HFC-245fa and that Honeywell recognized this fact.

4

C.    **Solvay's** ▮▮▮▮▮▮▮ **Period Of Silence Regarding The '817 Patent While The** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Does Not Show** **That Solvay Abandoned Its Rights In The '817 Patent**

Honeywell's assertion (D.I. 168 at 4) that it was misled because Solvay "kept silent" about the '817 patent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ fails to establish that Solvay abandoned its U.S. patent rights. Communications between parties regarding other patents, such as foreign counterparts, does not give rise to a "duty to speak" regarding a United States patent that is later asserted in litigation.

For example, in *Essilor Int'l v. Nidek Co.*, 1998 U.S. Dist. LEXIS 22960, at *58 (E.D.N.Y. July 27, 1998), *aff'd*, 1999 U.S. App. LEXIS 28426 (Fed. Cir. Oct. 29, 1999), the defendants argued that that plaintiff initially approached them regarding infringement of only its Japanese patents, and that it was only three years later, when plaintiff lost one of its accounts to the defendants, that it began to focus on the equivalent United States patent. Like Honeywell does here, the defendants in *Essilor* claimed that the patentee's "inaction, silence and delay, lulled them into believing that there was no patent dispute and caused defendants to make substantial investments in support of the accused devices, including research and development costs and costs relating to the development of manufacturing facilities." *Id.* The court rejected defendants' estoppel argument, finding that "[n]othing in [patentee]'s conduct could reasonably be inferred as lulling defendants into believing that it would not be sued" where the "[patentee] informed [defendants] that it believed its [product] fell within the scope of the Japanese patent, and that there were other counterpart patents, including in the United States." *Id.* at *65.

Similarly, in *Heraeus Electro-Nite Co. v. Midwest Instr. Co.*, 2007 U.S. Dist. LEXIS 51510, at *32-39 (E.D. Pa. July 12, 2007), the court rejected defendant's argument that the history of cooperation between the parties (including more than 40 letters regarding more than

5

ten different patents over the course of 34 years, and at least seven face to face meetings between the parties' executives to discuss patent matters unrelated to the patent-in-suit) along with patentee's silence regarding its intention to file suit, was sufficient to constitute misleading conduct. The court explained that "[t]he prior communication between the two parties involved only communication regarding other patent disputes[,]" and "there has not been any prior communication between [the parties] regarding the patent in suit." *Id.* at *36-39.

Honeywell cites *Stryker Corp. v. Zimmer, Inc.*, 741 F. Supp. 509, 514 (D. N.J. 1990) for the proposition that "[a] patentee who, with knowledge of the alleged infringing activity, does nothing over a period of years other than mislead a purported infringer" may be estopped from asserting infringement. (D.I. 168 at 9). The present case is far different from *Stryker*. Solvay has persistently represented to Honeywell that it needed a license from Solvay if Honeywell wanted to sell HFC-245fa into geographic areas in which Solvay had earlier-issued foreign counterpart process patent rights. ▮▮▮▮▮▮▮▮▮▮▮▮ Solvay investigated, through publicly available information, whether Honeywell's secret process might also infringe one or more claims of the '817 patent. (*See* D.I. 126 at 4-5 and D.I. 127, Exhibit 11) (Solvay's Amended First Supp. Resp. to Honeywell's First Set of Interrogatories, Resp. No. 1)). After it made that determination, Solvay ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ specifically accused Honeywell of infringement of the '817 patent, and it requested Honeywell to provide its basis for non-infringement. (*Id.*). When Honeywell refused to explain why it did not infringe, Solvay filed this action. Under these circumstances, Honeywell could

6

not reasonably have believed that Solvay abandoned or otherwise was not going to enforce any of its patent rights, including its rights under the '817 patent.[1]

**D.    Honeywell Has No Evidence Of Detrimental Reliance**

Honeywell claims that it detrimentally relied on Solvay's purported silence between the date Solvay received the Notice of Allowance for the '817 patent (March 2003) and the date Solvay specifically accused Honeywell of infringing the '817 patent (May 2006.)  Specifically, Honeywell asserts:



(D.I. 168 at 13) (citations omitted).  Even accepting these assertions only for purposes of this motion, Honeywell fails to offer any admissible evidence that it made those investments <u>in reliance on</u> Solvay's "silent assurance" that it would not assert infringement of the '817 patent.

---

[1] Honeywell asserts ███████████████████████████████████████████████████████████████████████████████████████████████████ Honeywell ignores the fact that Solvay requested a detailed explanation from Honeywell as to why its secret manufacturing process did not infringe the '817 patent.  Honeywell refused Solvay's requests.  Thus, Solvay made a reasonable effort to determine the process used in the production of Honeywell's HFC-245fa, and in accordance with burden-shifting mechanism of 35 U.S.C. § 295, there was a substantial likelihood that Honeywell's HFC-245fa was made by a process claimed in the '817 patent.  (*See* D.I. 126 at 4-6, D.I. 127, Exhibit 11 (Solvay's Amended First Supp. Resp. to Honeywell's First Set of Interrogatories, Resp. No. 1)).  For Honeywell now to argue that estoppel should apply under these circumstances is disingenuous.

In fact, Honeywell has not shown (and cannot show) that it would have done anything differently if Solvay had accused it of infringing the '817 patent sometime prior to May 2006.

First, Honeywell has asserted that it believed the '817 patent was invalid or not infringed shortly after it learned about the patent in 2004. Specifically, Honeywell asserts that "[t]he '817 patent issued on May 4, 2004," and that "[s]oon thereafter in 2004, Honeywell became aware of [the] '817 patent" and that "Honeywell did not think it needed a license" to the '817 patent because of its own prior art patent for making HFC-245fa. D.I. 168 at 5. Thus, Honeywell did not rely upon Solvay's alleged silence in not earlier asserting infringement of the '817 patent. Rather, in continuing to invest in its business, Honeywell was relying on its own business judgment that it did not require a license to the '817 patent. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 775-77 (Fed. Cir. 1995) (reversing summary judgment of laches and equitable estoppel because district court improperly assumed defendants' investments during the delay period were prejudicial, and because defendant "failed to show that he acted in reliance on supposed actions of [plaintiff] rather than a business judgment").

Second, according to Honeywell, it continued to believe even after it received notice of the '817 patent (on May 24, 2006) that it was not liable for infringing the '817 patent. In particular, on ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ D.I. 126 and D.I. 127, Exhibit 10 (HON0026939)). Honeywell's May 2006 response buttresses the conclusion that Honeywell did not "rely" upon Solvay's alleged silence when it decided to make capital investments and otherwise expand its HFC-245fa manufacturing business.

Third, the only "fact" that Honeywell cites in support of its "reliance" argument is the

October 22, 2007 report of its damages expert, ████████████████████████████████

████████████████████████████████  *See Howell Hydrocarbons v. Adams*, 897 F.2d 183, 192

(5th Cir. 1990) ("In order to defeat summary judgment, it is necessary to support allegations with

admissible evidence.").  Moreover, that report simply states ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  characterization of Honeywell's conduct as being in

"reliance" on Solvay's alleged silence is not evidence and is not supported by any evidence.

Indeed, in her deposition, ██████████████  that she did not "have any specific knowledge of

how Honeywell would have behaved even if Solvay had informed them earlier" about

Honeywell's infringement of the '817 patent.  ████████████████████████████████

██████████████████████████████████████████████████.

The two cases that Honeywell cites regarding its "reliance" argument are inapposite.  In

*Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998), cited by

Honeywell (D.I. 168 at 13), a competitor specifically informed the patentee in April 1993 that it

believed its new product was outside the scope of the asserted patent and that it intended to

market the new product.  The competitor further advised the patentee that it would consider the

new product non-infringing unless the patentee informed the competitor otherwise.  The

competitor also provided samples of the new product and inquired whether the patentee

considered the new product to infringe.  For over three years, the patentee never responded to the

competitor's inquiry despite having numerous opportunities to do so.  *Scholle* at 1470-71.  The

patentee thereafter filed suit against the competitor in February 1996.

9

Here, in contrast to *Scholle*, Honeywell never sought any assurances from Solvay as to whether or not Solvay believed that Honeywell's HFC-245fa manufacturing process infringed the '817 patent (or any other Solvay patent). On the contrary, unlike the competitor in *Scholle*, Honeywell refused to reveal to Solvay any of the details of its secret manufacturing process or to otherwise explain why it believed that it did not infringe the '817 patent, despite repeated requests by Solvay for that information. The *Scholle* decision plainly does not support Honeywell's reliance argument.

Honeywell's reliance on *ABB Robotics, Inc. v. Cincinnati Milacron, Inc.*, 52 F.3d 1062 (Fed. Cir. 1995), is similarly misplaced. In *ABB Robotics*, the infringer had previously stopped production of a different product that it had determined might infringe the asserted patent. The district court concluded that the accused infringer's previous behavior supported an inference that it would have done the same thing with respect to the new product if it had learned about it earlier. *Id.* at 1065. Here, by contrast, there are no facts that would support the inference that Honeywell would have modified its process or changed its behavior if Solvay had accused Honeywell of infringing the '817 patent before May 2006. On the contrary, Honeywell asserts that it has always believed since the '817 patent issued in 2004 that the '817 patent was invalid or was not infringed. Furthermore, it is undisputed that Honeywell has not changed its process for making HFC-245fa or otherwise altered its behavior to avoid infringement since Solvay informed it in May 2006 that it was infringing.

The material undisputed facts are that Honeywell authorized construction of the Geismar plant in 1999, the plant was completed in 2002, and Honeywell began commercial sales of HFC-245fa ███████████. D.I. 126 at 6-7, D.I. 127, Exhibit 1. The '817 patent issued in May 2004 – well *after* the Geismar plant had been designed and built. Honeywell's unsubstantiated assertion

that "Honeywell was denied the opportunity to pursue alternatives or seek resolution of disputed

infringement claims before its potential liability significantly increased" is pure speculation. D.I.

168 at 13-14. Honeywell has not come forward with even a scintilla of evidence of reliance. *See,*

*e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (to

defeat a motion for summary judgment, the non-moving party must "do more than simply show

that there is some metaphysical doubt as to the material facts." ... "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial."); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, (1986) (a mere scintilla of

evidence in support of the non-moving party is insufficient for a court to deny summary

judgment).

### E.    <u>Honeywell Has No Evidence Of Economic Prejudice</u>

Honeywell argues that it suffered economic prejudice through a "change of economic

position" caused by Solvay's failure to advise Honeywell that it infringed the '817 patent prior to

May 2006.[2] D.I. 168 at 14. The only fact that Honeywell asserts in support of its prejudice

argument is that Honeywell's HFC-245fa sales increased from ███████████████████

███████████████████████████████. (D.I. 168 at 14). However, a mere change

in economic position is insufficient to show prejudice. Expenditures that result in material

prejudice "are not merely those attributable to a finding of liability for infringement. Economic

prejudice would then arise in every suit." *Aukerman,* 960 F.2d at 1033 (citations omitted); *see*

*also Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) (affirming in part

summary judgment dismissing defenses of laches and equitable estoppel). "The change must be

because of and as a result of the delay, not simply a business decision to capitalize on a market

---

[2] Honeywell has not asserted that it has suffered evidentiary prejudice as a result of Solvay's
allegedly misleading conduct.

opportunity." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992)

(reversing summary judgment of laches and equitable estoppel because defendant's expenditures

of over $23 million on research and development, $6.5 million on direct marketing costs, and

$20 million to expand or consolidate manufacturing facilities had "no explicitly proven nexus to

the patentee's delay in filing suit, as *Aukerman* requires for a finding of prejudice"); *see also*

*Gasser Chair*, 60 F.3d at 775-77. Moreover, a defendant's "firm belief from the outset that its

product was noninfringing" is evidence "that the foregoing economic decisions were merely

business decisions to capitalize on a market opportunity." *Ecolab*, 264 F.3d at 1372.

Furthermore, "[a]n infringer's continuation of infringing activity [after litigation commences] is

probative of a lack of prejudice." *James River Corp. v. Hallmark Cards*, 915 F. Supp. 968, 978

(E.D. Wis. 1996) (estoppel defense failing in part because defendant could not show material

prejudice).

There is no evidence that Honeywell has suffered economic prejudice as a result of

Solvay's alleged "misleading silence." Honeywell's assertion of economic prejudice based

solely on its increased sales since its infringement began is not connected in any way to Solvay's

alleged "misleading silence."

Honeywell's assertion that it believed shortly after the '817 patent issued that the patent

was invalid or not infringed conclusively shows that if Honeywell did in fact change its

economic position, that change was merely the result of Honeywell's business decision to

capitalize on a market opportunity. *See Ecolab*, 264 F.3d at 1372. Moreover, Honeywell

continues to sell HFC-245fa produced at Geismar to this day, and has not changed its infringing

process as a result of this litigation, further evidencing that Honeywell's actions were governed

12

by its own business judgment rather than Solvay's notice of infringement. *See James River*, 915

F. Supp. at 978. There is no evidence that Honeywell was prejudiced by Solvay's alleged silence.

## III.    **CONCLUSION**

For the foregoing reasons, Solvay is entitled to summary judgment on Honeywell's

seventh affirmative defense of laches, equitable estoppel and prosecution laches.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Jean-Paul Lavalleye
Barry J. Herman
Michael E. McCabe, Jr.
John F. Presper
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000

By: */s/ David E. Moore*
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, Delaware 19801
       Tel:  (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

*Attorneys for Plaintiff Solvay, S.A.*

Dated:  March 28, 2008
Public Version Dated: April 4, 2008
857844 / 30651

13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on April 4, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on April 4, 2008, the attached document was Electronically Mailed

to the following person(s):

| | |
|---|---|
| Thomas C. Grimm | Robert G. Krupka |
| Benjamin J. Schladweiler | Laura M. Burson |
| Morris, Nichols, Arsht & Tunnell | Helen Hong |
| 1201 North Market Street | Kirkland & Ellis LLP |
| P.O. Box 1347 | 777 S. Figueroa Street, Suite 3400 |
| Wilmington, DE 19899 | Los Angeles, CA 90017 |
| tgrimm@mnat.com | service-solvay@kirkland.com |
| bschladweiler@mnat.com | |

By:  /s/ David E. Moore
         Richard L. Horwitz
         David E. Moore
         Potter Anderson & Corroon LLP
         Hercules Plaza, 6th Floor
         1313 N. Market Street
         P.O. Box 951
         Wilmington, DE 19899-0951
         (302) 984-6000
         rhorwitz@potteranderson.com
         dmoore@potteranderson.com

799366 / 30651

# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY